IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF OHIO
YOUNGSTOWN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER META, On Behalf Of Himself And All Others Similarly Situated<br>4120 Kirk Road<br>Columbiana, OH  44408 | ) ) ) ) | CASE NO.   4:14-cv-00832<br><br>JUDGE |
| Plaintiffs | ) ) ) | |
| vs. | ) ) | |
| TARGET CORPORATION<br>c/o CT Corporation System, Statutory Agent<br>1300 East Ninth Street<br>Cleveland, OH  44114 | ) ) ) ) ) | **CLASS ACTION COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |
| Defendant | ) ) ) | |

Plaintiff Christopher Meta, individually on behalf of himself and all others similarly situated, brings this Class Action Complaint against Defendant Target Corporation ("Target") and in support alleges as follows:

## I.  NATURE OF THIS ACTION

1.  Target is one of the largest retailers in the United States.  It operates retail outlets throughout the country and also sells products online via its website: www.target.com.

2.  Target sells a variety of general merchandise and food.  Although a significant portion of its sales revenue is derived from the sale of national brand

products, at least a third of its revenue comes from the sale of its own brands of products.

3.      One such Target-brand product is "up & up®" "flushable" moist tissue wipes and toddler and family wipes (hereinafter the "Up & Up Flushable Wipes").  They look like this:

 

4.      The Up & Up Flushable Wipes are pre-moistened fabric wipes used for personal hygiene and cleaning.  They are also used by families with toddlers that are potty training.

5.      Target states on its website and on the packaging for the Up & Up Flushable Wipes that the wipes "flushable" and "sewer and septic safe."  It also claims that its wipes will "break[] apart after flushing."  Accordingly, Target markets the Up & Up Flushable Wipes as a quick and easy disposable alternative to pre-moistened fabric wipes that are not supposed to be flushed down a consumer's toilet.  Indeed, Target sells other kinds of up & up® branded wipes and cleaning products that are not meant to be flushed.

6.      Contrary to Target's representations, however, the Up & Up Flushable Wipes are not sewer and septic safe and do not break apart after flushing.  Rather, they end up clogging consumers' plumbing and septic systems, potentially resulting in hundreds, even thousands of dollars in damage.  Indeed, this is precisely what happened to Mr. Meta as a result of his use of the Up & Up Wipes.  Simply put, Target's Up & Up Wipes are defective because they are not "flushable."

7.      Due to Target's misrepresentations that its wipes are sewer and septic safe and flushable, consumers such as Mr. Meta were deceived into purchasing the Up & Up Flushable Wipes.  But for Target's misrepresentations, Mr. Meta and other consumers would not have expended money to purchase them.

8.      Furthermore, Target is not the only company wrongfully representing that its pre-moistened fabric wipes are flushable.  An entire market of so-called "flushable" wipes has cropped up over the past few years.  These wipes have not only been clogging consumer's pipes all over Ohio and the country, but have also created a public health hazard by clogging pumps at municipal waste treatment facilities.

9.      State and local sewer authorities, including Ohio's, have been sounding the alarm – urging companies that sell these wipes to remove the "flushable" claims from their products and attempting to educate consumers that contrary to the representations on the packaging, wipes like Up & Up are not toilet safe.  But wipes marketers have so far been unwilling to remove the misleading claims and consumers continue to purchase the wipes in increasing numbers – perpetuating and worsening the public safety hazard.

10. The Court should, *inter alia*, issue an injunction requiring Target to remove the misleading claims about its Up & Up Flushable Wipes and require the company to disgorge the ill-gotten gains it received from tricking consumers into purchasing its defective wipes that do not perform as warranted.

## II.   THE PARTIES

11. Plaintiff Christopher Meta is a resident of Columbiana, Columbiana County, Ohio.

12. Defendant Target Corporation is a Minnesota corporation with its corporate headquarters located at 100 Nicollet Mall, Minneapolis, Hennepin County, Minnesota.

## III.   JURISDICTION AND VENUE

13. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d), in that the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action of more than 100 potential class members in which Plaintiff is a citizen of Ohio while Defendant is a citizen of a different state.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and because this Court has personal jurisdiction over Target.  This Court has personal jurisdiction over Target because its liability in this action arises out of torts and other unlawful conduct taken within the state of Ohio, which caused tortious injury within the state of Ohio, and further because it transacted business, engaged in a persistent course of conduct and derived substantial revenue in the state of Ohio.

15.     Venue is proper in this Court's Youngstown Division because Plaintiff resides in Columbiana County, Ohio, and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Columbiana County, Ohio.

## IV.     FACTS COMMON TO ALL CLAIMS

16.     Target markets and sells in its stores and on its website pre-moistened fabric wipes under the brand name: up & up®.  Some of these wipes are marketed as "flushable":





17.    As shown above, the packaging for the Up & Up Flushable Wipes states in in large letters that the wipes are "**flushable**."   Immediately under this claim, the packaging goes on to state that they are "larger wipe[s] with improved flushability" and that the wipes "break[] apart after flushing."   It further states that the larger wipes lend themselves to a "*cushy flush*" or engender "*potty pride*."   The packaging also has a picture of a wipe disintegrating and encircled with a label stating "BREAKS APART" "after flushing."

18.    The side of the Up & Up Flushable Wipes packaging further states that: "In addition to continuing to be flushable, they also break apart after flushing."   It then states that the wipes are "Safe for sewers and septic systems."



19.    Target's website similarly claims that the wipes are "sewer and septic safe."

20.    The Up & Up Flushable Wipes also have alternative packaging that in addition to representing that the wipes are "flushable," "break[] apart when flushed," and are "sewer and septic safe," the packaging also claims that the wipes are:  "Made with a unique Hydraspun® dispersible fabric, these flushable moist tissue wipes actually break

apart when flushed reducing the chance for blockages at home and in waste management systems."  See below:





21.    And as shown above, this packaging also has a section under the heading "**IMPORTANT**" warning consumers of the following:  "DO NOT FLUSH THIS BAG.

22.    In other words, the packaging makes plain that the term "flushable" means that the wipes can be safely disposed of via one's toilet like regular toilet paper and will not clog the toilet or cause plumbing damage in contrast to other items, such as the bag that the wipes comes in, which are not toilet safe and should not be flushed.

23.    In sum, all the above representations on the Up & Up Flushable Wipes packaging and on Target's website were intended to give, and did give, consumers the unmistakable understanding that the Up & Up Flushable Wipes were safe for toilet use, would break apart after flushing like toilet paper, and would not cause clogs or plumbing damage.  This is in contrast to other cleaning products, such as other kinds of pre-moistened wipes, paper towels, tissues, etc. that do not claim to be flushable or sewer

and septic safe.  Indeed, many of these products explicitly warn consumers not to flush them.  In fact, Target has a variety of other up & up® brand cleaning products, including wipes, that it ***does not*** represent to be sewer and septic safe or flushable.

24.    None of the above representations on the Up & Up Flushable Wipes packaging or on Target's website were true.  The wipes do not "break[] apart after flushing."  They are not "dispersible."  Nor are they "sewer and septic safe" because they clog and damage sewer and septic systems.  In other words, they are defective because they are not "flushable."

25.    Furthermore, Target is well aware its "flushability" claims are not true and that its product is defective.  State and local sewer authorities have been imploring manufacturers and sellers of purported "flushable" wipes to remove the flushability claims.  Many of these authorities have also launched public relations campaigns to try to educate consumers that these products are not toilet safe as claimed.

26.    The reason the wastewater industry has been up in arms about the flushable wipes issue is because they pose a hazard to public safety and are causing tax payers money by damaging the sewer infrastructure.  Based on their experience, observations and field testing, sewer authorities have found that so-called flushable wipes cause backups within the sewer system leading to sanitary sewer overflows, clogs at lift stations and disruption within the sewer treatment plant.

27.    For instance, the Wastewater Department for the city of Steubenville, Ohio has started a public information and education program called **FLUSH AT YOUR OWN RISK!!!**.  The purpose of the program is to inform people about the risks of flushing non-dispersible items down toilets.  According to the City, nondispersible items can clog toilets, household plumbing and City sewer lines when flushed down toilets, "which can

lead to serious illness, loss of personal belongings, property damage, and contamination of rivers, creeks, and streams."  And the City specifically highlights the risk of using "flushable wipes" by citing an example on its website of a homeowner that used flushable wipes over a period of time, which resulted in the wipes filling "nearly the entire length of the line that carries the sewage from the house to the city's sewer . . . . result[ing] in their household sewage backing up into their basement because the line was clogged with 'flushable wipes.'"  The City's website then goes on to explain that "[f]lushing non-dispersible items down the toilet costs the Wastewater Department thousands of dollars each year."  *See* http://cityofsteubenville.us/flush-at-your-own-risk/.

28.    Similarly, the Metropolitan Sewer District of Greater Cincinnati, Ohio reported that it spends about $100,000 each year to clean wastewater treatment pumps and free them from products that do not break apart or dissolve when they enter the sewer system, such as baby wipes and wet wipes that are labeled as flushable.

29.    Indeed, according to the National Association of Clean Water Agencies (NACWA) – a trade association that represents the interests of nearly 300 publicly owned wastewater treatment agencies nationwide – over the past few years cities across the country have incurred hundreds of thousands of dollars in new equipment and maintenance costs to repair damage resulting from flushed wipes, and in some cases even more.  The Orange County Sanitation District spent $2.4 million on new equipment to unclog its pumps.  The Washington Suburban Sanitary Commission, which handles sewage for the residents of Montgomery and Prince George's Counties in Maryland, spent more than $1 million to install heavy-duty grinders to shred wipes before they reach pumps on the way to the treatment plant.

30.     Like state and local wastewater authorities, NACWA also advocates against the use of flushable wipes and provides information and assistance to its members to help reduce public consumption of these harmful products.     *See* http://www.nacwa.org/index.php?option=com_content&view=article&id=1581&Itemid=335.   Other national organizations that advocate against the use of flushable wipes include the American Public Works Association and the Water Environment Federation.

31.     Although Target claims that its Up & Up Flushable Wipes are "dispersible," this is a term of art within the wastewater industry that carries a specific meaning. According to wastewater industry experts, a product is dispersible if it starts to break up or disperse during the flushing action in a standard toilet and fully breaks apart and disperses into unrecognizable pieces upon entering the wastewater collection system. The benchmark standard for what constitutes a dispersible product is toilet paper, which begins to rapidly disperse after 20 seconds, if not sooner, and becomes indistinguishable in the wastewater system.

32.     Contrary to Target's assertions, the Up & Up Flushable Wipes are not dispersible.  In fact, in November 2013, CBS Broadcasting, Inc., in Chicago, Illinois tested the Up & Up Wipes by soaking them in water.  After a week of soaking, the wipes still had not broken down.  CBS asked Target to comment the results of its study, but the company did not provide a response.

33.     In addition to criticism from the wastewater industry, Target has also received, via its  website, numerous  complaints from individual  consumers  around  the

country that the company's ostensibly flushable wipes are actually clogging plumbing and septic systems.  A representative sample of these complaints are as follows:

a.   On October 17, 2012, Very Frustrated from Milwaukee, WI posted the following:

Don't believe the claims that these are flushable.  My 195 dollar bill from the plumber who had to dig them out of the pipes and the sludge covered basement floor are evidence to the contrary.  We only use an average of 1 wipe a day for my 3 year old when she has a BM.  Even with that low amount of usage, the ONLY thing the plumber pulled out of the pipes were these wipes.

b.   On July 27, 2012, Kelly from Saint Louis, MO posted the following:

I could live with the tearing as the wipes come out of the package. What I cannot live with is the clogged sewer pipes that these wipes caused.  We never used more than the 2 suggested and our pipes still clogged.   My husband snaked the pipes TWICE and came up with wipes that did not dissolve and break apart as promised. [ . . . ]

c.   On February 26, 2013, Cherie from Dane, WI posted the following:

Although the package says that they are safe for septic systems, they are not!  We only used them occasionally, yet they caused our septic tank to back up into the basement.  YUCK!  So if you choose to use them anyway, and can manage to get the wipes out of the incredibly frustrating package, don't flush them!

d.   On July 20, 2012, SAHMIAM from Long Island, NY posted the following:

I agree with the previous reviews!!!  The new ones are horrible!  If it ain't broke, don't fix it!  The new ones are hard to pull out, the refills now have a plastic top opening – [ . . . ] and the new ones do NOT fit the old container.  And there is a new ingredient because it is causing a rash on one of my children.   MOST IMPORTANTLY, NEVER flush even "flushable" wipes.  I learned the hard way with the previous version of wipes, that I LOVE and still do.  My sewer pipes backed up into my basement because of them.  They are a great concept but they aren't toilet paper!!!

34.   As these complaints make clear, Target knew that its Up & Up Flushable Wipes were defective and clogging people's pipes even though consumers believed the

wipes were safe to flush like toilet paper. Yet Target still refused to remove its misrepresentations related to flushability from its product packaging or its website.

## V. NAMED PLAINTIFF'S FACTS

35. Christopher Meta purchased a box of Up & Up Flushable Wipes from a Target store located in Boardman, Ohio for approximately $15. He used the wipes primarily for potty training his daughter and disposed of the wipes by flushing them down his toilet as directed by the Up & Up Wipes packaging.

36. On or around summer 2013, Mr. Meta started noticing problems with the plumbing in his house, such as the tub not draining and toilet not flushing properly. These problems usually went away on their own.

37. However, on or about November 20, 2013, Mr. Meta hired Novak Septic Pumping ("Novak") to diagnose the problem. Novak discovered that the Up & Up Flushable Wipes Mr. Meta had disposed of via his toilet had not dispersed and had instead caked together in the plumbing and septic system, causing the problems Mr. Meta had previously observed. Accordingly, Mr. Meta did not discover or become aware that the Up & Up Flushable Wipes were defective and that the representations on the wipes' packaging were untrue until Novak informed him that they had clogged his system.

38. Novak flushed the pipes and septic system and charged Mr. Meta approximately $210 for labor and service, which Mr. Meta paid. Novak also informed Mr. Meta that the septic system could be permanently damaged due to the wipes, but that they would not be able to tell if that was the case until spring or summer 2014. If the septic system is ruined, then it may cost Mr. Meta as much as $20,000 to acquire a replacement system.

39.     Mr. Meta would not have purchased the Up & Up Flushable Wipes had he known that the wipes were not in fact "flushable" or safe for sewer and septic use. Indeed, the only reason Mr. Meta purchased the Up & Up Flushable Wipes is because they purported to provide a more convenient means of disposal.

## VI.     TOLLING AND ESTOPPEL OF STATUTES OF LIMITATION

40.     Target knew that its Up & Up Flushable Wipes did not break apart after flushing, did not disperse after flushing, and were not sewer and septic safe.  In short, it knew its wipes were defective and not flushable.

41.     Although Target knew that the Up & Up Flushable Wipes were defective and that its representations regarding the flushability of its wipes were not true, it continued to make these misrepresentations and sell the defective product.

42.     Neither Mr. Meta nor members of the Class were capable of determining that the Up & Up Wipes were defective or that the representations on the wipes' packaging and on Target's website were untrue until they were informed by a plumber or other experienced service technician that the wipes had clogged their pipes.

43.     Target actively concealed the fact that its Up & Up Flushable Wipes were defective and did not break apart after flushing, did not disperse after flushing, and were not sewer and septic safe and/or failed to inform members of the Class of the existence of the defect.

## VII.    CLASS ACTION ALLEGATIONS

44.    Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the members of a Class comprising of:

> All persons residing in the State of Ohio who purchased Target-brand "up & up®" "flushable" moist tissue wipes and toddler and family wipes (the "Up & Up Flushable Wipes").

45.    Subject to additional information obtained through further investigation and discovery, the foregoing Class may be expanded or narrowed by amendment or amended complaint.    Specifically excluded from the Class is any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, assigns, and successors.

46.    Members of the Class are so numerous that joinder is impracticable. While the exact number of Class members is unknown to Plaintiff, it is believed that the Class is comprised of at least thousands of members geographically dispersed throughout the state of Ohio.    The Class, however, is readily identifiable from information and records in Target's possession.

47.    Common questions of law and fact exist as to all members of the Class. These questions predominate over questions that may affect only individual Class members because Target has acted on grounds generally applicable to the Class. Such common legal or factual questions include:

> a.    Whether the Up & Up Flushable Wipes are in fact flushable;
>
> b.    Whether the Up & Up Flushable Wipes break apart after flushing;
>
> c.    Whether the Up & Up Flushable Wipes are dispersible;
>
> d.    Whether the Up & Up Flushable Wipes are sewer and septic safe;

e.  Whether the Up & Up Flushable Wipes are defective;

f.  Whether the Up & Up Flushable Wipes are defectively designed and/or manufactured;

g.  Whether Target had a duty to design the Up & Up Flushable Wipes against reasonably foreseeable hazards;

h.  Whether Target designed the Up & Up Flushable Wipes against reasonably foreseeable hazards;

i.  Whether Target had a duty to warn Plaintiff and the Class that its Up & Up Flushable Wipes were not flushable or sewer and septic safe;

j.  Whether Target breached its duty to warn Plaintiff and the Class;

k.  Whether Target knew or reasonably should have known that the Up & Up Flushable Wipes were defective prior to distributing the wipes to Plaintiff and the Class;

l.  Whether Target knew or reasonably should have known that the Up & Up Flushable Wipes were defective after distributing the wipes to Plaintiff and the Class;

m.  Whether Target concealed and/or failed to disclose to Plaintiff and the Class the fact that its wipes were defective;

n.  Whether Target tortiously breached its warranty obligations to Plaintiff and the Class in connection with its Up & Up Flushable Wipes;

o.  Whether Target breached the implied warranty of merchantability relating to its Up & Up Flushable Wipes;

p.  Whether Target breached the implied warranty of fitness for a specific purpose relating to its Up & Up Flushable Wipes;

q.  Whether Target was unjustly enriched by receiving moneys in exchange for Up & Up Flushable Wipes that are not flushable, do not break apart after flushing, and are not sewer and septic safe;

r.  Whether Target should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of its Up & Up Flushable Wipes;

s.  Whether Plaintiff and the Class are entitled to damages, including compensatory, exemplary and statutory damages;

t.     Whether Target should be enjoined from selling and marketing Up & Up Flushable Wipes;

u.     Whether Target engaged in unfair, false, misleading, deceptive or unconscionable trade practices while selling and/or marketing the Up & Up Flushable Wipes; and

v.     Whether Target engaged in unfair, false, misleading, deceptive or unconscionable trade practices by concealing and/or failing to inform Plaintiff and members of the Class that the Up & Up Flushable Wipes are not flushable or safe for sewer and septic use.

48.     Target's defenses to Plaintiff's claims are typical of its defenses to claims of the members of the class.

49.     Plaintiff's claims are typical of the members of the Class as all members of the Class are similarly affected by Target's actionable conduct.   Plaintiff and all members of the Class purchased Up & Up Flushable Wipes that were defective in that they are not flushable, dispersible or safe for sewer or septic use.   Plaintiff and all members of the Class were subject to the same misrepresentations made by Target on the Up & Up Flushable Wipes' packaging and on its website.   In addition, Target's conduct that gave rise to the claims of Plaintiff and members of the Class is the same for all members of the Class.

50.     Plaintiff will fairly and adequately protect the interests of the Class because Plaintiff has no interests antagonistic to, or in conflict with, the Class that Plaintiff seeks to represent.   Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation.   Plaintiff has or can acquire adequate financial resources to assure that the interests of the Class will not be harmed.

51.     Class action treatment is a superior method for the fair and efficient adjudication of this controversy in that, among other things, such treatment will permit a

large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the Class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

52.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

53.     Plaintiff has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class and subclass as a whole.

54.     This forum is an appropriate forum for litigation of the claims of the Class, which is comprised only of persons residing in the state of Ohio.

## COUNT I
### (Tortious Breach Of Warranty)

55.     Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

56.     Under Ohio law, a defect is considered to exist in a product which is not of good and merchantable quality, fit and safe for its ordinary intended use.

57.     Target's Up & Up Flushable Wipes are defective because they are not flushable, they do not break up after flushing, and they are not sewer and septic safe, thereby rendering them unmerchantable, unsafe and unfit for their ordinary and intended use.

58.     This defect existed at the time the product left Target's hands.

59.     This defect was the direct and proximate cause of the injuries and losses suffered by Plaintiff and members of the Class.

## COUNT II
### (Negligent Design)

60.     Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

61.     Target had a duty to design its Up & Up Flushable Wipes against reasonably foreseeable hazards.

62.     Target breached that duty because it did not design its Up & Up Flushable Wipes against reasonably foreseeable hazards such a clogged plumbing and septic systems resulting from the wipes not breaking apart or dispersing after flushing.

63.     Plaintiff's injury was proximately caused by Target's breach.

## COUNT III
### (Negligent Failure To Warn)

64.     Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

65.     Target had a duty to warn Plaintiff and members of the Class about reasonably foreseeable hazards such as clogged plumbing and septic systems associated with flushing its Up & Up Flushable Wipes.

66.     Target breached that duty by failing to warn Plaintiff and members of the Class about these hazards.

67.     Plaintiff's injury proximately resulted from Target's breach of its duty to warn.

## COUNT IV
## (Breach Of The Implied Warranty Of Merchantability)

68.     Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

69.     The Up & Up Flushable Wipes are "goods" within the meaning of Ohio Rev. Code Ann. § 1302.01(A)(8).

70.     Plaintiff and the members of the Class are "buyers" within the meaning of Ohio Rev. Code Ann. § 1302.01(A)(1).

71.     A warranty that goods shall be merchantable and fit for the ordinary purposes for which such goods are used is implied if the seller is a merchant with respect to goods of that kind.  Ohio Rev. Code Ann. § 1302.27.

72.     Target is a "merchant" with respect to the Up & Up Flushable Wipes within the meaning of Ohio Rev. Code Ann. § 1302.01(A)(5).

73.     Target's implied warranty that the Up & Up Flushable Wipes were merchantable was part of the basis of the bargain between Target and Plaintiff and members of the Class.

74.     Target breached the implied warranty of merchantability because the Up & Up Flushable Wipes were not fit for the ordinary purpose in which such goods are used and because they do not conform to the promises or affirmations of fact made on the container or label.  *See* Ohio Rev. Code Ann. § 1302.27(B)(3), (6).  Specifically, the Up & Up Flushable Wipes are unfit for the ordinary purpose and do not confirm to the promises or affirmations of fact made on their container or label because they do not break apart after flushing, are not dispersible, are not sewer and septic safe – they are not flushable.

75.    Plaintiff and members of the class sustained injuries and damages as a result of the breach.

## COUNT V
## (Breach Of The Implied Warranty Of Fitness For A Particular Purpose)

76.    Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

77.    Target had reason to know that the Up & Up Flushable Wipes being flushable was a particular purpose for which the wipes were intended to be used and that Plaintiff and members of the Class would dispose of the wipes by flushing them down their toilets.

78.    Plaintiff and members of the class relied on Target to furnish wipes suitable for this purpose.  Target failed to do so and therefore breached the implied warranty of fitness for a particular purpose.

79.    Plaintiff and members of the Class sustained injuries and damages as a result of the breach.

## COUNT VI
## (Violation Of The Ohio Consumer Sales Practices Act,
## Ohio Rev. Stat. Ann. §§ 1345.01, et seq.)

80.    Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

81.    Target's conduct in marketing and selling Up & Up Flushable Wipes that were defective and – contrary to Target's representations – do not break apart after flushing, are not dispersible, are not sewer and septic safe and are not flushable, constitutes unfair, deceptive or unconscionable acts or practices in connection with a consumer transaction.

82.     Target's conduct constitutes unfair or deceptive acts or practices in violation of the Ohio Consumer Sales Practices Act (OCSPA) because *inter alia* Target represented that:

> a.     The Up & Up Flushable Wipes have performance characteristics, uses or benefits that they do not have;
>
> b.     The Up & Up Flushable Wipes are of a particular standard, quality, grade or style that they are not; and
>
> c.     The Up & Up Flushable Wipes have been supplied in accordance with a previous representation, when they have not.

83.     Target's conduct constitutes unconscionable acts or practices in violation of the Ohio Consumer Sales Practices Act (OCSPA) because *inter alia*:

> a.     Target knew that Plaintiff and members of the Class would not receive a substantial benefit from the Up & Up Flushable Wipes; and
>
> b.     Target knowingly made a misleading statement of opinion on which Plaintiff and members of the Class were likely to rely to their detriment.

84.     Plaintiff and members of the Class have been injured and have suffered loss of money or property as a result of Target's unfair, deceptive or unconscionable acts or practices.

## COUNT VII
## (Unjust Enrichment)

85.     Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

86.     Plaintiff and members of the Class conferred a benefit upon Target. Plaintiff and members of the Class paid money to purchase their Up & Up Flushable Wipes.  Accordingly, Plaintiff and members of the Class conferred an economic benefit upon Target because Target profited as a result from Plaintiff and members of the Class paying money to purchase their Up & Up Flushable Wipes.

87.     Target knew about the benefit Plaintiff and members of the Class conferred upon it.

88.     Target, however, retained that benefit under circumstances that make it inequitable for Target to retain it without paying the value thereof.  Specifically, Target retained that benefit despite the fact that that it knew that the Up & Up Flushable Wipes were defective because they were not flushable, but it nevertheless sold the wipes to consumers and falsely stated that the wipes were dispersible, break apart after flushing, and are sewer and septic safe.

## **REQUESTS FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully request that this Court:

A.     Certify the class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.     Award damages, including compensatory, exemplary and statutory damages, to Plaintiff and the Class in an amount to be determined at trial;

C.     Grant restitution to Plaintiff and the Class and require Target to disgorge its ill-gotten gains;

D.     Permanently enjoin Target from engaging in the wrongful and unlawful conduct alleged herein;

E.     Award Plaintiff and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

F.     Award Plaintiff and the Class prejudgment and post-judgment interest at the highest legal rate to the extent provided by law; and

G.     Award such further relief as the Court deems appropriate.

## JURY DEMAND

***PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.***

Respectfully submitted,

s/ Stuart E. Scott
STUART E. SCOTT  (0064834)
DANIEL FRECH  (0082737)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (FAX)
*sscott@spanglaw.com*
*dfrech@spanglaw.com*

JONATHAN K. TYCKO
(Pending Motion for Pro Hac Vice)
LORENZO B. CELLINI TYCKO
(Pending Motion for Pro Hac Vice)
**TYCKO & ZAVAREEI LLP**
2000 L Street, N.W., Suite 808
Washington, D.C.  20036
(202) 973-0900
(202) 973-0950 (FAX)
*jtycko@tzlegal.com*
*lcellini@tzlegal.com*

***Counsel for Plaintiff and the Proposed Class***