IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF OHIO
CLEVELAND DIVISION

| | |
|---|---|
| CHRISTOPHER META, On Behalf Of Himself And All Others Similarly Situated 4120 Kirk Road Columbiana, Ohio 44408 ) ) ) ) ) | CASE NO. 4:14-CV-0832 JUDGE:  Hon. Donald C. Nugent |
| Plaintiff, ) ) ) | |
| vs. ) ) | |
| TARGET CORPORATION c/o CT Corporation System, Statutory Agent 1300 East Ninth Street Cleveland, Ohio 44114 ) ) ) ) | **AMENDED CLASS ACTION COMPLAINT** **(JURY TRIAL DEMANDED)** |
| and ) ) | |
| NICE-PAK PRODUCTS, INC. 2 Nice-Pak Park Orangeburg, New York,10962-1376 ) ) ) ) ) ) | |
| Defendants. ) | |

Plaintiff Christopher Meta, individually on behalf of himself and all others similarly situated, brings this Amended Class Action Complaint against Defendant Target Corporation ("Target") and Nice-Pak Products Inc. ("Nice-Pak"), and in support alleges as follows:

## I.     NATURE OF THIS ACTION

1.     Target is one of the largest retailers in the United States.  It operates retail outlets throughout the country and also sells products online via its website: www.target.com.

2.     Target sells a variety of general merchandise and food.  Although a significant portion of its sales revenue is derived from the sale of national brand

products, at least a third of its revenue comes from the sale of its own brands of products.

3.      One such Target-brand product is "up & up®" "flushable" moist tissue wipes and toddler and family wipes (hereinafter the "Up & Up Flushable Wipes").  They look like this:




4.      The Up & Up Flushable Wipes are pre-moistened fabric wipes used for personal hygiene and cleaning.  They are also used by families with toddlers that are potty training.

5.      The Up & Up Flushable Wipes are manufactured and supplied by Nice-Pak for Target to sell at retail.  Nice-Pak also produces the packaging for the Up & Up Flushable Wipes.

6.      Target states on its website and on the packaging for the Up & Up Flushable Wipes that the wipes are "flushable" and "sewer and septic safe."  It also claims that its wipes will "break[] apart after flushing."  Accordingly, Target markets the

2

Up & Up Flushable Wipes as a quick and easy disposable alternative to pre-moistened fabric wipes that are not supposed to be flushed down a consumer's toilet.  Indeed, Target sells other kinds of up & up® branded wipes and cleaning products that are not meant to be flushed.

7.      Contrary to Defendants' representations, however, the Up & Up Flushable Wipes are not sewer and septic safe and do not break apart after flushing.  Rather, they end up clogging consumers' plumbing and septic systems, potentially resulting in hundreds, even thousands of dollars in damage.   Indeed, this is precisely what happened to Mr. Meta as a result of his use of the Up & Up Wipes.  Simply put, the Up & Up Wipes are defective because they are not "flushable."

8.      Due to Defendants' misrepresentations that the wipes are sewer and septic safe and flushable, consumers such as Mr. Meta were deceived into purchasing the Up & Up Flushable Wipes.  But for Defendants' misrepresentations, Mr. Meta and other consumers would not have expended money to purchase them.

9.      Defendants are not the only companies wrongfully representing that their pre-moistened fabric wipes are flushable.  An entire market of so-called "flushable" wipes has cropped up over the past few years.  These wipes have not only been clogging consumer's pipes all over Ohio and the country, but have also created a public health hazard by clogging pumps at municipal waste treatment facilities.

10.     State and local sewer authorities, including many cities in Ohio, have been sounding the alarm – urging companies that sell these wipes to remove the "flushable" claims from their products and attempting to educate consumers that contrary to the representations on the packaging, wipes like Up & Up are not toilet safe.  But wipes marketers have so far been unwilling to remove the misleading claims and consumers

continue to purchase the wipes in increasing numbers – perpetuating and worsening the public safety hazard.

11.     The Court should, *inter alia*, issue an injunction requiring Defendants to remove the misleading claims about the Up & Up Flushable Wipes and require Target to disgorge the ill-gotten gains it received from tricking consumers into purchasing its defective wipes that do not perform as warranted.

## II.     THE PARTIES

12.     Plaintiff Christopher Meta is a resident of Columbiana, Columbiana County, Ohio.

13.     Defendant Target Corporation is a Minnesota corporation with its corporate headquarters located at 100 Nicollet Mall, Minneapolis, Hennepin County, Minnesota.

14.     Defendant Nice-Pak Products Inc. is a New York corporation with its corporate headquarters located at Two Nice Pak Park, Orangeburg, Rockland County, New York.

## III.     JURISDICTION AND VENUE

15.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d), in that the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which any member of the class of plaintiffs is a citizen of a state different from any defendant.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and because this Court has personal jurisdiction over Defendants.  This Court has personal jurisdiction over Defendants because their liability in this action

arises out of torts and other unlawful conduct taken within the state of Ohio, which caused tortious injury within the state of Ohio, and further because they transacted business, engaged in a persistent course of conduct and derived substantial revenue in the state of Ohio.

**IV.     FACTS COMMON TO ALL CLAIMS**

17.     Target markets and sells in its stores and on its website pre-moistened fabric wipes under the brand name: up & up®.  Some of these wipes are marketed as "flushable":







18.     The Up & Up Flushable Wipes for toddlers, which are in the red packaging, are manufactured by Nice-Pak and supplied to Target.  Nice-Pak also produces the packaging for the Up & Up Flushable Wipes.

19.     As shown above, the packaging for the Up & Up Flushable Wipes states in in large letters that the wipes are "**flushable**."  Immediately under this claim, the packaging goes on to state that they are "larger wipe[s] with improved flushability" and that the wipes "break[] apart after flushing."  It further states that the larger wipes lend themselves to a "***cushy flush***" or engender "***potty pride***."  The packaging also has a

6

picture of a wipe disintegrating and encircled with a label stating "BREAKS APART" "after flushing."

20.    The side of the Up & Up Flushable Wipes packaging further states that: "In addition to continuing to be flushable, they also break apart after flushing."  It then states that the wipes are "Safe for sewers and septic systems."



21.    Target's website similarly claims that the wipes are "sewer and septic safe."

22.    The green packaging for the Up & Up Flushable Wipes, in addition to representing that the wipes are "flushable," "break[] apart when flushed," and are "sewer and septic safe," also claims that the wipes are made with "dispersible fabric" and further claims that "these flushable moist tissue wipes actually break apart when flushed reducing the chance for blockages at home and in waste management systems."  See below:





23.     And as shown above, this packaging also has a section under the heading "**IMPORTANT**" warning consumers of the following:  "DO NOT FLUSH THIS BAG."

24.     In other words, the packaging makes plain that the term "flushable" means that the wipes can be safely disposed of via one's toilet like regular toilet paper and will not clog the toilet or cause plumbing damage in contrast to other items, such as the bag the wipes come in.

25.     All the above representations on the Up & Up Flushable Wipes packaging and on Target's website were intended to give, and did give, consumers the unmistakable understanding that the Up & Up Flushable Wipes were safe for toilet use, would break apart after flushing like toilet paper, and would not cause clogs or plumbing damage.  This is in contrast to other cleaning products, such as other kinds of pre-moistened wipes, paper towels, tissues, etc. that do not claim to be flushable or sewer and septic safe.  Indeed, many of these products explicitly warn consumers not to flush them.  In fact, Target has a variety of other up & up® brand cleaning products, including wipes, that it ***does not*** represent to be sewer and septic safe or flushable.

26.     None of the above representations on the Up & Up Flushable Wipes packaging or on Target's website were true.  The wipes do not "break[] apart after flushing."  They are not "dispersible."  Nor are they "sewer and septic safe" because they clog and damage sewer and septic systems.  In other words, they are defective because they are not "flushable."

27.    Furthermore, Defendants are well aware the "flushability" claims are not true and that their product is defective.  State and local sewer authorities have been imploring manufacturers and sellers of purported "flushable" wipes to remove the flushability claims for years.  Many of these authorities have also launched public relations campaigns to try to educate consumers that these products are not toilet safe as claimed.

28.    The reason the wastewater industry has been up in arms about the flushable wipes issue is because they pose a hazard to public safety and are costing tax payers money by damaging the sewer infrastructure.  Based on their experience, observations and field testing, sewer authorities have found that so-called flushable wipes cause backups within sewer systems leading to sanitary sewer overflows, clogs at lift stations and disruption within sewer treatment plants.

29.    For instance, the Wastewater Department for the city of Steubenville, Ohio has started a public information and education program called **FLUSH AT YOUR OWN RISK!!!**.  The purpose of the program is to inform people about the risks of flushing non-dispersible items down toilets.  According to the City, nondispersible items can clog toilets, household plumbing and City sewer lines when flushed down toilets, "which can lead to serious illness, loss of personal belongings, property damage, and contamination of rivers, creeks, and streams."  The City specifically highlights the risk of using "flushable wipes" by citing an example on its website of a homeowner that used flushable wipes over a period of time, which resulted in the wipes filling "nearly the entire length of the line that carries the sewage from the house to the city's sewer . . . . result[ing] in their household sewage backing up into their basement because the line was clogged with 'flushable wipes.'"  The City's website then goes on to explain that

"[f]lushing non-dispersible items down the toilet costs the Wastewater Department thousands of dollars each year."[1]

30.    Similarly, the Metropolitan Sewer District of Greater Cincinnati, Ohio reported that it spends about $100,000 each year to clean wastewater treatment pumps and free them from products that do not break apart or dissolve when they enter the sewer system, such as baby wipes and wet wipes that are labeled as flushable.

31.    Indeed, according to the National Association of Clean Water Agencies (NACWA) – a trade association that represents the interests of nearly 300 publicly owned wastewater treatment agencies nationwide – over the past few years cities across the country have incurred hundreds of thousands of dollars in new equipment and maintenance costs to repair damage resulting from flushed wipes, and in some cases even more.  The Orange County Sanitation District spent $2.4 million on new equipment to unclog its pumps.  The Washington Suburban Sanitary Commission, which handles sewage for the residents of Montgomery and Prince George's Counties in Maryland, spent more than $1 million to install heavy-duty grinders to shred wipes before they reach pumps on the way to the treatment plant.

32.    Like state and local wastewater authorities, NACWA also advocates against the use of flushable wipes and provides information and assistance to its members to help reduce public consumption of these harmful products.[2]  Other national organizations that advocate against the use of flushable wipes include the American Public Works Association and the Water Environment Federation.

33.    Although Target claims that its Up & Up Flushable Wipes are "dispersible," this is a term of art within the wastewater industry that carries a specific meaning.

---

[1] *See* http://cityofsteubenville.us/flush-at-your-own-risk/.
[2] *See* http://www.nacwa.org/index.php?option=com_content&view=article&id=1581&Itemid=335.

According to wastewater industry experts, a product is dispersible if it starts to break up or disperse during the flushing action in a standard toilet and fully breaks apart and disperses into unrecognizable pieces upon entering the wastewater collection system. The benchmark standard for what constitutes a dispersible product is toilet paper, which begins to rapidly disperse after 20 seconds, if not sooner, and becomes indistinguishable in the wastewater system.

34.    Contrary to Target's assertions, the Up & Up Flushable Wipes are not dispersible.  In fact, in November 2013, CBS Broadcasting, Inc., in Chicago, Illinois tested the Up & Up Wipes by soaking them in water.  After a week of soaking, the wipes still had not broken down.  CBS asked Target to comment the results of its study, but the company did not provide a response.

35.    In addition to criticism from the wastewater industry, Target has also received, via its website, numerous complaints from individual consumers around the country that the company's ostensibly flushable wipes are actually clogging plumbing and septic systems.  A representative sample of these complaints are as follows:

a.    On October 17, 2012, Very Frustrated from Milwaukee, WI posted the following:

Don't believe the claims that these are flushable.  My 195 dollar bill from the plumber who had to dig them out of the pipes and the sludge covered basement floor are evidence to the contrary.  We only use an average of 1 wipe a day for my 3 year old when she has a BM.  Even with that low amount of usage, the ONLY thing the plumber pulled out of the pipes were these wipes.

b.    On July 27, 2012, Kelly from Saint Louis, MO posted the following:

I could live with the tearing as the wipes come out of the package. What I cannot live with is the clogged sewer pipes that these wipes caused.  We never used more than the 2 suggested and our pipes still clogged.  My husband snaked the pipes TWICE and came up with wipes that did not dissolve and break apart as promised. [ . . . ]

11

    c.    On February 26, 2013, Cherie from Dane, WI posted the following:

> Although the package says that they are safe for septic systems, they are not!  We only used them occasionally, yet they caused our septic tank to back up into the basement.  YUCK!  So if you choose to use them anyway, and can manage to get the wipes out of the incredibly frustrating package, don't flush them!

    d.    On July 20, 2012, SAHMIAM from Long Island, NY posted the following:

> I agree with the previous reviews!!!  The new ones are horrible!  If it ain't broke, don't fix it!  The new ones are hard to pull out, the refills now have a plastic top opening – [ . . . ] and the new ones do NOT fit the old container.  And there is a new ingredient because it is causing a rash on one of my children.  MOST IMPORTANTLY, NEVER flush even "flushable" wipes.  I learned the hard way with the previous version of wipes, that I LOVE and still do.  My sewer pipes backed up into my basement because of them.  They are a great concept but they aren't toilet paper!!!

36.    As these complaints make clear, Target knew that its Up & Up Flushable Wipes were defective and clogging people's pipes even though consumers believed the wipes were safe to flush like toilet paper.  Yet Target still refused to remove its misrepresentations related to flushability from its product packaging or its website.

37.    Indeed, apparently acknowledging that the Up & Up Flushable Wipes are not in fact "flushable," "sewer and septic safe," and were in clogging consumer's pipes, Target and Nice-Pak recently changed the packaging from instructing consumers to "Flush one or two wipes at a time" to "Flush **only one wipe** at a time."  (Emphasis added.)  But the more prominent misrepresentations related to the flushability of the wipes on the packaging still remain.

38.    Target charges consumers a premium for its Up & Up Flushable Wipes over what it charges for the Up & Up standard wipes, which the company does not represent as "flushable."

39.     Accordingly, consumers overpay for the Up & Up Flushable Wipes because, despite Target's representations to the contrary, the Up & Up Flushable Wipes are in fact not "flushable," or "sewer or septic safe," nor do they "break[] apart when flushed."  Thus, the value of the Up & Up Flushable Wipes was diminished at the time Target sold them to consumers.   In light of Target's knowledge that the Up & Up Flushable Wipes were in fact not "flushable," or "sewer or septic safe," Target knew or should have known that the premium it was charging for the Up & Up Flushable Wipes was unjustified and was being obtained by fraud.

## V.    NAMED PLAINTIFF'S FACTS

40.     Christopher Meta started purchasing the Up & Up Flushable Wipes in or around July, 2011, from a Target store located in Boardman, Ohio.  Since that time, he has purchased approximately 18 boxes of the Up & Up Flushable Wipes from the same store.   He used the wipes primarily for potty training his daughter and disposed of the wipes by flushing them down his toilet as directed by the Up & Up Wipes packaging.

41.     On or around Summer 2013, Mr. Meta started noticing problems with the plumbing in his house, such as the tub not draining and toilet not flushing properly. These problems usually went away on their own.

42.     However, on or about November 20, 2013, Mr. Meta hired Novak Septic Pumping ("Novak") to diagnose the problem.   Novak discovered that the Up & Up Flushable Wipes Mr. Meta had disposed of via his toilet had not dispersed and had instead caked together in the plumbing and septic system, causing the problems Mr. Meta had previously observed.   Accordingly, Mr. Meta did not discover or become aware that the Up & Up Flushable Wipes were defective and that the representations on

the wipes' packaging were untrue until Novak informed him that they had clogged his system.

43.    Novak flushed the pipes and septic system and charged Mr. Meta approximately $210 for labor and service, which Mr. Meta paid.  Novak also informed Mr. Meta that the septic system could be permanently damaged due to the wipes, but that they would not be able to tell if that was the case until spring or summer 2014.  If the septic system is ruined, then it may cost Mr. Meta as much as $20,000 to acquire a replacement system.

44.    Mr. Meta would not have purchased the Up & Up Flushable Wipes had he known that the wipes were not in fact "flushable" or safe for sewer and septic use. Indeed, the only reason Mr. Meta purchased the Up & Up Flushable Wipes is because they purported to provide a more convenient means of disposal.

45.    Mr. Meta called Target Guest Reporting Center and put Target on notice that the Up & Up Flushable Wipes were not in fact flushable as advertised and that they caused damage to his plumbing.   He requested reimbursement for his damages. Target Guest Reporting Center offered Mr. Meta a $3.00 Target gift card.  The $3.00 Target gift card does not adequately remedy Mr. Meta's damages.  And Target did not offer any further remedy.

## VI.    TOLLING AND ESTOPPEL OF STATUTES OF LIMITATION

46.    Defendants knew that the Up & Up Flushable Wipes did not break apart after flushing, did not disperse after flushing, and were not sewer and septic safe.  In short, they knew the wipes were defective and not flushable.

47.    Although Defendants knew that the Up & Up Flushable Wipes were defective and that the representations regarding the flushability of the wipes were not

14

true, Defendants continued to make these misrepresentations and sell the defective product.

48.     Neither Mr. Meta nor members of the Class were capable of determining that the Up & Up Wipes were defective or that the representations on the wipes' packaging and on Target's website were untrue until they were informed by a plumber or other experienced service technician that the wipes had clogged their pipes.

49.     Defendants concealed the fact that the Up & Up Flushable Wipes were defective and did not break apart after flushing, did not disperse after flushing, and were not sewer and septic safe and/or failed to inform members of the Class of the existence of the defect.

## VII.   CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the members of a Class comprising of:

> All persons residing in the State of Ohio who purchased Target-brand "up & up®" "flushable" moist tissue wipes and toddler and family wipes (the "Up & Up Flushable Wipes").

51.     Subject to additional information obtained through further investigation and discovery, the foregoing Class may be expanded or narrowed by amendment or amended complaint.   Specifically excluded from the Class is any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' legal representatives, assigns, and successors.

52.     Members of the Class are so numerous that joinder is impracticable. While the exact number of Class members is unknown to Plaintiff, it is believed that the Class is comprised of at least thousands of members geographically dispersed

throughout the state of Ohio.   The Class, however, is readily identifiable from information and records in Target's possession.

53.    Common questions of law and fact exist as to all members of the Class. These questions predominate over questions that may affect only individual Class members because Defendants acted on grounds generally applicable to the Class. Such common legal or factual questions include:

a.    Whether the Up & Up Flushable Wipes are in fact flushable;

b.    Whether the Up & Up Flushable Wipes break apart after flushing;

c.    Whether the Up & Up Flushable Wipes are dispersible;

d.    Whether the Up & Up Flushable Wipes are sewer and septic safe;

e.    Whether the Up & Up Flushable Wipes are defective;

f.    Whether the Up & Up Flushable Wipes are defectively designed and/or manufactured;

g.    Whether Defendants had a duty to design the Up & Up Flushable Wipes against reasonably foreseeable hazards;

h.    Whether Defendants designed the Up & Up Flushable Wipes against reasonably foreseeable hazards;

i.    Whether Defendants had a duty to warn Plaintiff and the Class that its Up & Up Flushable Wipes were not flushable or sewer and septic safe;

j.    Whether Defendants breached their duty to warn Plaintiff and the Class;

k.    Whether Defendants knew or reasonably should have known that the Up & Up Flushable Wipes were defective prior to distributing the wipes to Plaintiff and the Class;

l.    Whether Defendants knew or reasonably should have known that the Up & Up Flushable Wipes were defective after distributing the wipes to Plaintiff and the Class;

m.    Whether Defendants concealed and/or failed to disclose to Plaintiff and the Class the fact that the wipes were defective;

16

n.    Whether Defendants tortiously breached their warranty obligations to Plaintiff and the Class in connection with the Up & Up Flushable Wipes;

o.    Whether Defendants breached the implied warranty of merchantability relating to the Up & Up Flushable Wipes;

p.    Whether Defendants were unjustly enriched by receiving moneys in exchange for Up & Up Flushable Wipes that are not flushable, do not break apart after flushing, and are not sewer and septic safe;

q.    Whether Defendants should be ordered to disgorge all or part of the ill-gotten profits they received from the sale of the Up & Up Flushable Wipes;

r.    Whether Plaintiff and the Class are entitled to damages, including compensatory, exemplary and statutory damages;

s.    Whether Defendants should be enjoined from selling and marketing Up & Up Flushable Wipes;

t.    Whether Defendants engaged in unfair, false, misleading, deceptive conduct while selling and/or marketing the Up & Up Flushable Wipes; and

u.    Whether Defendants engaged in unfair, false, misleading, deceptive conduct by concealing and/or failing to inform Plaintiff and members of the Class that the Up & Up Flushable Wipes are not flushable or safe for sewer and septic use.

54.    Defendants' defenses to Plaintiff's claims are typical of its defenses to claims of the members of the class.

55.    Plaintiff's claims are typical of the members of the Class as all members of the Class are similarly affected by Defendants' actionable conduct.  Plaintiff and all members of the Class purchased Up & Up Flushable Wipes that were defective in that they are not flushable, dispersible or safe for sewer or septic use.  Plaintiff and all members of the Class were subject to the same misrepresentations made by Defendants on the Up & Up Flushable Wipes' packaging and on Target's website.  In

17

addition, Defendants' conduct that gave rise to the claims of Plaintiff and members of the Class is the same for all members of the Class.

56.     Plaintiff will fairly and adequately protect the interests of the Class because Plaintiff has no interests antagonistic to, or in conflict with, the Class that Plaintiff seeks to represent.  Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation.  Plaintiff has or can acquire adequate financial resources to assure that the interests of the Class will not be harmed.

57.     Class action treatment is a superior method for the fair and efficient adjudication of this controversy in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the Class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

58.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

59.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class and subclass as a whole.

60.     This forum is an appropriate forum for litigation of the claims of the Class, which is comprised only of persons residing in the state of Ohio.

## COUNT I
## Tortious Breach of Warranty
### (As to Defendants)

61.     Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

62.     Under Ohio law, a defect is considered to exist in a product that is not of good and merchantable quality, fit and safe for its ordinary intended use.

63.     The Up & Up Flushable Wipes are defective because they are not flushable, they do not break up after flushing, and they are not sewer and septic safe, thereby rendering them unmerchantable, unsafe and unfit for their ordinary and intended use.

64.     This defect existed at the time the product left Defendants' hands.

65.     This defect was the direct and proximate cause of the injuries and losses suffered by Plaintiff and members of the Class.

66.     Plaintiff brings Count I on behalf of himself and the members of the Class to recover economic loss only.

## COUNT II
## Negligent Design
### (As to all Defendants)

67.     Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

68.     Defendants had a duty to design their Up & Up Flushable Wipes against reasonably foreseeable hazards.

69.     Defendants breached that duty because they did not design the Up & Up Flushable Wipes against reasonably foreseeable hazards, such as clogged plumbing

and septic systems resulting from the wipes not breaking apart or dispersing after flushing.

70.    Defendants' breach of this duty was the direct and proximate cause of the injuries and losses suffered by Plaintiff and members of the Class.

71.    Plaintiff brings Count II on behalf of himself and the members of the Class to recover economic loss only.

**COUNT III**
**Negligent Failure to Warn**
**(As to all Defendants)**

72.    Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

73.    Defendants had a duty to warn Plaintiff and members of the Class about reasonably foreseeable hazards such as clogged plumbing and septic systems associated with flushing the Up & Up Flushable Wipes.

74.    Defendants breached that duty by failing to warn Plaintiff and members of the Class about these hazards.

75.    Defendants' breach of their duty to warn was the direct and proximate cause of the injury and losses suffered by Plaintiff and the members of the Class.

76.    Plaintiff brings Count III on behalf of himself and the members of the Class to recover economic loss only.

**COUNT IV**
**Negligent Misrepresentation**
**(As to all Defendants)**

77.    Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

78.     Defendants, in the course of their business, provided false information regarding the Up & Up Flushable Wipes, as they represented that the wipes were "flushable," "dispersible" and "sewer and septic system safe."

79.     Defendants made the same false representations to Plaintiff and members of the Class.

80.     Defendants provided the above false information for the guidance of consumers buying the Up & Up Flushable Wipes and Plaintiff and members of the Class sought guidance from Defendants in purchasing the Up & Up Flushable Wipes.

81.     Defendants failed to exercise reasonable care or competence in obtaining and communicating information to Plaintiff and members of the Class regarding the flushablity, or lack thereof, of the Up & Up Flushable Wipes and that they were not in fact sewer and septic system safe.

82.     The above false information proximately caused Plaintiff and the members of the Class to suffer pecuniary or economic loss due to their justifiable reliance on such false information.

83.     There is an obvious link between Defendants' negligent misrepresentations and the pecuniary loss suffered by Plaintiff and members of the Class.

84.     Plaintiff brings Count IV on behalf of himself and the members of the Class to recover economic loss only.

## COUNT V
## Fraud
## (As to all Defendants)

85.    Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

86.    Defendants represented that the Up & Up Flushable Wipes were "flushable, "dispersible" and "sewer and septic system safe" and such representations were material to the decision by Plaintiff and members of the Class to purchase the Up & Up Flushable Wipes.

87.    Defendants made the same representations to Plaintiff and members of the Class.

88.    Defendants' representations were false, and Defendants made such representations with knowledge of their falsity, and/or with such utter disregard and recklessness as to whether the representations were true or false that knowledge may be inferred.

89.    Defendants made the false representations regarding the Up & Up Flushable Wipes with the intent to mislead consumers into relying upon their representations and Plaintiff and members of the Class justifiably relied upon such representations.

90.     Defendants' fraudulent representations proximately caused Plaintiff and the members of the Class to suffer injury and losses as a result of their justifiable reliance on the fraudulent representations.

**COUNT VI**
**Defective Design/Formation: Ohio Rev. Code Ann. § 2307.75**
**(As to all Defendants)**

91.    Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

92.    Target is a "supplier" within the meaning of Ohio Rev. Code Ann. § 2307.71(A)(15).

93.    Pursuant to Ohio Rev. Code Ann. § 2307.78(A)(1), Target was negligent in advertising its Up & Up Flushable Wipes as "flushable, "dispersible," able to "break apart after flushing," and "sewer and septic system safe," and such negligence is a proximate cause of harm for which Plaintiff and the members of the Class seek to recover compensatory damages.

94.    In the alternative, pursuant to Ohio Rev. Code Ann. § 2307.78(A)(2), the Up & Up Flushable Wipes did not conform, when they left the control of Target, to Target's representations that they were "flushable," "dispersible," able to "break apart after flushing," and "sewer and septic system safe," and Target's representations and the Up & Up Flushable Wipes failure to conform to Target's representations were a proximate cause of harm for which Plaintiff and the members of the Class seek to recover compensatory damages.

95.    Pursuant to Ohio Rev. Code Ann. § 2307.78(B)(7), Target marketed the Up & Up Flushable Wipes under its own label and/or trade name.  As such, Target is liable for compensatory damages under Ohio Rev. Code Ann. §§ 2307.71 to 2307.77 as if it were the manufacturer of the Up & Up Flushable Wipes.

96.    Nice-Pak is a "manufacturer" within the meaning of Ohio Rev. Code Ann. § 2307.71(A)(9).

97.     At the time the Up & Up Flushable Wipes left Defendants' control, they were defectively designed because they were not "flushable," and the foreseeable risks associated with the Up & Up Flushable Wipes' design, such as clogged plumbing and septic systems resulting from the wipes not breaking apart or dispersing after flushing, exceeded the benefits associated with the Up & Up Flushable Wipes' design.

98.     As a direct and proximate result of the Up & Up Flushable Wipes' defective design, Plaintiff and members of the Class have suffered physical damage to property, including clogged plumbing and septic systems, and such damage constitutes "harm" as defined under Ohio Rev. Code Ann. § 2307.71(A)(7).

99.     Pursuant to Ohio Rev. Code Ann. § 2307.79, Plaintiff and members of the Class who have suffered "harm" are entitled to compensatory damages that proximately resulted from the defective aspects of the Up & Up Flushable Wipes.

**COUNT VII**
**Product Defect due to Inadequate Warning or Instruction: Ohio Rev. Code Ann. §**
**2307.76**
**(As to all Defendants)**

100.     Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

101.     Pursuant to Ohio Rev. Code Ann. § 2307.78, Target is liable as a "supplier" as outlined above.

102.     Nice-Pak is a "manufacturer" within the meaning of Ohio Rev. Code Ann. § 2307.71(A)(9).

103.     The Up & Up Flushable Wipes are defective due to inadequate warning or instruction because at the time of marketing, when they left the control of Defendants, Defendants knew or, in the exercise of reasonable care, should have known about the risks associated with the Up & Up Flushable Wipes, such as damage to plumbing and

24

septic systems, and Defendants failed to provide the warning or instruction that a manufacturer or similarly situated supplier would have provided concerning the risk of property damage.

104.   In light of the likelihood that the Up & Up Flushable Wipes would cause damage to plumbing and septic systems, and the likely seriousness of such harm, a reasonable manufacturer or similarly situated supplier would have warned consumers that the Up & Up Flushable Wipes were not, in fact, "flushable" or dispersible, and could cause damage to plumbing and septic systems if flushed.

105.   In the alternative, or in addition to, other allegations in this Amended Complaint, the Up & Up Flushable Wipes are defective due to inadequate post-marketing warning or instruction because at a relevant time after the Up & Up Flushable Wipes left the control of Defendants, Defendants knew or, in the exercise of reasonable care, should have known about the risks associated with the Up & Up Flushable wipes, such as damage to plumbing and septic systems, and Defendants failed to provide the post-marketing warning or instruction that a manufacturer or similarly situated supplier would have provided concerning the risks of property damage.

106.   In light of the likelihood that the Up & Up Flushable Wipes would cause damage to plumbing and septic systems, and the likely seriousness of such harm, a reasonable manufacturer or similarly situated supplier would have provided a post-marketing warning to consumers that the Up & Up Flushable wipes were, in fact, not "flushable" or dispersible, and could cause damage to plumbing and septic systems if flushed.

107.   As a direct and proximate result of Defendants' failure to provide adequate warning and/or instructions, Plaintiff and members of the Class have suffered physical

damage to property, including clogged plumbing and septic systems, and such damage constitutes "harm" as defined under Ohio Rev. Code Ann. § 2307.71(A)(7).

108.   Pursuant to Ohio Rev. Code Ann. § 2307.79, Plaintiff and members of the Class who have suffered "harm" are entitled to compensatory damages that proximately resulted from Defendants' failure to provide adequate warning and/or instructions.

**COUNT VIII**
**Product Defect due to Nonconformance with Representations: Ohio Rev. Code Ann. § 2307.77**
**(As to all Defendants)**

109.   Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

110.   Pursuant to Ohio Rev. Code Ann. § 2307.78, Target is liable as a "supplier" as outlined above.

111.   Nice-Pak is a "manufacturer" within the meaning of Ohio Rev. Code Ann. § 2307.71(A)(9).

112.   The Up & Up Flushable Wipes are defective because they did not conform, when they left the control of Defendants, to Defendants' representations that they were "flushable," "dispersible," "able to break apart after flushing," and "sewer and septic system safe."

113.   As a direct and proximate result of the Up & Up Flushable Wipes' failure to conform with Defendants' representations, Plaintiff and members of the Class have suffered physical damage to property, including clogged plumbing and septic systems, and such damage constitutes "harm" as defined under Ohio Rev. Code Ann. § 2307.71(A)(7).

26

114.    Pursuant to Ohio Rev. Code Ann. § 2307.79, Plaintiff and members of the Class who have suffered "harm" are entitled to compensatory damages that proximately resulted from the defective aspects of the Up & Up Flushable Wipes.

## COUNT IX
## Breach of the Implied Warranty of Merchantability: Ohio Rev. Code Ann. § 1302.27
### (As to Target)

115.    Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

116.    The Up & Up Flushable Wipes are "goods" within the meaning of Ohio Rev. Code Ann. § 1302.01(A)(8).

117.    Plaintiff and the members of the Class are "buyers" within the meaning of Ohio Rev. Code Ann. § 1302.01(A)(1).

118.    A warranty that goods shall be merchantable and fit for the ordinary purposes for which such goods are used is implied if the seller is a merchant with respect to goods of that kind.  Ohio Rev. Code Ann. § 1302.27.

119.    Target is a "merchant" with respect to the Up & Up Flushable Wipes within the meaning of Ohio Rev. Code Ann. § 1302.01(A)(5).

120.    Target's implied warranty that the Up & Up Flushable Wipes were merchantable was part of the basis of the bargain between Target and Plaintiff and members of the Class.

121.    Target breached the implied warranty of merchantability because the Up & Up Flushable Wipes were not fit for the ordinary purpose in which such goods are used and because they do not conform to the promises or affirmations of fact made on the container or label.  *See* Ohio Rev. Code Ann. § 1302.27(B)(3), (6).  Specifically, the Up & Up Flushable Wipes are unfit for the ordinary purpose and do not confirm to the

promises or affirmations of fact made on their container or label because they do not break apart after flushing, are not dispersible, are not sewer and septic safe – they are not flushable.

122.    Plaintiff has provided sufficient and timely notice to Target, pursuant to Ohio Rev. Code Ann § 1302.65(C)(1), and despite this notice, Target has failed or refused to provide an effective remedy.

123.    Target has also received numerous complaints and other notices from consumers, media, and wastewater officials advising of the Up & Up Flushable Wipes' defective nature.

124.    Pursuant to Ohio Rev. Code Ann. § 1302.88 and 1302.89(B)(2), Plaintiff and members of the Class sustained injuries and damages as a result of Target's breach of implied warranty of merchantability.

**COUNT X**
**Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.***
**(As to Target)**

125.    Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

126.    Target is a "warrantor" within the meaning of Section 2301(5) of the Magnuson-Moss Warranty Act (the "Act").

127.    Plaintiff and the members of the Class are "consumers" within the meaning of Section 2301(3) of the Act.

128.    The Up & Up Flushable Wipes were sold and supplied to Plaintiff and members of the Class by and through Target.

129.    Target impliedly warranted that the Up & Up Flushable Wipes were merchantable and fit for ordinary purposes, including that the Up & Up Flushable Wipes

would perform in a manner consistent with Target's false claims that the wipes were flushable and sewer and septic system safe ("Target's Implied Warranty under the Act").

130.   Target's Implied Warranty under the Act is an implied warranty within the meaning of Section 2301(7) of the Act.

131.   Target's Implied Warranty under the Act is an implied warranty within the meaning of Ohio Rev. Code Ann. § 1302.27.

132.   Target breached Target's Implied Warranty under the Act.

133.   Target knew that its false representations were false and that the Up & Up Flushable Wipes were not flushable, dispersible or sewer and septic safe.

134.   Target had more than an adequate opportunity to cure or remedy the problem caused by Target's False Claims, which opportunity it has not taken to date.

135.   Plaintiff and the members of the Class were damaged as a direct and proximate result of Target's failure to comply with their obligations under the Target's Implied Warranty under the Act.

**COUNT XI**
**<u>Unjust Enrichment</u>**
**(As to Target)**

136.   Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

137.   Plaintiff and members of the Class conferred a benefit upon Target. Plaintiff and members of the Class paid money directly to Target to purchase their Up & Up Flushable Wipes.  Accordingly, Plaintiff and members of the Class conferred an economic benefit upon Target because Target profited as a result from Plaintiff and members of the Class paying money to purchase its Up & Up Flushable Wipes.

138.    Target knew about the benefit Plaintiff and members of the Class conferred upon it.

139.    Target, however, retained that benefit under circumstances that make it unjust for Target to retain it without paying the value thereof.  Specifically, Target retained that benefit despite the fact that that it knew that the Up & Up Flushable Wipes were defective because they were not flushable, but it nevertheless sold the wipes to consumers and falsely stated that the wipes were dispersible, break apart after flushing, and are sewer and septic safe.

140.    Target acted in bad faith by falsely claiming that the Up & Up Flushable Wipes were flushable, dispersible, break apart after flushing and sewer and septic safe, despite knowing full well that this was not true.

141.    Plaintiff brings this unjust enrichment claim on behalf of himself and the members of the Class to recover damages in the amount that Target was unjustly enriched.  Specifically, Target's profit from sales of its Up & Up Flushable Wipes.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court:

A.    Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Award damages, including compensatory, exemplary and statutory damages, to Plaintiff and the Class in an amount to be determined at trial;

C.    Grant restitution to Plaintiff and the Class and require Defendants to disgorge its ill-gotten gains;

D.     Permanently enjoin Defendants from engaging in the wrongful and unlawful conduct alleged herein;

E.     Award Plaintiff and the Class their expenses and costs of suit, including reasonable attorneys' fees pursuant to 15 U.S.C. § 2310(d)(2) and to the extent provided by law;

F.     Award Plaintiff and the Class prejudgment and post-judgment interest at the highest legal rate to the extent provided by law; and

G.     Award such further relief as the Court deems appropriate.

## JURY DEMAND

***PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.***

Respectfully submitted,

s/ Stuart E. Scott
DENNIS R. LANSDOWNE (0026036)
STUART E. SCOTT  (0064834)
DANIEL FRECH  (0082737)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (FAX)
*dlansdowne@spanglaw.com*
*sscott@spanglaw.com*
*dfrech@spanglaw.com*

JONATHAN K. TYCKO
LORENZO B. CELLINI TYCKO
**TYCKO & ZAVAREEI LLP**
2000 L Street, N.W., Suite 808
Washington, D.C.  20036
(202) 973-0900
(202) 973-0950 (FAX)
*jtycko@tzlegal.com*
*lcellini@tzlegal.com*

***Counsel for Plaintiff and the Proposed Class***

31