UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER META, ) | CASE NO. 4: 14 CV 0832 |
| ) | |
| ) | JUDGE DONALD C. NUGENT |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| v. ) | |
| ) | |
| TARGET CORPORATION, *et al.*, ) | |
| ) | |
| ) | |
| Defendants. ) | |

This matter comes before the Court on two motions: (1) Defendant Target Corporation's ("Target") Partial Motion to Dismiss (ECF #17); and (2) Defendant Nice-Pak Products, Inc.'s ("Nice-Pak") Partial Motion to Dismiss Counts (1) - (5) (ECF #19).  Plaintiff has responded to the motions, and Defendants Target and Nice-Pak have replied.  Accordingly, the motions are ripe for consideration.  For the reasons explained herein below, Defendant Target's motion is GRANTED IN PART and DENIED IN PART, and Defendant Nice-Pak's motion is GRANTED IN PART and DENIED IN PART.  Accordingly, Counts I through IV of the Amended Class Action Complaint (ECF #4) are DISMISSED.  All other counts remain.

I. **FACTS**

Plaintiff Christopher Meta has brought a putative class action against Defendants Target and Nice-Pak based on his purchase of Up & Up® brand flushable wipes from Target.  The Amended Class Action Complaint concerns two pre-moistened wipe products sold in stores under the Up & Up® brand.  One of the products is marketed in red packaging as "toddler

wipes," while the other is marketed in green packaging as "flushable moist wipes."[1] Target states on its website and on the packaging for the Up & Up® wipes that the wipes are "flushable" and safe for septic and sewer systems.

Plaintiff asserts that he began purchasing the wipes from a Target store in Boardman, Ohio in or around July, 2011. Since that time, he has purchased approximately 18 packs of the wipes from the same store. He used the products primarily for potty training his daughter, and flushed the wipes down the toilet. Plaintiff alleges that he noticed problems with plumbing in his home in 2013, and eventually incurred approximately $210 to have problems with his pipes and septic system corrected.[2] According to Mr. Meta, the Up & Up® brand flushable wipes caused the problems when they caked together in his pipes and septic system after flushing, despite representations on the product packaging and on Target's website that the wipes are flushable, break apart after flushing, and are safe for sewers and septic systems.

Based on these allegations, Mr. Meta seeks certification of a class consisting of "All persons residing in the State of Ohio who purchased Target-Brand 'up&up®' 'flushable' moist tissue wipes and toddler and family wipes (the "Up & Up® Flushable Wipes")." Certain members of the putative class, like Mr. Meta, allegedly suffered physical damage to property other than the wipes when the wipes were flushed. Other members of the putative class did not suffer any injury to property, but nonetheless seek compensation for having purchased wipes that

---

[1]Plaintiff has alleged that Nice-Pak was involved with the manufacturing and/or packaging of both the red-packaged and green-packaged Up & Up® flushable wipes. Nice-Pak alleges that it had no involvement with the green-packaged product, and has moved to dismiss the Amended Complaint for failure to add a proper party.

[2]Plaintiff claims that *if* he ever has to replace his septic system it will cost as much as $20,000.

2

in fact are not flushable.

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court must assess, given the material required to be in the complaint, whether the complainant can prove a set of facts entitling the complainant to recovery on the allegations against the moving party. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007). In making this assessment, the Court must take only well-pleaded factual allegations as true and reject allegations that are nothing more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 127 S.Ct. at 1964-65; *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1953 (2009).

The standard articulated in *Iqbal* and *Twombly* is designed to screen out more than "little green men" cases; the standard is designed to screen out cases that, while not utterly impossible, are implausible. *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629-30 (6th Cir. 2009). As explained below, counts I to IV of Plaintiffs' Amended Complaint fail to state plausible claims.

## III. DISCUSSION

Plaintiff's Amended Class Action Complaint contains the following 11 Counts:

(1)  Count I: Tortious Breach of Warranty (All Defendants);

(2)  Count II: Negligent Design (All Defendants);

(3)  Count III: Negligent Failure to Warn (All Defendants);

(4)  Count IV: Negligent Misrepresentation (All Defendants);

(5)  Count V: Fraud (All Defendants);

(6)  Count VI: Defective Design/Formation: Ohio Rev. Code Ann. § 2307.75 (All Defendants);

    (7)     Count VII: Product Defect due to Inadequate Warning or Instruction; Ohio Rev. Code Ann § 2307.76 (All Defendants);

    (8)     Count VIII: Product Defect due to Nonconformance with Representations: Ohio Rev. Code Ann. § 2307.77 (All Defendants);

    (9)     Count IX: Breach of the Implied Warranty of Merchantability; Ohio Rev. Code Ann. § 1302.27 (Target);

    (10)    Count X: Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. (Target); and

    (11)    Count XI: Unjust Enrichment (Target).

Target and Nice-Pak each have moved for partial dismissal of the Amended Complaint. Target seeks dismissal of Counts I through VIII and IX. Nice-Pak requests dismissal of Counts I through V.

**A.**    <u>**Counts I Through III Are Abrogated By The OPLA**</u>

Both Target and Nice-Pak argue that Counts I through V should be dismissed because, among other things, these common law claims have been abrogated by the Ohio Product Liability Act ("OPLA"), and no exceptions apply. The Court agrees with respect to Counts I through III.[3]

The OPLA abrogates common law product liability causes of action.[4] The Ohio General

---

[3] Defendants have not established that the claims for negligent misrepresentation and fraud in Counts IV and V are product liability claims that fall under the purview of the OPLA. Count IV for negligent misrepresentation nonetheless fails for other reasons explained below. As discussed below, the fraud claim in Count V does not appear to fall under the OPLA when Count V is construed in a light most favorable to Mr. Meta.

[4] Under the OPLA, a product liability claim is a claim seeking damages for "death, physical injury to person, emotional distress, or physical damage to property other than the product in question." R.C. § 2307.71(A)(13).

4

Assembly amended the OPLA effective April 7, 2005, thereby expressly eliminating "all common law product liability claims or causes of action." R.C. § 2307.71(B). Likewise, both the Sixth Circuit Court of Appeals and the Northern District of Ohio have acknowledged that the OPLA expressly abolished all common law product liability claims. *Krumpelbeck v. Breg, Inc.*, 491 Fed. App. 713, 715 (6th Cir. Ohio 2012); *Germain v. Teva Pharms., USA, Inc.*, 2014 U.S. App. LEXIS 12111, *86-88 (6th Cir. 2014); *Miles v. Raymond Corp.*, 612 F. Supp. 2d 913, 917-918 (N.D. Ohio 2009). As explained in *Raymond Corp.*, "the abrogation language of § 2307.71(B) provides a clear and unequivocal statement of the legislature's intent [to abolish Ohio common law products claims], which must be given effect." *Raymond Corp.*, 612 F. Supp. 2d at 920.

Plaintiff does not, and cannot, dispute the general proposition that the OPLA abrogates common law product liability claims. Rather than deny abrogation altogether, Plaintiff argues that this case falls under a narrow exception to the OPLA's comprehensive abrogation of common law claims, which has been carved out in the Northern District of Ohio. Under this exception, a consumer like Mr. Meta who is not in privity with the manufacturer may state a claim under Ohio common law product claims seeking "economic damages" based on damages to the product in question.[5] *See Huffman v. Electrolux N. America*, 961 F. Supp. 3d 875, 881 (N.D. Ohio 2013).[6] The Ohio Revised Code provides that economic loss only encompasses

---

[5]This exception has not been adopted by the Supreme Court of Ohio. The Sixth Circuit apparently has never held that any such exception to the OPLA exists. This Court is not bound by the decisions creating this exception.

[6]Ohio Revised Code § 2307(C) states, "Any recovery of compensatory damages for economic loss based on a claim that is asserted in a civil action, other than a product liability claim, is not subject to sections 2307.71 to 2307.79 of the Revised Code, but may occur under the common law of this state or other applicable sections of the Revised code."

"direct, incidental, or consequential pecuniary loss, including, but not limited to, damage to the product in question, and nonphysical damage to property other than that product." R.C. § 2307.71(A)(2). The economic damages that Plaintiff claims here consist of the difference between the value of the product advertised to consumers and the allegedly defective product Mr. Meta claims he received.

Plaintiff cites cases which support the ability to carve out common law claims for economic loss from product liability claims that are subsumed under the OPLA. In *Huffman v. Electrolux N. Am., Inc.*, 961 F. Supp. 2d 875, 890 (N.D. Ohio 2013), the plaintiff alleged that she suffered an economic loss to the value of her washing machine where it developed a "pungent odor" so severe that the plaintiff had to contact a plumber to investigate, multiple attempts to address or correct the smell failed, and this condition made the washer useless because it destroyed clothing or other household goods. In *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 947 (N.D. Ohio 2009), the plaintiffs purchased front-loading Whirlpool washing machines that allegedly suffered from multiple defects, ultimately causing the machines to "accumulate mold and mildew and give off moldy odors, damaging the Plaintiffs' clothing and rendering the machines potentially dangerous and ultimately useless." Further, in *Hale v. Enerco Group, Inc*., 2011 U.S. Dist. LEXIS 781 (N.D. Ohio Jan. 5, 2011), the plaintiffs alleged their vent-free heaters were defectively designed because, during the heater's ignition cycle, gas flames would often extend or flash outside of the combustion space and the front grill, posing a latent fire hazard to anyone or anything in close proximity to the heater.

Contrary to Plaintiff's claims, these cases are distinguishable from the situation at hand. In each of the cases cited by Plaintiff, the product in question contained a defect that caused

6

damage to the product itself.  Here, the alleged defects to the Up & Up® wipes, that they do not disintegrate upon flushing and are not sewer and septic system safe, do not cause any damage to the wipes.  This distinction important, as is illustrated by a comparison of *Huffman* to *Mitchell v. Proctor & Gamble*, No. 2:09CV426, 2010 WL 72822 (S.D. Ohio March 1, 2010).

In *Huffman*, the plaintiff brought a putative class action on behalf of all Ohio residents who purchased front loading washing machines manufactured by Electrolux.  The plaintiff alleged that these washing machines were defective because they grew mold and emitted a foul odor.  Therefore, the washing machines damaged themselves and were no longer useful for their intended purpose.  The plaintiff alleged three statutory OPLA claims and three common law product liability claims.  However, the plaintiff alleged that he was seeking economic damages only for the common law product liability claims.

Electrolux moved to dismiss the common law product liability claims base on abrogation under the OPLA. The court denied the motion, relying on *LaPuma v. Collinwood Concrete*, 75 Ohio St.3d 64 (1996) and *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40 (1989).  In *La Puma*, the court held that, "R.C. 2307.32 makes it clear that although a cause of action may concern a product, it is not a product liability claim within the purview of Ohio's product liability statutes unless it alleges damages other than economic ones, and that a failure to allege other than economic damages does not destroy the claim, but rather removes it from the purview of those statutes."  Despite the fact that *LaPuma* predates the 2005 amendment to the OPLA abrogating all product liability claims, the Electrolux court concluded that the "OPLA does not preempt common-law products cases seeking only economic damages."  *Huffman*, 961 F. Supp. 2d at 881.

7

In reaching its decision, the court in *Huffman* attempted to distinguish *Mitchell*. *Id.* at 880. In *Mitchell*, the district court disallowed a common law claim for economic loss when the product at issue could be used for its intended purpose (despite alleged defects) and the economic loss claim was based on the same facts as products liability claims subsumed under the OPLA. The plaintiff brought a putative class action against Proctor and Gamble in its capacity as the manufacturer of Prilosec OTC, a drug used to treat heartburn. The plaintiff alleged that the drug was defective because it caused diarrhea, night sweats, and fever. *Mitchell*, 010 WL 72822 at *1. The plaintiff's complaint raised common law product liability claims and claims under the Ohio Consumer Sales Practice Act ("OCSPA"). The plaintiff sought to certify a class of all Ohio residents who bought Prilosec during a certain time frame. *Id.* at *2.

Proctor & Gamble filed a motion to dismiss arguing, in part, that the plaintiff's claims were preempted by the OPLA. In response, the plaintiff argued that he was only bringing the common law claims to recover for economic damages. These economic damages allegedly included "the purchase price of the product" and/or "the difference in the market value of the product actually received and the value it represented." *Id*. at *4. The court rejected this argument, finding that the claims about Prilosec were product liability claims. "And the injury [the plaintiff] is alleged to have suffered [illness] is related directly to that product." The court therefore held, "[The plaintiff] can not [sic] separate out his claims from the purview of the OPLA simply by claiming only economic loss." Accordingly, the court dismissed the plaintiff's claims without prejudice to properly plead these claims under the OPLA. *Id.*

There is a critical difference between *Huffman* and *Mitchell*. In *Mitchell*, the product in question could be used for its intended purpose but such use allegedly yielded undesirable side

8

effects. In *Huffman*, on the other hand, the plaintiff suffered an injury that consisted of not being able to use the product for its intended purpose at all. The washing machine could no longer wash clothes. However, because the plaintiff's injury in *Huffman* was damage to the "product itself", a claim could not be brought under the OPLA for this injury, where R.C. § 2307.71(A)(13) states that a product liability claim does not encompass physical damage to the product in question. Nevertheless, the court was concerned that a consumer who purchased a product that damaged itself and thus suffered economic injury was deprived of a remedy. Therefore, the court held that a consumer in such a situation, where the product at issue damaged itself, could still maintain a common law product liability claim to recover for this economic loss. That is to say, when a defective product causes damage to itself, a consumer not in privity with the manufacturer has a common law product liability claim to recover his or her purely economic loss, or the difference between the purchase price of the product and the value of the product actually received.

      The *Mitchell* case presents a markedly different scenario, one that is analogous to the situation here. In *Mitchell*, there were two categories of potential class members. First, there were users of Prilosec that suffered non-economic damages in the form of physical illness. The court held that these users were able to maintain a statutory product liability claim under the OPLA. Once within the purview of the OPLA, the OPLA expressly allows a plaintiff to also recover economic loses pursuant to R.C. § 2307.79(A) ("If a claimant is entitled to recover compensatory damages for harm from a manufacturer in accordance with section 2307.73 of the Revised Code or from a supplier in accordance with division (B) of section 2307.78 of the Revised Code, the claimant may recover from the manufacturer or supplier in question, in that

9

action, compensatory damages for any economic loss that proximately resulted from the defective aspect of the product in question.")

The second category of potential class members in *Mitchell* purchased Prilosec, but never suffered any negative side effects. Just like Mr. Meta does here, the plaintiff in *Mitchell* argued that these members were still damaged because they purchased a defective product and, therefore, they should be entitled to recover the purchase price, or some portion thereof. The *Mitchell* court disagreed. The court held that these members did not have a cause of action because they really suffered "no injury." In fact, for these members of the potential class, Prilosec performed exactly as expected.

This case is like *Mitchell*. Here, Mr. Meta allegedly suffered damages when the flushable wipes clogged his septic system. According to the Amended Class Action Complaint, Mr. Meta used the wipes to potty train his daughter – their intended purpose according to Mr. Meta's pleading – but experienced the alleged injury after the wipes had been used and discarded. When the Amended Complaint is viewed in a light most favorable to Mr. Meta, he has potentially viable claims under the OPLA for damages to something other than the wipes themselves (the septic system), which he has pled in Counts VI to VIII. If Mr. Meta meets his burden of proof he may recover these damages under the OPLA. Further, once within the purview of the OPLA, Mr. Meta is able to recover his economic losses under R.C. § 2307.79(A). However, Mr. Meta may not carve out a common law product liability claim for economic loss only where, as in *Mitchell*, the facts underpinning his common law claims constitute "the same conduct that ... giv[es] rise to [the] 'products liability claim'." *Id.* at *4.

Moreover, the consumers (and vast majority of putative plaintiffs) in this case who

10

bought the Up and Up® wipes and used them for their intended purpose, flushed them, and suffered no injury were not damaged, just as the potential class the members in *Mitchell* suffered no injury when Prilosec performed as expected for them. Absent any injury, these plaintiffs may not maintain a claim outside of the OPLA solely for economic loss. *Id.*

For all of the foregoing reasons, Counts I through III of Mr. Meta's Amended Class Action Complaint are abrogated by the OPLA, and are dismissed.

B. <u>Count IV Fails To State A Claim For Negligent Misrepresentation</u>

Plaintiff argues in passing that negligent misrepresentation is not a product liability claim that falls under the purview of the OPLA. Assuming for the sake of argument that Plaintiff's negligent misrepresentation claim in Count IV is not a product liability claim that falls under the OPLA, the claim still fails. The cases cited by both parties make clear that a cause of action for negligent misrepresentation is not available in a simple consumer transaction, like those at issue here. *National Mulch & Seed, Inc. v. Rexius Forest By-Products, Inc.*, 2007 U.S. Dist. LEXIS 24904 (S.D. Ohio 2007); *ATM Exch., Inc. v. Visa Int'l Serv. Ass'n*, 2008 U.S. Dist. LEXIS 93461 (S.D. Ohio Aug. 14, 2008); *In re Nat'l Centruy Fin. Enters.,* 580 F. Supp. 2d 630, 647 (S.D. Ohio 2008). Something more than an alleged misrepresentation to the public at large is required, which may consist of supplying false information in a business transaction, rather than a consumer transaction. The Amended Class Action Complaint merely alleges misrepresentations in a consumer context to the public at large regarding the flushability of the wipes and whether they were in fact sewer and septic system safe. Accordingly, Count IV is dismissed.

C. <u>Count V States A Plausible Claim For Common Law Fraud</u>

Plaintiff's claim for fraud in Count V contains allegations that the Up and Up® wipes

11

were not flushable or septic and sewer system safe as Defendants affirmatively claimed in their marketing and packaging. Plaintiff further alleges that Defendants made such representations "with knowledge of their falsity, and/or with such utter disregard and recklessness as to whether the representations were true or false that knowledge may be inferred."

Claims of active misrepresentation (as opposed to failure to warn), such as those alleged in Count V, are not abrogated by the OPLA. *See Hollar v. Philip Morris, Inc.*, 43 F. Supp.2d 794, 809 (N.D. Ohio 1998) (holding that a fraud claim based on the duty not to deceive is not limited to a product liability claim). Here, Plaintiff alleges that Defendants knew that the wipes were not flushable or septic or sewer system safe, that Defendants made express and affirmative misrepresentations regarding these attributes of the wipes, and that Defendants made the knowing misrepresentation in an effort to sell more wipes. These allegations of active misrepresentation go beyond a product liability claim, and may be brought as a common law cause of action for fraud. *Id.*

Further, Defendants' argument that the fraud claim is not pled with sufficient particularity under Federal Rule of Civil Procedure 9(b) lacks merit. The Amended Class Action Complaint gives examples of the purported misrepresentations that allegedly constitute fraud, and sets forth an approximate time frame when Mr. Meta and other consumers claim to have relied on those statements, and explains how Mr. Meta and other consumers purportedly were damaged as a result because they either suffered harm to property other than the wipes, or were deceived into paying for a product that, despite Defendants' affirmative representations to the contrary, was not flushable or sewer or septic system safe. The nature and timing of the alleged fraud is sufficiently clear from the Amended Class Action Complaint to survive a motion to dismiss.

**D.      Counts VI, VII, And VIII State Plausible Claims Under The OPLA**

Target asserts that because some class members, like Mr. Meta, have suffered property damage and economic damages, while other class members have suffered only economic damages, "[t]here is a thus a conflict between Plaintiff's broad definition of his putative class and the [OPLA] allegations contained in Counts 6, 7, and 8." Target asks for dismissal of Plaintiff's OPLA claims in Counts VI, VII and VIII on this ground.

The motion to dismiss currently under consideration is not the appropriate forum for the parties to resolve what appears to be an issue for summary judgment, or a class certification argument. Thus, Target's motion to dismiss Counts VI, VII, and VIII is denied.

**E.     Count XI States A Claim For Unjust Enrichment**

Target moves to dismiss Count XI, a claim for Unjust Enrichment, on the ground that it is duplicative of the fraud claim that Target advocates is abrogated by the OPLA. The Court has held that the fraud claim in fact is not abrogated by the OPLA. Moreover, Plaintiff's unjust enrichment claim does not appear to be based solely on fraud, but rather on the allegation that Target was unjustly enriched because it wrongfully profited from the sale of its Up and Up® flushable wipes, which Plaintiff claims are defective because they are not flushable, sewer and septic safe, and do not break apart after flushing. Thus, Count XI states a plausible claim for unjust enrichment.

**F.     Nice-Pak Has Not Met Its Burden Under Rule 12(b)(7)**

In addition to requesting dismissal of Counts I through V, Nice-Pak argues in cursory fashion that the Court should dismiss the Amended Class Action Complaint under Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary party. Specifically, Nice-Pak alleges that another manufacturer, Rockline, is involved with the manufacture of the green-packaged wipes.

"To sufficiently assert a 12(b)(7) motion, the movant must identify the name of the party,

13

the location of the party, the reason the party is necessary and whether the court has jurisdiction over the party." *Jam Tire, Inc. v. Harbin*, 3:14CV00489, 2014 WL 4388286, at *4 (N.D. Ohio Sept. 5, 2014).  Moreover, under Rule 12(b)(7), Nice-Pak has the burden to show the nature of the unprotected interests of the absent individuals or organization s and the possibility that the court will be disadvantaged by their absence." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 5A Federal Practice & Procedure Vol. 5A, § 1359 (3d. Ed., West 1997).

Nice-Pak has not met its burden under Rule 12(b)(7).  Although Nice-Pak explains that Rockline is involved with the green-packaged wipes, Nice-Pak does not explain the reason why Rockline is necessary, whether the Court has jurisdiction over Rockline, the nature of Rockline's unprotected interests and the possibility that Rockline will suffer injury, and whether the parties before the Court will be disadvantaged by Rockline's absence.  Wright & Miller, Federal Practice & Procedure at § 1359.  Accordingly, Nice-Pak's request for dismissal under Rule 12(b)(7) is denied.

### III.  CONCLUSION

For all of the reasons explained, Defendants' partial motions to dismiss (ECF #s 17 and 19) are GRANTED IN PART and DENIED IN PART.  Counts I through III of the Amended Class Action Complaint are abrogated by the OPLA and are dismissed.  Count IV for negligent misrepresentation is dismissed because such a claim is not available under the facts as pled.  All other counts of the Amended Class Action Complaint remain.

IT IS SO ORDERED.

                                        s/Donald C. Nugent
                                        DONALD C. NUGENT
                                        UNITED STATES DISTRICT JUDGE

DATE: February 10, 2015