IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER META, | ) | CASE NO. 1:14 CV 832 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| TARGET CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | <u>MEMORANDUM OPINION</u> |
| | ) | <u>AND ORDER</u> |
| | ) | |

This matter is before the Court on Defendants, Target Corporation and Nice-Pak Products, Inc.'s Motions for Summary Judgment. The Defendants filed a Joint Motion for Summary Judgment As to Counts V-VIII of the Amended Class Action Complaint (ECF #111), and Target filed a separate Motion for Summary Judgment on Claims Only Against Target Corporation [Counts IX-XI] (ECF #112). The Plaintiff filed briefs in opposition to both motions, including a supplement to his original opposition to the Joint Motion for Summary Judgment. (ECF #130, 132, 133). Defendants filed Replies in support of their respective motions. (ECF #138, 141). These motions are now fully briefed and ripe for consideration.

Both parties have also filed motions to exclude or strike certain evidence offered in support of or in opposition to the motions for summary judgment. Defendants filed a Joint Motion to Exclude Testimony of Scott Krogman (ECF #108), a Joint Motion to Exclude the Fuss & O'Neill Report and Testimony of Barry Orr (ECF #109), and a Joint Motion to Exclude Testimony of Colin B. Weir (ECF #110). Plaintiff filed a Motion to Strike [the report and testimony of] Thomas Maronick, DBA, MBA, J.D. . (ECF #128). The parties filed corresponding briefs in opposition to and in support of the filed motions. (ECF #127, 129, 131, 135, 136, 137, 139, 142). The Court will consider these motions only to the extent they are necessary to determine what evidence the Court will consider for purposes of these summary judgment motions. To the extent that these motions might address the use of testimony or other evidence that may be offered at trial, if a trial is necessary, it would be premature for this Court to make a final determination as to the full parameters of their potential admissibility at this time. Therefore, except to the extent they are otherwise addressed below, the motions to exclude evidence are all denied, without prejudice.

### Facts[1]

Plaintiff Christopher Meta has brought a putative class action against Defendants Target and Nice-Pak based on his purchase of Up & Up™ brand flushable wipes from Target.[2] The

---

[1]

The factual summary is based upon the parties' statements of facts. Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are noted to be in dispute and will be accepted in the light most favorable to the Plaintiff, the non-moving party, for purposes of this motion.

[2]

The issue of class certification has been briefed separately and will be addressed in a separate opinion.

Amended Class Action Complaint concerns two pre-moistened wipe products sold in stores under the Up & Up™ brand. One of the products is marketed in red packaging as "toddler wipes," while the other is marketed in green packaging as "flushable moist wipes." Target states on its website and on the packaging for the Up & Up™ wipes that the wipes are "flushable" and safe for septic and sewer systems. Some of the packaging also claims that the wipes "break[]" apart after flushing" or "break[] apart when flushed."

Plaintiff asserts that he began purchasing the red, toddler wipes from a Target store in Boardman, Ohio in or around July, 2011. Since that time, he has purchased approximately 18 packs of the wipes from the same store. He used the products primarily for potty training his daughter, and flushed the wipes down the toilet. Plaintiff alleges that he noticed problems with plumbing in his home in 2013, and eventually incurred approximately $210 in expenses to have problems with his pipes and septic system corrected.[3] According to Mr. Meta, the Up & Up™ brand of flushable wipes caused the problems when they caked together in his pipes and septic system after flushing, despite representations on the product packaging and on Target's website that the wipes are flushable, break apart after flushing, and are safe for sewers and septic systems.

Based on these allegations, Mr. Meta seeks certification of a class consisting of "All persons residing in the State of Ohio who purchased Target-Brand 'up&up®' 'flushable' moist tissue wipes and toddler and family wipes (the "Up & Up® Flushable Wipes")." Certain members of the putative class, like Mr. Meta, allegedly suffered physical damage to property other than the wipes when the wipes were flushed. Other members of the putative class did not

---

[3]

Plaintiff claims that *if* he ever has to replace his septic system it will cost as much as $20,000.

suffer any injury to property, but nonetheless would seek compensation for having purchased wipes that they argue are not flushable.

## Summary Judgment Standard

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57

-4-

F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181

(9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## Analysis

There are seven remaining claims in Plaintiff's Amended Class Action Complaint:

- Count V: Fraud (All Defendants);

- Count VI: Defective Design/Formation: Ohio Rev. Code Ann. § 2307.75 (All Defendants);

- Count VII: Product Defect due to Inadequate Warning or Instruction; Ohio Rev. Code Ann § 2307.76 (All Defendants);

- Count VIII: Product Defect due to Nonconformance with Representations: Ohio Rev. Code Ann. § 2307.77 (All Defendants);

- Count IX: Breach of the Implied Warranty of Merchantability: Ohio Rev. Code Ann. § 1302.27 (Target);

- Count X: Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. (Target); and

- Count XI: Unjust Enrichment (Target).

Defendants have moved for summary judgment on all of the above claims. They argue, in the first instance, that Mr. Meta cannot recover under any theory of liability because he has not proven that he suffered any harm. Further, Defendants contend that Mr. Meta has no standing to raise claims relating the green-labeled products manufactured by Rockline because he admits he had never purchased this product. Finally, Defendants argue that Mr. Meta cannot satisfy all of the required elements of his alleged claims.


I. Standing

Plaintiff brought this suit alleging claims against Target and Nice-Pak based on their sale of both those "flushable wipes" marketed in red packaging as "toddler wipes," and those

-7-

marketed in green packaging as "flushable moist wipes." At the times in question, the green-packaged wipes, labeled "moist tissue wipes," were manufactured by Rockline Industries, Inc. ("Rockline"). (ECF #132, Ex. 2). [4] Defendants correctly argue that Plaintiff has no standing to pursue claims based on the purchase of the green packaged "flushable moist wipes," because he admits he never purchased that product. Having never purchased or even used this particular product, Mr. Meta could not have suffered an injury from sale or manufacture of this product.

Plaintiff argues that the claims should remain because there are putative class members who may have purchased the Rockline product, and the allegations against the two types of wipes are identical. However, the fact that a putative class member may have standing to pursue a claim does not eliminate the requirement that the named Plaintiff must have standing in his own right before he can seek to raise a claim and represent a class. *See, Dawes v. BAC Home Loans Servicing, LP*, No. 1:10-CV-2637, 2011 WL 2559410, *6 (N.D. Ohio, Apr. 27, 2011); *In re: Dial Complete Marketing and Sales Practice Litigation*, 2015 U.S. Dist. LEXIS 164346 (D. N. H. , Dec. 8, 2015)(a plaintiff with no standing to sue cannot serve as a class representative on the that claim). Further, the Sixth Circuit has recently explained that allowing a claim without a plaintiff who asserts an injury in fact, would allow the courts "to issue advisory opinions and non-advisory orders in all manner of circumstances." *In re: 2106 Primary Election*, Case Nos. 16-3350/3352/3357, at pg. 5 (6th Cir., Sept. 6, 2016). The existence of an named plaintiff, in this case, does not resolve this issue because the Sixth Circuit also recognized that it is not "enough just to have an identified individual claimant. A complaint must link the claimant to the entities or individual being asked to do something." *Id.* In this case, the named Plaintiff is not linked in

---

[4] Rockline is not a party to this litigation.

any way to the injury alleged or the relief sought in connection the Rockline green labeled wipes. Therefore, the claims, as they relate to the Rockline wipes, are dismissed for lack of standing.

## II. Compensable Harm

Defendants argue that Mr. Meta has no evidence to support his claim that the wipes at issue caused any property damage, or that he or any potential class member suffered any economic damages based on their purchase of the wipes at issue.

### A. Property Damage

Mr. Meta and his wife, Nicole Meta used Up&Up™ brand toddler wipes, which they purchased from a Target store in Ohio, from approximately spring of 2010 through November 2013. (N. Meta Depo., ECF #111-13 pg.12). At the time, the Meta's lived in a home built and owned by Mrs. Meta's parents. They claim to have used the product in accordance with the directives on the packaging. (Meta Depo. at 66,124; N. Meta Depo. at 26-27). In the summer of 2013, they began to experience plumbing problems, including slow draining tubs, sinks, and toilets. Eventually the plumbing stopped draining altogether. (Meta Depo. at 71; N. Meta Depo., ECF #111-13 at 12-1)b. Mr. Meta's father-in-law testified that he opened the lid to the septic system and found that "it was full of the wipes, just clogged up everything." (ECF#132, Ex. 26, Cl. Sickelsmith Depo. at 21). His mother-in-law said that she observed "whole wipes, a lot of them." (ECF# 132, Ex. 27, Cr. Sickelsmith Depo. at 18). The Sickelsmith's called a plumber who cleaned out the septic system, and he charged $210.00 for his services. Mr. Meta reimbursed his father-in-law for the expense.

Mr. Sickelsmith also testified that when the plumber came out to drain his tanks, he had

more than 2,500 gallons of waste that had filled two 1,000 gallon tanks and seeped into the leach bed so that the tanks re-filled as soon as they were emptied. (ECF #132-26, pg. 6). Although the Metas testified that they had been using the wipes since 2010, they also testified that they had not experienced plumbing problems at the house between 2009, when they moved in, and 2013 when this issue arose. (Meta Depo. at 71-72, 76; N. Meta Depo. at 19-20, 24-25). Mr. Sickelsmith testified that he had his septic system since at least the 90s, and had it pumped once every five years. (ECF #132-26, pp. 3-5). He never had it inspected and did not do any other regular maintenance. (ECF #132-26, pg. 4). Prior to the 2013 service call, the septic system had not been pumped out since 2008. (ECF #132-26, pg. 5).

Plaintiff concedes that he has no expert testimony to establish that the wipes at issue in this case were the cause of any plumbing or septic system problems at his residence. In addition, Mrs. Meta testified that she regularly flushed other non-toilet paper products (i.e. tampons) in addition to the wipes, and that they had been using the wipes since spring of 2010 without incident until November of 2013. She testified that the first indication of a problem was in November of 2013, when the tub started draining slowly and making noises. It is also undisputed that the household doubled in 2009 when the Metas moved in, thereby increasing the load on the septic system beyond what the Sickelsmiths were accustomed to when they determined that pumping every five years would be sufficient maintenance for the septic system. Based on these facts, Plaintiff cannot prove specific causation in this case.

No plumber, including the one who performed the work at issue, has opined that the wipes were the cause of the drainage problem or any costs incurred in connection with pumping the septic system. Although the Sickelsmith's testified that they saw whole wipes in the septic tank,

-10-

and saw wipes pulled from the pipes, they did not, and could not, testify that the wipes were actually the cause of the drainage problem. At best, this may constitute evidence that the wipes did not break down, but it does not provide evidence that this was the cause of the septic and plumbing issues experienced by the Meta household.[5] Therefore, there is insufficient evidence upon which a jury could find that the wipes caused the plumbing problem, or that Mr. Meta incurred any costs attributable to the flushing of the wipes.

B. Price Premium/Other Economic Damages

Plaintiff has argued that damages could be available, based solely on the purchase of the product, under three different theories of recovery: full refund, disgorgement of profits, and price premium. Plaintiff has provided the report of his expert, Colin B. Weir, to show the calculations and methodology supporting his claim for damages. Defendants argue that the only potentially appropriate measure of damages for the claims Plaintiff alleges would be determined under a price premium theory of recovery. They also argue that Plaintiff has not provided any evidence to show that there was, in fact, a price premium paid for the wipes based on the claim that they were "flushable" or "septic and sewer safe."

Defendants are correct that if this case is certified as a class action, the class damages, on

---

[5]
In addition, at the time of the back-up it had been five years since the septic system was last pumped, and Mr. Sickelsmith testified that he always pumped the system every five years. Further, since 2008, when the septic tank was last emptied, the Metas moved into the Sickelsmith household, thereby increasing the load on the septic system. Thus, even if there had not been a back-up, the system was due, (or overdue based on the increase in household members) to be pumped in 2013. Therefore, the cost of pumping the septic system, which is the only monetary injury alleged in connection with the alleged plumbing/septic back ups, would have been incurred in or around the same time, whether or not a back up had taken place.

all claims except for unjust enrichment, would be limited to recovery under the price premium theory. The profit disgorgement theory could be appropriate as a measure of recovery under the unjust enrichment claim brought against Target, but is not a measure of the amount of any injury suffered by a consumer, either individually or collectively. Further, although there may be circumstances under which an individual may be able show that a full refund would be available based on their usage pattern with the product, this is not an issue that would be capable of class resolution because it would require an inquiry into each consumer's personalized use and individual experience with the product. Mr. Meta testified that he used the wipes for several years to clean his daughter, thereby establishing that he received some value for the product. However, it is not clear from the briefing whether he claims he would have purchased an alternative or forgone any product if not for the claim of flushability. Other consumers may have used the wipes for different reasons, might claim that they personally found no value in the product, or that they would never have purchased any product for that purpose if it had not been claimed to be "flushable." Investigation of these individualized factors would be necessary to determine whether the full refund theory of recovery was appropriate in for any specific consumer.

Certainly, however, there must be some potential means of measuring the harm caused by an alleged misrepresentation about the qualities and characteristics of a product, even if the product, despite its alleged failings, fulfilled some function. Courts have generally held that measure to be determined using a price premium analysis. *See, e.g, Loreto v. The Procer & Gamble Co.*, 515 Fed. Appx. 576 (6th Cir. 2013); *Godec v. Bayer Corp.*, 2012 U.S. Dist. LEXIS 49990 (N.D. Ohio, Apr. 10, 2012); *In re: Dial Complete Marketing and Sales Practice Litigation*, 2015 U.S. Dist. LEXIS 164346, **92-93 (D. N. H. , Dec. 8, 2015)("Ostensibly, a deceptive

practice allows a manufacturer or vendor to charge a premium for a product that the manufacturer would not be able to command absent the deceptive practice. Thus, even if an individual consumer does not rely on a deceptive practice when deciding to purchase that product, the consumer will have paid more for the product than she otherwise would have."); *see also*, O.R.C. § 1302.88 ("measure of damages for beach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted.. . ."). Under the price premium theory, the consumer can recover for the difference in cost they paid for the product as marketed, versus the price they would have paid for the product if its qualities or attributes had not been misrepresented, or for an alternative product.

Plaintiff relies, in part, on the report of his expert, Mr. Colin Weir, to support his theory of damages, including the price premium theory. Defendants argue that the Plaintiff has not provided any evidence that there was a price premium paid for the wipes at issue, because Mr. Weir did not complete the calculations under his price premium methodology, and has not, thus far, specified a precise amount of damages sought under this theory. Further, they argue that the methodology Plaintiff's expert purports to use to calculate any such premium is unreliable and/or so deficient as to be irrelevant.

The Defendants attacks on Mr. Weir's methodology do not succeed in undermining the validity of the general methods employed in his calculations. Rather, they raise issues that can be explored on cross-examination as to the judgment Mr. Weir employed in choosing the relevant characteristics to be measured and considered in his calculations. This is more a matter going to the weight of his opinion, rather than a valid attack on the methodology or admissibility of his testimony, at least at this stage of the litigation. Nothing argued by the Defendants at this juncture

-13-

would lead the Court to the conclusion that Mr. Weir's methodology lacks general acceptance in his the field, or that it could, if applied correctly, produce a sufficiently reliable measure of damages in a case like this. The stronger position Defendants have advanced, is that Plaintiff's expert has not disclosed any application of the proposed methodology to the actual facts at issue in this case. However, neither party had produced sufficient evidence to the Court at this time to justify summary judgment on this basis alone. While the Plaintiff has not produced final damage calculations, they have alleged, at least, that they are in the process of conducting those calculations and that some information needed may not be (have been) fully available due to delays in discovery and the delayed consideration of the class certification issues. Defendants indicate that they have now provided all information Plaintiff asked from them to complete the calculations. It appears to the Court that based on the information provided in the expert report and the information available to the parties at this time, both parties have the ability to adequately present their theory of damages and to effectively cross-examine witnesses on that issue.

Defendant also contends that Plaintiff cannot pursue a claim based on price premium damages because he testified that he continued to use the wipes (without flushing them) after he came to believe that they were not actually flushable. In support, they cite another flushable wipes case, *Sweeney v. Kimberly-Clark Corp.*, No. 8:14-CV-3201, 2016 WL 727173 (M.D. Fla. Feb. 22, 2016). *Sweeney* is easily distinguished, however. The Court in Sweeney found that price premium damages could not be sustained when the consumer chose to continue purchasing the same product, at the same price, after discovering the defect, because other attributes of the product justified its price. There is no testimony in this case that Mr. Meta, or anyone in his family purchased the wipes at issue in this case after discovering the alleged defect in the product.

-14-

The fact that they continued to use the wipes until they ran out (without flushing them) says nothing about whether they paid excessively for the product at the time of purchase.

Therefore, at this stage of the case, the Court finds that summary judgment on this issue would not be appropriate. If, by the time of trial, Defendants still have concerns about gaps in the actual calculation of any price premium damages, they can re-visit the issue at that time.

## III. The Claims

### A. Product Liability (Counts VI-VIII)

A manufacturer is subject to liability under Ohio's product liability laws only if the Plaintiff can establish, among other things, that the product was defective under the criteria set forth in O.R.C. §§ 2307.74, 2307.75, 2307.76 or 2307.77, and if "a defective aspect of the . . . product . . . was the proximate cause of harm for which the claimant seeks to recover compensatory damages." O.R.C. § 2307.73(A)(1) and (2). "'Harm' means death, physical injury to person, serious emotional distress, or physical damage to property other than the product in question. Economic loss is not 'harm.'" O.R.C. § 2307.71(7). Economic loss, including the price of product, is not recoverable under the product liability statutes. As set forth above, although he may be able to show economic damages for the purchase of the allegedly defective product, Plaintiff has failed to provide evidence of "harm" as it is defined in the Ohio statutes. Therefore, summary judgment must be granted on all of Plaintiff's statutory product liability claims (Counts VI-VIII).

### B. Implied Warranty of Merchantability (Target Only)

Ohio Revised Code, Section 1302.27 requires, as a matter of law, that any goods involved

-15-

in contract for sale between a merchant and a buyer are merchantable. This means that the goods must, at least, (1) pass without objection in the trade under the contract description; and . . . (6) conform to the promises or affirmations of fact made on the container or label if any. O.R.C. § 1302.27(B). Plaintiff has provided no evidence to suggest that the flushable wipes at issue in this case do not meet the trade criteria under the description, and Defendants have provided evidence to show that they do, in fact, meet industry standards for "flushability." However, Plaintiff has produced at least some evidence to support his claim that the wipes at issue do not conform to the promise or affirmation that they are "flushable" and "sewer and septic safe."

Expert testimony is not needed to prove a claim for breach of implied warranty of merchantability. *Urso v. Compact Cars, Inc.* 2007 Ohio App. LEXIS 3946, 2007 Ohio 4375 (Aug. 24, 2007). In this case, the Defendants represented, by way of the product's label, that the wipes were "flushable" and "septic and sewer safe." There are also allegations that they did not break down as quickly as the packaging promised. Plaintiff has submitted some evidence that supports his contention that this statement is not true. Among other evidence, there is testimony from users of the wipes that they were found whole, not broken down, in their septic tank and in clogs removed from their plumbing. There is testimony that Target's hired testers found the product to be unsatisfactory as it relates to the claim that is flushable. There is also testimony from Mr. Villee, who has been put forth as an expert in sewer systems, that these wipes are not safe for septic and sewer systems. This evidence is sufficient to sustain Plaintiff's burden of showing that there remains a material issue of fact with regard to this claim.

Target contends that Plaintiff is, nonetheless, barred from bringing a breach of implied warranty claim because he did not provide them with prior notice of the defect prior to bringing

suit. Ohio's version of the Uniform Commercial Code states that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy." Ohio Rev. Code § 1302.65(c). This requirement serves two purposes: (1) to provide an opportunity for negotiation and settlement; and, (2) to minimize the possibility of prejudice to the seller by allowing an opportunity to cure the defect, investigate the claim, properly defend, or minimize damages while the facts are fresh in the minds of the parties. *Standard Alliance Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 826 (6th Cir. 1978).

Plaintiff claims, without any citation to evidence, that he approached Target before filing the Complaint in this case. Target claims that Mr. Meta made no complaint to Target until several months after he filed suit. Even if the later were true, Plaintiff argues that pre-litigation notice is not an absolute requirement for recovery under a breach of implied warranty claim under Ohio law. He also argues that Target had actual or constructive notice of the alleged defect from other sources, and that notice would have served no purpose under the circumstances of this case because there was no way for Target to cure the defect.

The Ohio Supreme Court has held that the notice requirement under Ohio Rev. Code § 1302.65(c) is not absolute. Notice can be inferred from the circumstances of the case, and notice under proper circumstances (which have not been identified by the Court) can be satisfied by the filing of a complaint. *Chemtrol Adhesives, Inc. v. American Manufacturers Mutual Insurance Co.*, 42 Ohio St.3d 40, 41-43, 537 N.E.2d 624 (Ohio 1989). Further, some courts have found that notice is satisfied when the Defendants are aware of the alleged defect through other channels and that pre-litigation notice need not come from the Plaintiff who actually filed suit. *See, e.g.,*

-17-

*Martin v. Ford Motor Co.*, 765 F.Supp. 2d 673, 683 (E.D. Pa. 2011).[6] Other courts have held that courts should be reluctant to grant summary judgment on failure to provide pre-litigation notice in proper cases. *Coupled Prods., LLC v. Modern Machine Tool Co.*, 2014 U.S. Dist. LEXIS 9288, *37 (N.D. Ohio Jan. 23, 2014).

This case involves circumstances that would justify an exception to the pre-litigation notice. In this case we have a private consumer Plaintiff,[5] who has submitted some evidence, that, if proven, could support a finding that Target had actual or constructive knowledge of the alleged defect prior to the filing of this suit, and indeed, even prior to stocking the product for sale. Further, if Plaintiff's claims are true, no repair would cure the defect, and no replacement would solve the problem.

In addition, Target has alleged no prejudice stemming from Plaintiff's failure to provide pre-litigation notice of the alleged defect, other than a general statement that it was denied the opportunity to settle the case pre-suit. They offer no indication of how that would have been accomplished, however. Target does not contend that it could have repaired or replaced the product with a working version, nor do they allege that they would or could have negotiated a settlement prior to the filing of the case.[6] They only assert that they were deprived of the

---

[6]Pennsylvania has the same pre-filing notice requirement as in Ohio law.

[5]
To this Court's knowledge, there has never been a case when a commercial buyer has been relieved of the pre-filing notice requirement, even when there has been no evidence or allegation of prejudice by the Defendant. However, courts have cited the commercial status of plaintiffs as a major reason no such relief should be granted. This infers that private consumers might receive more leeway in this regard.

[6]
In fact, Target acknowledges that "Plaintiff did not want to resolve his dispute, as other customers previously had done; he wanted a lawsuit." The pre-filing requirement does not

opportunity to attempt to do so. Target continues to allege that the product worked and works as it was expected and designed to work, which, as addressed above, remains a genuine question of material fact that cannot be resolved at this stage of the litigation.

Target has also failed to demonstrate any actual prejudice from the delay. If the evidence submitted by Plaintiff is true, they were made aware of the issue prior to stocking the product when their own product testing determined the wipes were "unsatisfactory." Further, they received customer complaints about the product and were served with the Complaint in this litigation while the product was still being offered for sale. Therefore, Target had opportunities to test the product to determine whether it truly does perform in accordance with its labeling, and to cure the alleged defect prior to the filing of this lawsuit. For all of the above reasons, Defendant's motion for summary judgment on the claim of breach of implied warranty is denied.

C. Magnuson-Moss Warranty Act

The Magnuson-Moss Warranty Act ("the MMWA") creates a private cause of action, under federal law, for violations of state law warranty claims, including the implied warranty claim addressed above. The MMWA creates additional damages for warranty violations, and provides for the recovery of attorney fees. 15 U.S.C. § 2310(d)(1), (2). Defendants argue, however, that even if a state law warranty claim remains for trial, Plaintiff cannot recover under the MMWA because he did not provide Defendants a "reasonable opportunity to cure" any failure to comply with the implied warranty. This argument fails for two reasons. First, a warranty claim

---

give the seller the "right" to settle the case, or deprive a Plaintiff of his right to pursue matters through litigation. It is simply a means of advancing a policy that gives the parties the opportunity to explore other options for resolution. Both parties appear to make clear that any such opportunity would have been futile in this case.

under the MMWA follows the state's warranty law. In this case, as set forth above, Ohio law provides an exception to the pre-litigation notice requirement in warranty cases, and that exception applies in this case. Second, as set forth in the statute, and explained in *In Re Porsche Cars North America, Inc.*, 880 F.Supp.2d 801 (S.D. Ohio 2012), when a case is brought as a class action, the case may be filed and may proceed to the extent necessary to establish the representative capacity of the named plaintiff before Defendants are given the opportunity to cure. The named Plaintiff is responsible for notifying the Defendants that they are acting on behalf of the class. In this case, the case was filed as a class action, Defendants have been notified that it is a class action and no class certification decision has been made. Thus, the "reasonable opportunity to cure" requirement for a class action has not yet been triggered. Defendants argument that *Kuns v. Ford Motor Co.*, 543 Fed. Appx. 572, 576 (6th Cir. 2013) somehow altered the holding in *In Re Porsche* is unavailing. *Kuns* was an unpublished opinion addressing a very different set of facts. The *Kuns* court was addressed the MMWA as it applied to a written warranty and its application to a fixable defect in a vehicle. It reiterated that "the elements a plaintiff must show to pursue a breach-of-warranty claim in Ohio are the same as those required by the MMWA." *Kuns* at *588. The circumstances in that case did not warrant an exception to the notification requirement under state law, and, therefore, the state law claim failed on its own merits, rendering the MMWA claim baseless. *Id.* at *576. Any discussion of the notice requirement was considered in conjunction with the state law elements for a written warranty claim, and the issue of whether a MMWA class action claim based on an otherwise viable implied warranty claim requires pre-filing notice that a class action is being contemplated.

Defendants have not met their burden to show that summary judgment is warranted on the

Plaintiff's MMWA claim.

### D. Fraud (Count V)

Under Ohio law, a Plaintiff cannot generally maintain an action for both warranty and fraud when the only injury alleged is the loss of the value of the allegedly defective product. *See, e.g., Delahunt v. Cytodyne Techs.*, 241 F.Supp. 2d 827 (S.D. Ohio 2003); *Marine Direct v. Dougherty Marine, Inc.*, 2007 U.S. Dist. LEXIS 1414, at *6 (January 8, 2007). The Court has found that Plaintiff has not produced evidence sufficient to show that he could prove a harm independent of his decision to purchase the product, nor any loss beyond the price of the product he purchased. Because Plaintiff has claims against Target for breach of implied warranty, Plaintiff's fraud claim against Target must, therefore, be dismissed.

Plaintiff, however, has no remaining warranty or defect claims against Defendant Nice-Pak. Thus, his fraud claim is not barred against Nice-Pak on this same basis. Defendants argue that Plaintiff's fraud claim should be dismissed, nonetheless, because Plaintiff has provided no evidence that Defendants intentionally misled the Up&Up™ wipes users. Plaintiff has produced some evidence, however, that the alleged misrepresentation was knowing. There is evidence that Target hired an outside firm to test the flushability claim prior to stocking the wipes at issue, and that this test found that the wipes had "unsatisfactory" performance on these tests. Further, there is evidence that both Target and Nice-Pak received customer complaints alerting them to the potential problems with flushability, that Nice-Pak was informed that at least one major retailer would not sell the product due to the number of customer complaints, and that Nice-Pak was investigated by the Federal Trade Commission for possible misrepresentations in this regard. Finally, there is some evidence that Nice-Pak may have been approached by state and local sewer

authorities asking them to discontinue this product because they were believed to cause damage to sewer infrastructure. This is sufficient to overcome summary judgment on this element, with regard to the claim against Nice-Pak.

    E. Unjust Enrichment

    Ohio law also holds that a the existence of a claim sounding in contract generally excludes recovery under a theory of tort. *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981); *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 684 N.E.2d 1261 (Ohio Ct. App. 1996). When the damage or loss resulting from a defective product does not involve harm to a person or property other than the defective item itself, "UCC remedies will generally be appropriate and exclusive for recovery of the damage to the defective product itself." *Chemtrol*, 42 Ohio St.3d at 50-51; *see also, Academic Imaging, LLC v. Soterion Corp.*, 352 Fed. Appx. 59 (6th Cir. 2009). This reasoning extends to preclude both tort and UCC remedies when the only injury alleged is the loss of the value of the allegedly defective product. *See, e.g., Delahunt v. Cytodyne Techs.*, 241 F.Supp. 2d 827 (S.D. Ohio 2003); *Marine Direct v. Dougherty Marine, Inc.*, 2007 U.S. Dist. LEXIS 1414, at *6 (January 8, 2007). Because unjust enrichment, to be recoverable, must be enrichment to the Defendant at the expense of the Plaintiff, and Plaintiff's only expense under these circumstances is the loss of the value of the allegedly defective product, the unjust enrichment claim in this case must be dismissed as duplicative of the implied warranty claim brought under Ohio's version of the UCC.

## Conclusion

For the reasons set forth above, Defendants' Joint Motion for Summary Judgment As to Counts V-VIII of the Amended Class Action Complaint (ECF #111), is GRANTED in part and DENIED in part. The fraud claim in Count V is dismissed as against Target, but survives as against Nice-Pak. The product liability claims set forth in Counts VII-VIII are dismissed as against all Defendants. Target's Motion for Summary Judgment on Claims Only Against Target Corporation (ECF # 112) is also GRANTED in part and DENIED in part. Plaintiff's claim for breach of implied warranty under the UCC, and violation of the Magnuson-Moss Warranty Act in Counts IX-X, remain viable claims for trial. The unjust enrichment claim in Count XII is dismissed. Further, the motions to exclude testimony, filed by the Defendants, (ECF #108, 109. 110), and Plaintiff's motion to strike, (ECF #128), are denied without prejudice. IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: September 12, 2016