IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| META, on behalf of himself and all others similarly situated, | ) ) ) | CASE NO. 4: 14 CV 832 |
| Plaintiff, | ) ) | |
| v. | ) ) | JUDGE DONALD C. NUGENT |
| TARGET CORPORATION, *et al.*, | ) ) | MEMORANDUM OPINION AND ORDER |
| Defendants. | ) | |

This matter is before the Court on Plaintiff's Motion for Class Certification and Appointment of Class Counsel. (ECF # 113). Defendants filed a Joint Brief in Opposition to Plaintiff's Motion (ECF #125), and Plaintiff filed a Reply in support of his motion. (ECF #140). Both parties also filed supplements to their original filings. (ECF # 117, 134, 144). For the reasons that follow, Plaintiff's Motion is GRANTED in part and DENIED in part.

**PROCEDURAL AND FACTUAL BACKGROUND**[1]

Plaintiff asserts that he began purchasing the red, toddler wipes from a Target store in Boardman, Ohio in or around July, 2011. Since that time, he has purchased approximately 18 packs of the wipes from the same store. He used the products primarily for potty training his daughter, and flushed the wipes down the toilet. Plaintiff alleges that he noticed problems with plumbing in his home in 2013, and eventually incurred approximately $210 in expenses to have problems with his pipes and septic system corrected. According to Mr. Meta, the Up & Up™ brand of flushable wipes caused the problems when they caked together in his pipes and septic system after flushing, despite representations on the product packaging and on Target's website that the wipes are flushable, break apart after flushing, and are safe for sewers and septic systems.

Based on these allegations, Mr. Meta seeks certification of a class consisting of "All persons residing in the State of Ohio who purchased Target-Brand 'up&up®' 'flushable' moist tissue wipes and toddler and family wipes (the "Up & Up® Flushable Wipes")."

This Court granted summary judgment to the Defendants on all issues relating to the moist tissue wipes with red packaging, manufactured by Rockline industries. Summary judgment was also granted on the product liability claims, unjust enrichment claim, and the fraud claims, as against Defendant Target only. Currently remaining are three claims relating to the

---

[1] The allegations set forth the factual background have been taken from Plaintiff's Complaint and from his deposition testimony, which was submitted in connection with the briefing of Defendants' Motions for Summary Judgment. Although some facts referenced throughout this opinion are undisputed, and have been identified as such, many of the allegations set forth below are contested issues of material fact. The Court's recitation of the disputed allegations in the class certification context are not meant to imply in any way that they are, in fact, true.

Up & Up™ 'flushable' toddler wipes in the green packaging. There remains one fraud claim against Nice-Pak (Count V), based on alleged misrepresentations made on the packaging of the product. There also remains one implied warranty of merchantability claim against Target under Ohio Revised Code § 1302.27(B)(6) (Count IX), and a Magnuson-Moss Warranty Act claim under 15 U.S.C. § 2310(d)(1),(2). Both of the claims against Target are based on the product's alleged failure to conform to the promises or affirmations of fact made on the container or label.

## STANDARD OF REVIEW

The plaintiff bears the burden of proof in arguing that a potential class should be certified. *General Tel. Co. v. Falcon*, 457 U.S. at 161; *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976). "The class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Coopers & Lybrand*, 437 U.S. at 469 (quoting *Mercantile Nat'l Bank at Dallas v. Langdeau*, 371 U.S. 555, 558 (1963)). While the pleadings may be enough to determine "whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim . . . sometimes it may be necessary for the court to probe behind the pleadings" before deciding the issue of certification. *Falcon*, 457 U.S. at 160. Thus, it is appropriate for the Court to look not only to the pleadings but also to additional exhibits and information submitted by the parties in deciding the motion for certification.

A court must perform a "rigorous analysis" of the requirements of Federal Rule of Civil Procedure 23 in deciding whether to certify a class. *Falcon*, 457 U.S. at 147; *accord Stout v. J.D. Byrider*, 47 F.3d 709, 716 (6th Cir. 2000). Rule 23 of the Federal Rules of Civil Procedure

includes four prerequisites to maintaining a class action. FED. R. CIV. P. 23(a). Members of a class

> [M]ay sue . . . as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). Thus, the named representatives may only be certified as a class under Rule 23 if the representatives meet the requirements of numerosity, commonality, typicality, and adequacy of representation.

Assuming the requirements of Rule 23(a) are met, the class action may be maintained only if it also meets the requirements of one of the subsections of Rule 23(b). FED. R. CIV. P. 23(b). Under Rule 23(b),

> An action may be maintained as a class action if . . .(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

FED. R. CIV. P. 23(b)(3). In addition to the Rule 23 requirements, both parties have noted that courts in this circuit have recognized that ascertainability of class members is a prerequisite of Rule 23. *See Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009); *Givens v. Van Devere, Inc*., 2012 U.S. Dist. LEXIS 131931, *15 (N.D. Ohio 2012).

Plaintiff alleges that the class meets the requirements of Rule 23(a), 23(b)(2) and 23(b)(3). Defendants argue, however, that the class is overbroad; Plaintiff's claims are not typical and he is not an adequate class representative; injunctive relief under 23(b)(2) is not

-4-

appropriate, and Plaintiff lacks standing to pursue this relief; Plaintiff cannot establish question of fact or law common to class members' claims, or that common questions predominate; and, Plaintiff cannot prove class wide damages.

## **ANALYSIS**

Many of Defendants' arguments apply only to claims or issues that have since been resolved through the summary judgment process. The Court has eliminated the Rockline manufactured wipes from the lawsuit, has dismissed any claims for property damage (which Plaintiff had voluntarily eliminated from the class certification issue anyway), and has dismissed the fraud and the unjust enrichment claims against Target. The Court has also determined that Plaintiff's price premium damages model is sufficiently valid to have survived summary judgment. With these issues resolved, the Court will address the remaining arguments below.

A. Injunctive Relief Under Fed. R. Civ. P. 23(b)(2)

Defendants argue that injunctive relief is not appropriate in this case because there is a Consent Decree in place between Nice-Pak and the Federal Trade Commission requiring that from 2015 forward Nice-Pak may advertise and label its wipes as "flushable" only so long as it

> shall not make any representation, in any manner, expressly or by implication, including through the use of a product name, endorsement, depiction, illustration, trademark, or trade name, that the Covered Product:
>
> > A. is safe for sewer systems;
> > B. is safe for septic systems;
> > C. breaks apart shortly after flushing;
> > D. will not clog household plumbing systems;
> > E. will not clog household septic systems;
> > F. is safe for plumbing

-5-

> G. is safe to flush
> H. dissolves or disperses when interacting with water; or
> I. is flushable.
>
> unless the representation is non-misleading, and, at the time the representation is made, [Nice-Pak] possesses and relies upon competent and reliable evidence, which, when appropriate based on the expertise of professionals in the relevant area must be competent and reliable scientific evidence, that, when considered in the light of the entire body of relevant and reliable evidence, is sufficient in quantity and quality based on standards generally accepted in the relevant fields to substantiate that the representation is true.

(FTC Final Order p. 2 § 1).  Nice-Pak claims that it is subject to the FTC's jurisdiction to enforce the Consent Decree for 20 years.  Further, both parties acknowledge that the product purchased by Plaintiff, made with a technology named "Buckeye," that included certain specific ingredients and characteristics, was discontinued sometime in 2014 and replaced with a new formulation, called "Sigma," which was distributed by Target beginning sometime also in 2014.

Whether or not the FTC's Consent Decree and continuing enforcement capabilities usurp the Court's ability to issue injunctive relief upon a finding of liability, as Defendants argue, the undisputed fact that the product formulation purchased and complained of by the Plaintiff is no longer on the market eliminates any need for injunctive relief.[2]  The Sixth Circuit has recognized that Rule 23(b)(2) class certification may not be appropriate when injunctive relief is unnecessary or would serve no purpose.  *See Craft v. Memphis Light, Gas & Water Div.*, 534 F.2d 684, 686 (6th Cir. 1976).   For this reason, class certification under 23(b)(2) is denied.

---

[2] Just as he had no standing to bring a claim for alleged violations by the Rockline product, Plaintiff has no standing to challenge the validity of the claims made on the "Sigma" formulation of the Nice-Pak wipes.  There is no evidence that Mr. Meta ever purchased these Sigma wipes, or that he was injured by them in any way.

B. Fraud/Nice-Pak

Defendants argue that Plaintiff's fraud claim cannot satisfy certification requirements because individual issues of reliance predominate over any common issues relative to this claim. The Court agrees. Fraud requires reliance on the alleged misrepresentation. There are many reasons consumers may have chosen to purchase the wipes at issue in this case, some of which may have had nothing to do with whether or not they were flushable. It is quite possible, in fact, that many people who bought this product did not rely on the representation at all, and did not flush the product due to misgivings about flushing any non- toilet paper products into their plumbing system. [3]

Although it may be true, as Plaintiff argues, that Ohio law does not preclude class certification in fraud cases across the board, it is not appropriate in this case. Certainly there are cases of misrepresentation when reliance can be inferred based on the type of representation and the circumstances involved. For instance, if the alleged misrepresentation went to the only use or characteristic of the product that would matter (an investment will make money, a pest repeller will repel pests, a disinfectant spray will disinfect), then the element of reliance may not bar class certification because it could be reasonably presumed that all class members relied on the representation at issue. In this case, however, as set forth above, there are other conceivable benefits to the product at issue, aside from the characteristic of flushability. Therefore, the element of reliance would have to be established on a plaintiff by plaintiff basis, and class certification is not the superior method for resolving this claim under these circumstances.

---

[3] As admitted by Plaintiff, other than the flushability aspect of the item, the wipe did satisfactorily perform the function of cleaning.

C. Warranty Claims/Target

    1. Factors Required by Fed. R. Civ. P. 23(a)

        a. Common Questions of Fact or Law

The basic question of fact remaining in this case is whether the Defendants' product is "flushable," "sewer and septic safe" and/or "breaks apart after flushing" as stated on its packaging/label. This question is common to all users of the product, and, all potential class members. Plaintiff is not alleging that the product was damaged or was not in working order, nor that it was ineffective as used or that the instructions were somehow insufficient to produce acceptable results. The contention in this case is that this product is labeled as "flushable" and "sewer and septic safe" and purports to "break apart after flushing," and that it does not perform as described on the packaging. Because the remaining claims are limited to this, and the corresponding Magnuson-Moss Warranty Act claim, the questions of fact raised in this Complaint are common to all potential class members.

If the product at issue does not do what it claims to do, all purchasers are affected under the alleged warranty theory, regardless of their pattern of usage, or their perceived satisfaction or dissatisfaction with the product. Based on the allegations in the Complaint, either 0% or 100% of the proposed class members have used mislabeled products. As the representations on the packaging are alleged to have been identical in so far as they communicate that the product is "flushable," "sewer and septic safe," and "breaks apart after flushing," the differences in other wording on the packaging should not be relevant to the ultimate question of whether this product conforms to those representations. Thus, the common fact requirement is clearly satisfied as to the warranty claims.

### b. Typicality

Typicality "is generally considered to be satisfied 'if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561-62 (8th Cir. 1982)(quoting C. Wright & A. Miller, Federal Practice and Procedure § 1764 at n.21.1 (Supp. 1982)).  In other words, typicality is generally satisfied if the "representative plaintiff would be able to prove other class members' claims by proving his own claim." *Givens v. Van Deere, Inc.*, 2012 U.S. Dist. LEXIS 131934, at *62 (N.D. Ohio 2012).  In this case, if Plaintiff can prove that these wipes are not "flushable" or "sewer and septic safe", as he is claiming, then he will, in fact, prove the other class members' claims as he proves her own.  *See, In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 406 (S.D. Ohio 2007).

### c. Adequacy of Class Representative

Defendants also contend that Mr. Meta is not an adequate class representative because he has no standing to pursue claims for purchasers of the Rockline product, and he is willing to waive other class member's potential property damage claims.  Because the Rockline product, and Mr. Meta's claim for property damage are no longer part of this case, this argument has no bearing on Mr. Meta's adequacy as class representative.

The Sixth Circuit had indicated two factors that bear on the question of whether a named plaintiff will "fairly and adequately protect the interests of the class" : (1) "[t]he representative must have common interests with unnamed members of the class; and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Vassalle v. Midland Funding, LLC*, 708 F.3d 747, 757 (6th Cir. 2013).  Both of these criteria are

satisfied in this case. As discussed above, Plaintiff has common interests with the unnamed members of the class. All purchases of a product have a common interest in ensuring that the representations made on the packaging of the product are true. Further, there is no reason to believe that Mr. Meta will not continue to vigorously prosecute the interests of this class through qualified counsel. Therefore, the adequacy factor has been satisfied with regard to the warranty claims.

Defendants have not challenged the numerosity requirement for class certification. Therefore, the requirements for class certification under Fed. R. Civ. P. 23(a) have all been satisfactorily established on the warranty claims.

### 2. Predominance Under Fed. R. Civ. P. 23(b)(3)

For a class action to be maintained under Rule 23(b)(3), the court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). Further, the court must find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). According to the Supreme Court,

> [T]he predominance requirement of Rule 23(b)(3) is similar to the requirement of Rule 23(a)(3) that "claims or defenses" of the names representatives must be "typical of the claims or defenses of the class." The words "claims or defenses" in this context . . . "manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit."

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 n.18 (1997) (citing *Diamond v. Charles*, 476 U.S. 54, 76-77 (1986) (O'Connor, J., concurring in part and concurring in judgment)). Further, while "[s]ubdivision (b)(3) parallels subdivision (a)(2) in that both require that common questions exist

-10-

. . . subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re Am. Med Sys., Inc.* 754 F.3d at 1084 (quoting 1 *Newberg, supra*, §3.10, at 3-56).

Essentially, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. When a court determines whether common issues predominate, it "'is under a duty to evaluate the relationship between the common and individual issues' . . . and determine the relative weight and importance of the common and individual issues." *Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578, 588 (W.D. Mich. 2001) (quoting 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure: Civil*, § 1778 at 518 (2d ed. 1986)). The only issue remaining against Target in this case is whether the wipes at issue satisfied the implied warranty of merchantability, and the corresponding warranty protections under the Magnuson-Moss Warranty, in that it performs as described on the packaging. Based on this sole remaining contention, either all parties purchased a product that conformed with the warranty, or none did.

The issue of damage calculations was addressed in the Summary Judgment opinion issued earlier by this Court. Plaintiff has submitted plausible theories of recover for the warranty claim that would provide redress for the the value of the characteristics that were allegedly misrepresented. This type of damage would be universal class-wide without regard to whether an individual defendant was able to garner some use of the product, despite the alleged misrepresentation. Defendants do not effectively argue that price premium damages are not an appropriate theory of damages, rather they argue that Plaintiff has not taken into account all necessary factors in their proposed calculation of such damages. This is an issue to be addressed at trial going to the weight

-11-

of any damages evidence, but does not preclude presentation of such evidence, or a finding of predominance on the basis of varying damage calculations. Predominance is, therefore, satisfied as to the remaining warranty claims, and the Court finds that a class action is superior to other available methods for the fair and efficient adjudication of this controversy.[4]

3. Overbreadth

Defendants argue that the class, as defined by Plaintiff, is overbroad in that includes purchasers of the Rockline product. Because claims involving the Rockline product have been dismissed from the case, this is no longer an issue. The class will necessarily be narrowed to include only purchasers of the Up & Up brand "flushable" pre-moistened fabric wipes produced by Nice-Pak and marketed in a red package as baby or family wipes. However, the class is still overbroad as to the duration of the class. The currently proposed class includes purchasers of the wipes at issue from April 18, 2010 to the present. As discussed above, the formulation of the product changed in 2014 from the "Buckeye" formulation to the "Sigma" formulation, and the named Plaintiff has no standing to raise claims related to the "Sigma" product. Therefore, the class must also be limited to the period of time in which "Buckeye" formulation of the product was being sold. Although the parties have not produced evidence of an exact date, they agree that the transition to the new formulation occurred sometime in 2014.

---

[4] The Court does agree with Defendants that individual issues of reliance predominate over common issue with regard to the fraud claim remaining against Nice-Pak. Therefore, as discussed above, there will be no certification of a class in relation to the fraud claim. Defendants have also argued that issues relating to vertical privity may preclude predominance. Since the only remaining warranty claim is asserted only against Target and Up & Up brand wipes are available for purchase only at Target, privity is not an issue with regard to the warranty claims.

**CONCLUSION**

For the reasons stated above, the Court finds that class certification is warranted with regard to the warranty claims against Target only.  The class mechanism is superior to other methods available to the parties for a fair and efficient adjudication of this specific controversy in this case. The class definition is limited, however, to purchasers of the Nice-Pak "Buckeye" formulation of Up & Up wipes from April 18, 2010 through the discontinuation of that product formulation in 2014. The Plaintiff's Motion for Class Certification is, therefore, GRANTED, subject to the class definition changes set forth above.

Defendant has raised no objection to the appointment of Plaintiff's selected counsel as class counsel.  Based on the Plaintiff's representations, this Court's experiences with the requested counsel throughout the course of this litigation, and Defendant's lack of objection to the appointment of the requested counsel, the Court finds that Spangenberg Shibley & Liber LLP and Tycko & Zavareei  LLP satisfy the requirements for class appointment under Fed. R. Civ. P. 23(g) (1), (2) and (4).  They are, therefore, appointed to serve as class counsel for the certified class on the warranty claims against Target.  IT IS SO ORDERED.

      /s/ Donald C. Nugent
    DONALD C. NUGENT
    United States District Judge

DATED:  September 19, 2016