UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER META, On Behalf Of Himself And All Others Similarly Situated | ) ) | CASE NO. 4:14-CV-0832 |
| | ) ) | JUDGE DONALD C. NUGENT |
| Plaintiff | ) ) | **<u>MEMORANDUM OF LAW IN</u>** |
| vs. | ) ) ) | **<u>SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR</u>** |
| TARGET CORPORATION, et al. | ) ) | **<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>** |
| Defendants | ) ) | |

<strong><u>TABLE OF CONTENTS</u></strong>

I.   INTRODUCTION ........................................................................................................................1

II.   BACKGROUND .......................................................................................................................2

   A.   Litigation History .............................................................................................................2

   B.   Motion to Dismiss ...........................................................................................................3

   C.   Discovery ..........................................................................................................................3

   D.   Summary Judgment ..........................................................................................................3

   E.   Class Certification ............................................................................................................4

   F.   Settlement Negotiations ..................................................................................................4

III.   MATERIAL TERMS OF THE SETTLEMENT ........................................................................5

   A.   Direct Relief to Class Members ......................................................................................5

   B.   Changed Practices ...........................................................................................................6

   C.   Administrative Expenses, Attorneys' Fees and Costs, Incentive Awards .......................6

   D.   Notice ...............................................................................................................................7

   E.   Plaintiff's Analysis of the Settlement ..............................................................................8

IV.   ARGUMENT ...........................................................................................................................9

   A.   Preliminary Approval of the Settlement is Appropriate .................................................9

      1.   There is no indication of fraud or collusion, in light of the years of litigation and discovery that occurred prior to the settlement ..............................................14

      2.   The settlement falls within the range of reasonableness and provides substantial benefits to the class, in light of the likelihood of success on the merits .................15

      3.   The settlement suffers from no obvious deficiencies and does not improperly grant preferential treatment to class representatives or segments of the class ..................17

      4.   The opinions of class counsel favor approval of the settlement ..........................18

      5.   The public interest also merits in favor of approval of the settlement ...................19

   B.   The Settlement Class Should Be Certified ....................................................................16

      1.   Numerosity ...........................................................................................................16

      2.   Commonality .........................................................................................................20

      3.   Typicality ..............................................................................................................20

      4.   Adequacy ..............................................................................................................20

      5.   Predominance and Superiority ..............................................................................20

V.    DATES FOR THE FINAL APPROVAL PROCESS ..................................................................20

VI.   CONCLUSION .........................................................................................................................21

**TABLE OF AUTHORITIES**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
  133 S. Ct. 1184 (2013) ................................................................................................19

*Aro Corp. v. Allied Witan Co.,*
  531 F.2d 1368 (6th Cir. 1976) ....................................................................................16

*Barel v. Bank of Am.,*
  255 F.R.D. 393 (E.D. Pa. 2009) ................................................................................14

*Beattie v. CenturyTel, Inc.,*
  511 F.3d 554 (6th Cir. 2007) ................................................................................18, 19

*Blessing v. Sirius XM Radio Inc.,*
  507 F. App'x 1 (2d Cir. 2012) ....................................................................................11

*Brent v. Midland Funding, LLC,*
  No. 3:11-cv-1332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011) ..............................10

*Daffin v. Ford Motor Co,*
  458 F.3d 549 (6th Cir. 2006) ......................................................................................17

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.,*
  137 F.R.D. 240 (S.D. Ohio 1991) ..............................................................................12

*In re Am. Med. Sys., Inc.,*
  75 F.3d 1069 (6th Cir. 1996) ......................................................................................18

*In re Checking Account Overdraft Litig.,*
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) ......................................................................14

*In re Foundry Resins Antitrust Litig.,*
  242 F.R.D. 393 (S.D. Ohio 2007) ..............................................................................18

*In re Gen. Tire & Rubber Co. Sec. Litig.,*
  726 F.2d 1075 (6th Cir. 1984) ....................................................................................20

*In re Global Crossing Sec. and ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................14

*In re Ikon Office Solutions, Inc.,*
  194 F.R.D. 166 (E.D. Pa. 2000) ................................................................................14

*In re Inter-Op Hip Prosthesis Liab. Litig.,*
  204 F.R.D. 330 (N.D. Ohio 2001) ........................................................................passim

*In re Warfarin Sodium Antitrust Litig.,*
  391 F.3d 516 (3d Cir. 2004) ......................................................................................14

*In re Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.,*
  No. 1:09-WP-65000, 2016 WL 5338012 ....................................................................16

*Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.,*
  497 F.3d 615 (6th Cir. 2007) ..........................................................................10, 13, 19

*Johnson v. Midwest Logistics Sys.,*
  No. 2:11-CV-1061, 2013 WL 2295880 (S.D. Ohio May 24, 2013) ............................15

*Levell v. Monsanto Research Corp.,*
  191 F.R.D. 543 (S.D. Ohio 2000) ..............................................................................14

*Liberte Capital Grp. v. Capwill,*
　No. 5:99-cv-818, 2007 WL 2492461 (N.D. Ohio Aug. 29, 2007) ....................................15

*Lonardo v. Travelers Indem. Co.,*
　706 F. Supp. 2d 766 (N.D. Ohio 2010)................................................................................13

*Mullane v. Cent. Hanover Bank & Trust Co.,*
　339 U.S. 306 (1950) ...............................................................................................................19

*Philips v. Philip Morris Cos. Inc.,*
　298 F.R.D. 355 (N.D. Ohio 2014)........................................................................................17

*Priddy v. Edelman,*
　883 F.2d 438 (6th Cir. 1989) ................................................................................................11

*Reed v. Rhodes,*
　869 F. Supp. 1274 (N.D. Ohio 1994) ...................................................................................10

*Senter v. General Motors Corp.,*
　532 F.2d 511 (6th Cir. 1976) ................................................................................................18

*Sprague v. Gen. Motors Corp.,*
　133 F.3d 388 (6th Cir. 1998) ................................................................................................18

*Stinson v. Delta Mgmt. Assocs.,*
　302 F.R.D. 160 (S.D. Ohio 2014) .........................................................................................16

*Thacker v. Chesapeake Appalachia, L.L.C.,*
　695 F. Supp. 2d 521 (E.D. Ky. 2010) ...................................................................................16

*Vassalle v. Midland Funding LLC,*
　708 F.3d 747 (6th Cir. 2013) ................................................................................10, 11, 18

*Vassalle v. Midland Funding, LLC,*
　No. 3:11-cv-00096, 2014 WL 5162380 (N.D. Ohio. Oct. 14, 2014)..........................19, 20

*Williams v. Vukovich,*
　720 F.2d 909 (6th Cir. 1983) .........................................................................................10, 13

**Statutes**

15 U.S.C. § 2301 *et seq.*....................................................................................................................3

28 U.S.C. § 1712.................................................................................................................................12

Ohio Rev. Code Ann. §§ 2307 .........................................................................................................3

Ohio Rev. Stat. Ann. §§ 1345.01, *et seq.*........................................................................................2

**Other Authorities**

Rubenstein, Newberg on Class Actions § 13:44 (5th ed. 2015) ..................................10, 11, 12

**Rules**

Fed. R. Civ. P. 23 .........................................................................................................................10, 19

## I.  INTRODUCTION

Plaintiff respectfully submits this Unopposed Motion for Preliminary Approval of Class Action Settlement that has been reached with Defendants Target Corporation ("Target") and Nice-Pak Products, Inc. ("Nice-Pak") (collectively, "Defendants"). For the reasons set forth below, the proposed Settlement Agreement is fair, reasonable and adequate and should be granted preliminary approval so that notice can be provided to the proposed Settlement Class, defined as

> all persons residing in the United States who purchased Up & Up flushable toddler wipes from April 18, 2010 through the discontinuation of the "Buckeye" product formulation on October 31, 2014, specifically excluding purchasers of Nice-Pak's "Sigma" formulation and subsequent product formulations of Up & Up flushable toddler wipes.[1]

The proposed settlement ("Settlement") is the product of protracted, arm's-length negotiations between counsel for the proposed Settlement Class[2] ("Class Counsel") and Defendants, all of whom have significant experience in litigating complex class actions. The Settlement provides substantial and meaningful relief to Class Members, by providing the opportunity for them to receive either (a) a $1.35 cash-value Target Gift cards or (b) a coupon for current-formulation Up & Up wipes manufactured by Nice-Pak, for each unit of Up & Up flushable toddler wipes purchased during the Class Period. Target and Nice-Pak have also agreed to pay all costs of notice and claims administration, as well as attorneys' fees and costs and an incentive award to Plaintiff, all in addition to the benefits to Class Members. In exchange for the Settlement benefits, Plaintiff and the Class

---

[1] To the best of Nice-Pak and Target's knowledge, the "Buckeye" product formulation was generally sold at Target through October 2014. The Class specifically excludes purchasers of Nice-Pak's subsequent "Sigma" formulation of Up & Up flushable toddler wipes. Nice-Pak submitted its testing methodology and results relating to is "Sigma" technology flushable wipes to the Federal Trade Commission ("FTC") to substantiate its flushability claims for that product formulation.

[2] Unless otherwise stated herein, all capitalized terms carry the same definition as set forth in the Settlement.

will dismiss all claims against Defendants and will provide Defendants with a release of the settled claims.

The Settlement provides for a fair and reasonable resolution for Plaintiff and the Class with respect to their claims. Class Counsel believe that, if finally approved by the Court, the Settlement will provide significant benefits to the Class. Accordingly, by this motion, Plaintiff requests that the Court take the first step in the approval process and grant preliminary approval of the Parties' Settlement. Additionally, Plaintiff requests that the court (1) approve of the form and consent of the Class Notice ("Long Form Notice"), attached as Exhibit B2 to the Settlement Agreement (as well as the E-Mail Summary Notice, and Postcard Summary Notice—attached as Exhibits B1 and B3 to the Settlement Agreement); (2) order that notice be disseminated to the class; and (3) schedule a fairness hearing on an appropriate date following the completion of the prerequisite class action settlement procedures discussed herein. A proposed Preliminary Approval Order is attached as Exhibit C to the Settlement Agreement, which is attached hereto as Exhibit 1 ("Agreement").

## II.    BACKGROUND

### A.    Litigation History

On April 18, 2014, Plaintiff filed his complaint. He alleged that the labeling and marketing of Up & Up wipes as "flushable" was false and misleading and asserted claims for tortious breach of warranty; negligent failure to warn; negligent design; breach of the implied warranty of merchantability; breach of the implied warranty of fitness for a particular purpose; violations of the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Stat. Ann. §§ 1345.01, *et seq.*; and for unjust enrichment. Plaintiff sought to pursue these claims on behalf of himself and all purchasers of Up & Up wipes in the state of Ohio. Plaintiff alleged that the labeling caused people to purchase the Up & Up wipes who would not otherwise have done so, and that Plaintiff and members of the class suffered injuries and damages as a result of the misleading marketing and poor product design.

Plaintiff also sought to enjoin the wrongful conduct alleged in the complaint. On July 3, 2014, Plaintiff amended his complaint to remove claims brought under OCSPA and add claims for negligent misrepresentation; fraud; violation of the Ohio Products Liability Act ("OPLA"), Ohio Rev. Code Ann. §§ 2307.75, 2307.76, and 2307.77; and violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*

### B.      Motion to Dismiss

On September 4, 2014, Defendants filed motions to partially dismiss Plaintiff's Amended Complaint. (Dkt. Nos. 17, 19.) After full briefing, the Court dismissed Plaintiff's claims for tortious breach of warranty, negligent design, and negligent failure to warn, finding that those claims were abrogated by OPLA. The court additionally found that Plaintiff failed to state a claim for negligent misrepresentation. Otherwise, the Court allowed for Plaintiff's claims to proceed to discovery. (Dkt. No. 33.)

### C.      Discovery

Class Counsel and Defendant have vigorously litigated this action through (a) far-reaching written discovery; (b) vast production and review of electronic data and other paper documents, totaling almost 200,000 documents produced by Defendants; (c) briefing related to multiple motions to compel discovery; (d) five depositions of Defendants' employees, former employees, and corporate representatives; (e) a deposition of Plaintiff; (f) depositions of four non-party witnesses; and (f) discovery and depositions related to eight expert witnesses. (Ex. 2, Declaration of Hassan Zavareei ("Zavareei Decl.") ¶ 3.)

### D.      Summary Judgment

On April 18, 2016, after significant discovery, Defendants' moved for summary judgment on the claims remaining in the case. (Dkt. Nos. 111, 112.) On September 12, 2016, after significant briefing, the Court partially granted the motions. (Dkt. No. 146.) The Court dismissed the unjust

enrichment claim, Plaintiff's three OPLA claims, and the fraud claim against Target. Plaintiff's

claims against Target for breach of implied warranties and violation of MMWA, and against Nice-

Pak for fraud were all found to be viable for trial. (*Id.*) In its summary judgment ruling, the Court

denied Defendants' motion to strike Plaintiff's economic expert Colin Weir and found that Mr. Weir

offered sufficient support to allow for the use of his damages theories, including a price premium

damages theory. (*Id.* at 13-14.)

## E.    Class Certification

On April 18, 2016, simultaneous to Defendants' summary judgment motions, Plaintiff

moved for class certification. (Dkt. Nos. 113, 114). Defendants opposed the motion, arguing that,

among other things, Plaintiff's experience was atypical of the class; injunctive relief under Fed. R.

Civ. P. 23(b)(2) was unavailable; and common questions of law and fact did not exist to satisfy the

predominance requirement. (Dkt. No. 125.)

On September 20, 2016, having previously partially granted Defendants' summary judgment

motions, the Court granted Plaintiff's class certification motion, but limited the class definition to

purchasers of the Nice-Pak "Buckeye" formulation of Up & Up wipes from April 18, 2010, through

the discontinuation of that product's formulation in 2014. (Dkt. No. 147.) The Court also refused to

certify an injunctive relief class under Fed. R. Civ. P. 23(b)(2), and it did not certify fraud claims

against Nice-Pak.

The parties commenced settlement discussions not long after class certification, and agreed

to proceed to mediation.

## F.    Settlement Negotiations

The proposed settlement was reached following significant, hard-fought litigation and

several rounds of arms-length settlement discussions between capable counsel. In addition to many

informal settlement discussions, the parties attended a day-long mediation before respected neutral

Michael Ungar on February 2, 2017, in Cleveland, Ohio. The parties made significant progress in mediation before Mr. Ungar, and engaged in follow-up settlement conversations in the ensuring months. After reaching agreement on many, but not all, settlement terms, the parties sought the Court's assistance with settlement talks, and a settlement conference before this Court was held on November 15, 2017. Finally, after appearing before the Court for a Settlement Conference and continuing settlement discussions afterward, the parties reached a Memorandum of Understanding on December 13, 2017. The parties finalized the proposed Settlement Agreement on March 28, 2018. (Zavareei Decl., ¶ 4.)

## III. MATERIAL TERMS OF THE SETTLEMENT

The settlement class is to be comprised of all persons (other than Excluded Persons) residing in the United States who purchased Up & Up flushable toddler wipes from April 18, 2010 through the discontinuation of the "Buckeye" product formulation on October 31, 2014, specifically excluding Excluded Persons and purchasers of Nice-Pak's "Sigma" formulation and subsequent product formulations of Up & Up flushable toddler wipes. Excluded Persons are the Defendant's affiliates, the Court, the mediator, government entities, and those who opt out of the class.[3]

### A. Direct Relief to Class Members

Class Members can file a claim for either a (a) $1.35 cash-value Target gift card or (b) a coupon for a unit of current formulation Up & Up wipes manufactured by Nice-Pak, for each unit of the Products purchased during the Class Period (i.e., between April 18, 2010 and October 31, 2014). There is no cap on the total amount to be paid to any class member for claimed purchases that are corroborated by Proof of Purchase. However, a maximum of 20 units without Proof of

---

[3] The Class also specifically excludes purchasers of Nice-Pak's subsequent "Sigma" formulation of Up & Up flushable toddler wipes. Nice-Pak submitted its testing methodology and results relating to is "Sigma" technology flushable wipes to the Federal Trade Commission ("FTC") to substantiate its flushability claims for that product formulation.

Purchase shall be paid to any Class Member for claimed purchases that are not corroborated by Proof of Purchase. "Proof of Purchase" means an itemized retail sales receipt showing, at a minimum, the purchase of a Product, the purchase price, and the date and place of the purchase. (Agreement, at 9.)

The claim form is a simple two-page form that can be completed in a few minutes. It can be completed online or submitted by mail. (*Id.* at Exs. A1-A2.)

## B. Changed Practices

Shortly after the initiation of this lawsuit, in or around October 2014, Target stopped selling the "Buckeye" formulation of Up & Up wipes. (Agreement, at 2, 4.)

Class Counsel believes that the combination of direct relief and changed practices compensates Class Members for the harm they suffered, in light of the risks of litigation. (Zavareei Decl., ¶¶ 6-10.) In particular, there may be substantial difficulties establishing: that the Up & Up wipes were, in fact, manufactured in such a way that they would not be able to live up to "flushability" claims; that the labeling was likely to deceive or confuse consumers; and that consumers paid a premium for the Up & Up wipes.

## C. Administrative Expenses, Attorneys' Fees and Costs, Incentive Awards

Defendants also agreed to pay for the reasonable costs of notice and claims administration, and a $10,000 service award to Plaintiff. (Agreement, ¶¶ 11.b, 12.) Finally, Class Counsel will seek an award of (and Defendants agree not to oppose), up to $1,615,000.00 in combined attorneys' fees and costs and expenses. (*Id.* ¶ 11.a.) That amount represents a discount on the actual time and costs expended by Class Counsel litigating these cases, which is estimated to total approximately $2 million, and will continue to increase up to and after settlement approval. (Zavareei Decl., ¶ 5.) The other terms of the Settlement are in no way contingent on Class Counsel's fee request. Defendants

will pay administration costs, incentive awards, and attorneys' fees and costs in addition to (not part of) the benefits that Defendants are providing Class Members as part of the Settlement.

### D.     Notice

As part of the proposed Settlement, the parties have worked together to reach an agreement as to the language of the notices to be provided to the members of the Settlement Class. Separate and apart from the payments being made by Defendants described in Sections III.A and III.C, *supra*, Defendants will pay all costs and expenses incurred in providing notice of the Settlement to the members of the Settlement Class, including but not limited to fees related to retaining (i) Heffler Claims Group to notify potential Class Members by utilizing cross-device targeting on desktop and mobile to Target consumers with children ages six (6) to twelve (12) or those who follow Target's Facebook page, and a press release via PR Newswire and and (ii) Tilghman & Co., P.C. to coordinate direct notice to certain Target customers who purchased Up & Up flushable toddler wipes from January 1, 2013 through October 31, 2014, maintain the Settlement Website, and otherwise administer the Settlement. Tilghman & Co., P.C., in consultation with the parties, will establish a settlement website, which shall contain the settlement notices, a contact information page that includes address and telephone numbers for the claim administrator and the parties, the settlement agreement, the signed order of preliminary approval, online and printable versions of the claim form and the opt out forms, answers to frequently asked questions, and (when it becomes available) Plaintiffs' counsel's application for attorneys' fees, costs, expenses and incentive awards and motion for final approval. Tilghman & Co. will also operate a toll-free telephone number which Class Members can contact with requests for information about the settlement. Class Members who request copies of the Long Form Notice will be sent copies by their choice of U.S. mail or email.

Using nationwide sales data, Target's customer databases, and Plaintiff's testimony regarding purchasing patterns, Defendants estimate that the Class consists of approximately 538,710

individuals. To reach those individuals, the claim administrator will work with Target to send direct notice to approximately 835,361 individuals who purchased qualifying products and similar flushable wipes products during the class period. Approximately 75% (626,521) of the notices will be sent via e-mail and the remaining 25% (208,840) of notices will be sent via postcards to individuals for whom Target only has physical addresses. Defendants estimate that these direct notices will be sent to at least 53% of known Class members. Any of the Class members who are not reached through these direct notices will be notified via supplemental online notices that will be published for a total of 44 million impressions on various websites, including Google, Facebook, and Instagram. Additionally, a Press Release will be issued through the PR Newswire network. (Ex. 3, Declaration of Jeanne Finegan ¶¶ 15-29.)

E. **Plaintiff's Analysis of the Settlement**

Based on their reasoned judgment, Plaintiff's counsel believes the proposed Settlement is fair and reasonable. (Zavareei Decl., ¶¶ 6-10.)

Plaintiff believes that the evidence obtained in discovery showed that the Up & Up wipes' labels for the "Buckeye" formulation of the product were likely to (and did) deceive unsuspecting consumers, and that they caused consumers harm. Plaintiff also maintains that Defendants knew of the deceptive and harmful nature of the Up & Up wipes' packaging.  (*Id.*, ¶ 7.)

However, there were serious risks to continuing with the litigation. First, Plaintiff would have been required to prove that the Up & Up wipes were, in fact, manufactured in such a way that they would not be able to live up to "flushability" claims, and that the labeling was likely to deceive or confuse consumers. Additionally, Plaintiff would have had to establish a price premium that consumers paid for the Up & Up wipes. Defendant disputed that their products did not live up to "flushability" claims and also claimed that Plaintiff would not be able to establish a price premium. While Plaintiff disputes this and has adduced evidence to undermine Defendant's arguments, it was

unclear how the arguments would be resolved at trial. (*Id.*, ¶ 8.) Thus, there was a substantial risk that class members would recover only nominal damages, or nothing at all. Finally, any judgment in Plaintiff's favor would likely be appealed. Thus, even in the best case, it could take years to get relief for class members. (*Id.*)

Plaintiff and counsel believe that either (1) a refund to claimants in the form of a $1.35 Target gift card per unit of Up & Up wipes purchased, or (2) a coupon for a unit of current formulation Up & Up wipes manufactured by Nice-Pak, with no cap on claims with proof of purchase, and a cap of 20 claims without proof of purchase, is an excellent result—indeed it is better than the likely recovery at trial. (*Id.*, ¶ 9.) Indeed, in a contested proceeding, class members who lacked proof of purchase—which is likely the majority of class members—might get nothing at all. Having a claim process also directs available funds to those who most care about the alleged deception and thus are willing to file a claim. The $1.35 per unit equates to approximately one 48-count package of Up & Up wipes, and a coupon for a unit of the current formulation is tantamount to replacing the allegedly harmful product with a unit of the improved upon product. *Id.* Further, in addition to the monetary relief, Plaintiff's lawsuit was a motivating factor for Nice-Pak to increase its involvement in consumer education initiatives regarding what products should and should not be flushed. Plaintiff believes that the change in formulation will benefit class members and other consumers. (*Id.*, ¶ 10.)

Defendants, while continuing to deny all allegations of wrongdoing, also believe the settlement is in their interest to avoid further expense, inconvenience, and interference with their ongoing business operations.

## IV. ARGUMENT

### A. Preliminary Approval of the Settlement is Appropriate

Where parties propose to resolve class action litigation through settlement, they must obtain court approval. Fed. R. Civ. P. 23(e); *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013). This said, "[t]he law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals." Rubenstein, Newberg on Class Actions § 13:44 (5th ed. 2015); *see also Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions").

Approval of a class settlement proceeds in three stages: (1) the court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the proposed settlement is fair, reasonable and adequate. *Reed v. Rhodes*, 869 F. Supp. 1274, 1278 (N.D. Ohio 1994); *see also Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983).

Courts grant preliminary approval "where the proposed settlement is neither illegal nor collusive and is within the range of possible approval." Rubenstein, Newberg on Class Actions § 13:10 (5th ed. 2015) (citation omitted); *see also Williams*, 720 F.2d at 921 (noting that the preliminary approval inquiry asks "whether the compromise . . . is illegal or tainted with collusion"); *Brent v. Midland Funding, LLC*, No. 3:11-cv-1332, 2011 WL 3862363, at *6 (N.D. Ohio Sept. 1, 2011) (noting that "[t]he Court granted the motion for preliminary approval" after "finding that the settlement was within the range of fairness and reasonableness").

"[T]here are a multitude of factors that might enter into the Court's preliminary analysis of whether the terms of the proposed settlement agreement are fair, reasonable, adequate, and in the public interest." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001)

(citation omitted).[4] At this stage, however, the Settlement should be approved so long as "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval." *Id.* (citation omitted).

### 1. There is no indication of fraud or collusion, in light of the years of litigation and discovery that occurred prior to the settlement.

This Settlement is the product of almost four years of contentious litigation, and legitimate, arms-length negotiations. *See Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("In evaluating a proposed settlement of a class action, the district court is required to examine the terms of the settlement and the process by which the settlement was arrived at, to make sure that the terms are reasonable and that the settlement is not the product of fraud, overreaching, or collusion."); Rubenstein, Newberg on Class Actions § 13:14 (5th ed. 2015) ("The primary procedural factor courts consider in determining whether to preliminarily approve a proposed settlement is whether the agreement arose out of arms-length-noncollusive negotiations.").

First, the Settlement was reached only after numerous negotiations—with the assistance of both the Court and a third-party mediator—over the course of over a year. (Zavareei Decl., ¶ 4.) *See, e.g., Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 3 (2d Cir. 2012) (finding that "the district court did not abuse its discretion when it presumed the proposed settlement was fair" where "competent counsel appeared on both sides" and "settlement was reached only after contentious negotiations"); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 350-51 ("Moreover, when a settlement is the

---

[4] Courts consider "many of the same factors" that would be relevant at *final* approval, "though with somewhat less scrutiny." Rubenstein, Newberg on Class Actions § 13:15 (5th ed. 2015). Those factors are: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Vassalle*, 708 F.3d at 754.

result of extensive negotiations by experienced counsel, the Court should presume it is fair."); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 244 (S.D. Ohio 1991) (approving settlement reached "[a]fter almost six months of concerted negotiations").

Second, settlement discussions did not even commence until almost three years into the litigation, after hard-fought briefing on both summary judgment and class certification issues. The parties conducted discovery on all relevant issues, as almost 200,000 pages of documents were produced, and almost 20 depositions were held. In short, the parties could hardly have litigated this case more vigorously, or done more to understand the issues in the case and the value of Plaintiffs' claims. *See* Rubenstein, Newberg on Class Actions § 13:14 (5th ed. 2015) ("Where the proposed settlement was preceded by a lengthy period of adversarial litigation involving substantial discovery, a court is likely to conclude that settlement negotiations occurred at arms-length.").

Finally, the proposed award of attorneys' fees and costs does not raise a substantial ground to doubt the fairness of the Settlement. Where fees do not come out of the benefits to the Class Members, the Class Action Fairness Act of 2005 provides that "any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action." 28 U.S.C. § 1712(b)(1). The total fees-and-costs award of approximately $1,615,000 is a discount from the lodestar and costs Class Counsel have accumulated litigating this case over almost four years. (Zavareei Decl., ¶ 5.) Importantly, moreover, the Settlement is in no way contingent on an award of attorneys' fees.

### 2. The settlement falls within the range of reasonableness and provides substantial benefits to the class, in light of the likelihood of success on the merits.

It is Class Counsel's considered opinion that the recovery from Defendant under this Settlement is fair, adequate, and reasonable. (Zavareei Decl., ¶¶ 6-10.) Although Plaintiff and Class Counsel would have obviously sought more in any trial, the value of the Settlement constitutes a

substantial recovery under all of the circumstances. Moreover, notwithstanding the confidence of Class Counsel in the merits of Plaintiff's claims against Defendants, Class Counsel are cognizant that no case is a sure winner at trial and that Defendant possessed substantial defenses as to class certification and to the merits of the claims at issue. Although Plaintiffs have vigorously litigated this matter for almost four years, to prevail they still would have had to prevail on the merits at trial, establish damages, and prevail on any and all appeals.

In light of the risks of continued litigation, *see* Section III.E, *supra*, the Settlement is reasonable, in light of what Plaintiffs could recover if they prevailed at trial, and when measured against the likelihood of success. *See Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 781 (N.D. Ohio 2010) (approving settlement where the case "was a hard-fought legal battle from the filing of the complaint . . . to the final settlement conference" and explaining that "[b]ased on the Court's intimate knowledge of these proceedings, there is no reason to believe that either party would litigate the remainder of the case less vigorously"). This is particularly true at preliminary approval because "the Court, at this juncture, is not obligated to, nor could it reasonably, undertake a full and complete fairness review." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 350. Rather, "the Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation." *Id.*; *see also Int'l Union*, 497 F.3d at 631 ("[W]e cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." (internal quotation marks omitted)).

Courts recognize that settlements by their inherent nature often result in Class Members receiving less than the full potential value of their claims. *See Williams*, 720 F.2d at 922-23 ("Class counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiffs' class."); *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543,

13

550 (S.D. Ohio 2000) ("[T]he Court may not withhold approval simply because the benefits accrued from the agreement are not what a successful plaintiff would have received in a fully litigated case." (internal quotation marks and alterations omitted)). Here, although Plaintiff's damages expert did not ultimately perform a regression analysis to determine the appropriate measure of price premium damages, it is known that the $1.35-per-unit recovery equals approximately one 48-count unit of Up & Up wipes. *See* Section III.E, *supra*. Moreover, the option of a coupon for a unit of newly formulated Up & Up wipes could, in essence, be compared to a full refund per unit purchased or, in other words, a replacement of the allegedly actionable product with a unit of the improved and reformulated new product.

Either way, courts routinely approve of settlements valued significantly less than the full amount of damages available at trial. *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538-39 (3d Cir. 2004) (approving a 33% settlement value); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1350-51 (S.D. Fla. 2011) (approving a settlement for between 9% and 45% value); *Barel v. Bank of Am.*, 255 F.R.D. 393, 402 (E.D. Pa. 2009) (approving a settlement with a value of 52% of the low end of the damages range and 5.2% of the high end); *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000) (approving a settlement that ranged from 5.2% to 36.4% of the potential recovery); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460-61 (S.D.N.Y. 2004) (approving a settlement that was "not rich in comparison to the vast damages Plaintiffs claim to have suffered").

### 3. The settlement suffers from no obvious deficiencies and does not improperly grant preferential treatment to class representatives or segments of the class.

There is no evidence that the Settlement suffers from "obvious deficiencies, such as unduly preferential treatment to the class representatives or of segments of the class, or excessive compensation for attorneys[.]" *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 352 (citation

omitted).[5] As discussed above, this Settlement provides substantial relief to the Class Members, and with the exception of a modest incentive award to compensate Plaintiff for his efforts in the case, treats all Class Members equally. Class Members are entitled to submit claims for as many purchases of Up & Up wipes as they made during the class period if supported by Proof of Purchase, and up to 20 claims without Proof of Purchase are allowed, with the ceiling being put in place in order to prevent against fraudulent claims.

While the Settlement provides for modest service awards to the Class Representatives to compensate them for stepping forward and for the time that they dedicated to the prosecution of this action for the benefit of the Class Members, courts recognize that such contribution awards are appropriate. *See Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (recognizing appropriateness of incentive awards). And the proposed $10,000 incentive award to Plaintiff falls well within the range of awards approved in this Circuit. *See Liberte Capital Grp. v. Capwill*, No. 5:99-cv-818, 2007 WL 2492461, at *1 (N.D. Ohio Aug. 29, 2007) ("Incentive awards, where appropriate, generally range from a few thousand dollars to $85,000"). An incentive award is particularly warranted here, where not only did Plaintiff sit for a deposition, but he was subjected to invasive discovery that also included an on-site inspection of his home, and his wife, mother-in-law, and father-in-law being deposed. Accordingly, this Settlement does not provide for any preferential treatment to Class Representatives or segments of the Class.

### 4. The opinions of class counsel favor approval of the settlement.

In assessing the settlement, this Court must also consider the experience of counsel and their views of the settlement. *Thacker v. Chesapeake Appalachia, L.L.C.,* 695 F. Supp. 2d 521, 532 (E.D. Ky.

---

[5] At this preliminary stage, the Court does not have to decide whether the incentive awards and attorneys' fees and costs ultimately will be approved, only whether there are "substantial grounds to doubt the preliminary fairness . . . of the proposed settlement agreement." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 352.

2010) ("In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"). Here, Class Counsel includes attorneys experienced in consumer class action litigation. (Dkt. 114, Exs. 22-23.) Class Counsel is experienced in both the litigation and settlement of class actions of this type, has conducted extensive direct and third party discovery, have fully briefed class certification and summary judgment issues, and has thoroughly evaluated the merits of this case. (*Id.*; *see also* Zavareei Decl. ¶¶ 2-3.) Given the experience of Class Counsel in this matter and in similar matters, their opinions that the terms of this settlement are fair, adequate, and reasonable should be given substantial weight in approving the settlement.

### 5. The public interest also merits in favor of approval of the settlement.

"Public policy generally favors settlement of class action lawsuits." *In re Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*, No. 1:09-WP-65000, 2016 WL 5338012, at *12 (quoting *Stinson v. Delta Mgmt. Assocs.*, 302 F.R.D. 160, 165 (S.D. Ohio 2014)); *see also id.* ("Settlement in this case 'provides relief for a substantial number of class members, avoids further litigation, and frees the Court's judicial resources.'") (quoting *Stinson*). "Settlement agreements should . . . be upheld whenever equitable and policy considerations so permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to citizens whose taxes support the latter. An amicable compromise provides the more speedy and reasonable remedy for the dispute." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976). Here, in light of provision of substantial benefits to the Class Members, the public interest would be well-served by preliminary approval of the settlement.

### B. The Settlement Class Should Be Certified

Although this Court certified an Ohio class in this case on September 20, 2016 (Dkt. No. 147), Plaintiff seeks preliminary approval, for settlement purposes only, of an expanded Settlement

Class so that nationwide relief can be afforded. The class is in all other material aspects the same as the Ohio class the Court previously certified.[6] For the same reasons already briefed by Plaintiff and outlined in this Court's class certification order, the Settlement Class meets the requirements of Fed. R. Civ. P. 23.

### 1. Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." *See Daffin v. Ford Motor Co*, 458 F.3d 549, 552 (6th Cir. 2006) (explaining that "while there is no strict numerical test, substantial numbers usually satisfy the numerosity requirement" (internal quotation marks omitted)). Because the Ohio class was found to be sufficiently numerous (Dkt. No. 147 at 10), the same is certainly true of a nationwide class.

### 2. Commonality

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." This said, "there need only be one question common to the class, so long as the resolution of that question will advance the litigation." *Philips v. Philip Morris Cos. Inc.*, 298 F.R.D. 355, 363 (N.D. Ohio 2014) (internal quotation marks and alteration omitted). The commonality requirement is easily met here. (Dkt. No. 147 at 8 ("The basic question of fact remaining in this case is whether the Defendants' product is "flushable," "sewer and septic safe" and/or "breaks apart after flushing" as stated on its packaging/label. This question is common to all users of the product, and, all potential class members.")).

### 3. Typicality

Rule 23(a)(3) requires that the claims of the class representatives be "typical of the claims . . . of the class." The typicality element is designed to assess "whether a sufficient relationship exists

---

[6] The Settlement Class definition adds a date certain for the end of the class period, approximately consistent with the date the "Buckeye" product formulation was discontinued.

between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)). The requirement is satisfied in this case because "if Plaintiff can prove that these wipes are not 'flushable' or 'sewer and septic safe', as he is claiming, then he will, in fact, prove the other class members' claims as he proves [his] own." (Dkt. No. 147 at 9 (citing *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 406 (S.D. Ohio 2007).)

### 4. Adequacy

Rule 23(a)(4) requires that the named representatives "will fairly and adequately protect the interests of the class." This requirement has two components: "1) [T]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Vassalle v. Midland Funding, LLC*, 708 F.3d 747, 757 (6th Cir. 2013) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083, and *Senter v. General Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976) (alteration in original)). The Court's previous conclusion that these criteria were satisfied should not be disturbed here. (Dkt. No. 147 at 9-10.)

### 5. Predominance and Superiority

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." To satisfy the predominance requirement, "a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (internal quotation marks omitted). "The fact that a defense may arise or may affect different class members differently does not compel a finding that individual issues predominate over common

ones." *Id.* (internal quotation marks omitted); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) ("Rule 23(b)(3), however, does *not* require a plaintiff seeking class certification to prove that every element of her claim is susceptible to classwide proof." (internal quotation marks and alterations omitted)). As the Court previously found, this inquiry is satisfied in this case because the resolution of the question of "whether the wipes at issue satisfied the implied warranty of merchantability, and the corresponding warranty protections under the [MMWA], in that it performs as described on the packaging" would be that "either all parties purchased a product that conformed with the warranty, or none did." (Dkt. No. 147 at 11.) Further, any challenge to Plaintiff's proposed damages calculations goes to the weight of any damages evidence, but does not undermine the predominance finding. (*Id.* at 11-12.) It likewise remains the case that "a class action is superior to other available methods for the fair and efficient adjudication of this controversy." (*Id.* at 12.)

### C.     The Court Should Approve the Proposed Form and Method of Class Notice

Before granting final approval to a class action settlement, the Court must "direct notice in a reasonable manner to all class members who would be bound" by the settlement. Fed. R. Civ. P. 23(e)(1)(B). The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Int'l Union*, 497 F.3d at 629-30 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The proposed notice program satisfies due process and Rule 23. As discussed above, the notice plan provides for direct notice. *See* Fed. R. Civ. P. 23(c)(2) (explaining that individual notice should be provided to all members who can be identified through reasonable effort). The notice plan also includes social media publication notice. *See Vassalle v. Midland Funding, LLC*, No. 3:11-cv-00096, 2014 WL 5162380, at *11 (N.D. Ohio. Oct. 14, 2014) (approving notice where "notice was

disseminated via individual mailing to all Class Members identified in the customer data files of [the defendant], and also by publication"). Moreover, the Settlement provides for the creation and use of a Settlement website to be maintained by an experienced settlement administrator.

The Settlement Notice itself also satisfies due process and Rule 23. *See* Settlement, Exs. 6, 8; *see also In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (approving notice that "described the terms of the settlement, the reasons for [class representatives' decision to settle], the legal effect of the settlement and the rights of the [class members] to voice their objections"). The Notice here

> reasonably apprises the Class Members of the nature and pendency of the Class Action and the Class claims; of all the material elements of the proposed settlement, including, but not limited to, the definition of the Class; the relief available under the proposed settlement and steps necessary to obtain the relief; the right, time and manner to exclude themselves from, or object to, the settlement; of the identity of Class Counsel and of information necessary to communicate with Class Counsel; that additional information is available from the Settlement Administrator; . . . Class Counsel's intent to apply for a fee award . . .; and of the right to appear at the Fairness Hearing, including through an attorney.

*Vassalle*, 2014 WL 5162380, at *11. Additionally, the Notice "informs class members that they can receive more information from the settlement website," where they "can view summary information about the . . . Settlement, and can access the complete settlement agreement and other court documents . . . ." *Id.*

## V. DATES FOR THE FINAL APPROVAL PROCESS

Plaintiff requests that in connection with preliminary approval, this Court set a date for a final approval hearing to consider the fairness of the Settlement and to hear any comments from the Settlement Class Members, as well as dates for mailing and publishing Notice and deadlines for objections and opting out of the settlement class. Plaintiff proposes the following schedule:

| Item | Proposed Due Date |
|---|---|
| Initiate Notice | 30 days after preliminary approval |
| Plaintiff's Motion for Attorneys' Fees, Costs and Incentive Award | 45 days before final approval hearing |
| Objections, Requests to Appear, opt-outs | 30 days before final approval hearing |
| Plaintiff's Motion for Final Approval; replies in support of Motion for Attorneys' Fees, Costs and Incentive Award; response to objections | 10 days before final approval Hearing |
| Fairness Hearing | 120 days after preliminary approval, in accordance with the Court's availability |
| End of Claim Period | 30 days after final fairness hearing |

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Court grant preliminary approval to this Settlement, approve and order the issuance of the Class Notice, grant conditional certification of the Class for Settlement purposes only, and establish a date for a Fairness Hearing. A proposed Preliminary Approval Order is attached as Exhibit C to the Settlement Agreement.


Dated:  March 29, 2018

/s/ Hassan A. Zavareei
HASSAN A. ZAVAREEI (pro hac vice)
JONATHAN K. TYCKO (pro hac vice)
ANDREW J. SILVER (pro hac vice)
**TYCKO & ZAVAREEI LLP**
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
(202) 973-0900
(202) 973-0950 (FAX)
jtycko@tzlegal.com
hzavareei@tzlegal.com
asilver@tzlegal.com

DENNIS R. LANSDOWNE (0026036)
STUART E. SCOTT  (0064834)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700

Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (FAX)
dlansdowne@spanglaw.com
sscott@spanglaw.com
dfrech@spanglaw.com

*Attorneys for Plaintiff Christopher Meta and the Class*

## CERTIFICATE OF SERVICE

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. A true and correct copy of the foregoing was served electronically on Defendants' counsel of record.

/s/ Andrew J. Silver
Andrew J. Silver