**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

CHRISTOPHER META,

Plaintiff,

v.

TARGET CORP., et al.,

Defendants.

Case No. 4:14-CV-0832

**NOTICE OF OBJECTION**

**OBJECTION**

Class member and objector, Sheila Ference, ("hereinafter Objector") objects to the class action settlement. She submitted a claim form on July 9, 2018 receipt of which is attached hereto. My address is 5287 Linda Drive, Morrow, Ohio 45152 and my telephone number is (937) 205-6035.

This Settlement is plagued with several problems. It is not fair, reasonable, and adequate as required by Federal Rule of Civil Procedure 23(e). The district court fulfills both its "duty to act as a fiduciary who must serve as a guardian of the rights of absent class members and ... the requirement of a searching assessment regarding attorneys' fees that should properly be performed in each case." *In re Bank of Am. Corp. Securities, Derivative, and Employee Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 134 (2d Cir. 2014) citing *McDaniel v. Cnty. of Schenectady,* 595 F.3d 411, 419 (2d Cir. 2010).

"Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013). Unlike ordinary settlements, "class-action settlements affect not only the interests of the parties and counsel who

negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations. *Id*. "[T]hus, there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Id*.

Under the proposed Settlement Agreement, for each unit of Up & Up flushable toddler wipes purchased during the Class Period, a Class Member can opt to receive either a $1.35 Target gift card or a coupon for a free unit of current Up & Up wipes manufactured by Nice-Pak (double 48- count package or equivalent depending on wipes product). The number of units for which a Class Member can recover a Target gift card or a coupon for current product without Proof of Purchase shall be capped at 20 units.

Undoubtedly, this is a coupon settlement and the rules surrounding coupon settlements should be applied. Congress passed Section 1712 to regulate coupon settlements, including increased judicial scrutiny of coupon settlements generally. *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013); § 1712 (e); *see also Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653–54 (7th Cir. 2006); *True v. Am. Honda Motor Co.*, 749 F.Supp.2d 1052, 1069 (C.D. Cal.2010). The other form of regulation of coupon settlements was to set forth "a series of specific rules that govern the award of attorneys' fees in coupon class actions." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173 at 1178; § 1712(a)-(d).

The plain text of §1712, Subsection (a) discusses "the ***portion*** of any attorney's fee award... that is attributable to the award of coupons" (emphasis added). Thus, CAFA itself has determined that settlements that create non-coupon value in addition to coupon value (*i.e.* those where a separate ***portion*** of the attorney's fee award is attributable to non-coupon relief) still fall within its ambit. Thus, even if this Court is to determine that a Target gift card is not a coupon under statute (which Objector argues that a Target gift card is a coupon), then Section 1712 (a), by its own terms,

applies to this settlement as it offers a coupon for a pack of wipes to class members. A court must scrutinize that portion of the attorney's fee and base it "on the value to class members of the coupons that are redeemed." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173 at 1178.

The court, when approving the settlement of a class action, is not to assume the passive role that is appropriate when there is genuine adverseness between the parties rather than the conflict of interest recognized and discussed in many previous class action cases. See, e.g., *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir.2014); *Staton v. Boeing Co.*, 327 F.3d 938, 959–61 (9th Cir. 2003); *In re GMC Pick–Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 801, 819–20 (3d Cir.1995). Critically the court must assess the value of the settlement to the class. *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014) *cert. denied sub nom. Nicaj v. Shoe Carnival, Inc.*, 135 S. Ct. 1429 (2015).

In ascertaining the fairness of a settlement containing coupons, the court is to "consider, among other things, the real monetary value and likely utilization rate of the coupons provided by the settlement." S.Rep. No. 109–14, at 31, *as reprinted in* 2005 U.S.C.C.A.N. 3, 31. *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d at 1073. To that end, CAFA provides that "the court may, in its discretion upon the motion of a party, receive expert testimony ... on the actual value to the class members of the coupons that are redeemed." 28 U.S.C. § 1712(d).

In *Redman v. RadioShack Corp.*, the court found that it was inappropriate "to attempt to determine the ultimate value of the settlement before the redemption period ended without even an estimate by a qualified expert of what that ultimate value was likely to prove to be." *Redman v. RadioShack Corp.*, 768 F.3d 622 at 629. The Court must hear from a qualified expert to determine the ultimate value of the settlement.

In this case, as in most other cases, it is exceedingly unlikely that the redemption rate for the coupons would be anywhere close to 100%. Cases abound in which few class members redeem their coupons. See *Moody v. Sears Roebuck & Co.*, 664 S.E.2d 569, 572, 574 (N.C. App. 2008) (317 valid claims filed out of 1,500,000-member class, for total of $2,402 in total redemption of coupons); *Union Fidelity Life Ins. Co. v. McCurdy*, 781 So.2d 186, 188 (Ala. 2000) (113 redemptions out of 104,000 member class). The fairness of the settlement cannot be properly assessed until the likely redemption rate is determined.

Additionally, the Court should determine the potential benefit the Defendant will receive as part of the settlement. "Couponing is an important retail marketing strategy, and believed to confer a number of advantages on a retail seller, such as breaking routine shopping patterns to use a coupon, re-activating old customers, and building up store traffic which will result in more impulse buying." *Redman v. RadioShack Corp.*, 768 F.3d 622, 631 (7th Cir. 2014) *cert. denied sub nom. Nicaj v. Shoe Carnival, Inc.*, 135 S. Ct. 1429 (2015).

The Court should also take special consideration to determine whether the requested attorney's fees may be too high. Class counsel is requesting $1.615 million in attorneys' fees and costs. The fee award should be limited to a percentage of the settlement that it actually received by the class, 25 percent or less. Based on the attorney fee request, as of June 19, 2018, the claims administrator had only received 145,605 claims, which means that even if each class member claimed that he or she had purchased 20 packages of wipes during the claims period (which is doubtful), then the total potential award of $27.00 in a Target gift card, then the total amount to class members would be $3,931,335. If the class members each indicated that they had purchased only 5 packages of wipes instead of the 20 maximum packages (which is more likely), then class members would get a total of $928,833.75. This amount of $928,833.75 to the class stands in stark

contrast to the $1.615 million to be received by the class. The fee award would be clearly excessive under this scenario.

The Court should also closely analyze the potential duplicate efforts of counsel and the level of detail provided in the fee motion and adjust the award accordingly. The Court should request attorney fee records that, at a minimum, show how much time was spent in the various aspects of litigation. The records submitted only tell the Court the total amount of time spent on the case multiplied by the person's rate. For example, there is no breakdown of how Lorenzo Cellini spent over 1,000 hours on this case, billing at $717.00 per hour. The Court must know the breakdown of the hours to determine if this amount is reasonable. The Court should also ensure that the rates requested are reasonable within this District. Objector does not believe that $864 per hour for some attorneys is reasonable.

The Court should also evaluate the settlement for any potential collusion between class counsel and defendant. The Court "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self interests … to infect the negotiations." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Rather than explicit collusion, there need only be acquiescence for such self-dealing to occur: "a defendant is interested only in disposing of the total claim asserted against it" and "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Id.* at 949 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) and *In re Gen. Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig*., 55 F.3d 768, 819-20 (3d Cir. 1995).

Finally, the award to the named plaintiff is too high. Class counsel is requesting $10,000 for the named plaintiff, while class members get $1.35 per unit claimed. This proportion is unreasonable and unfair to class members.

For the foregoing reasons, the Court should deny final approval of the settlement. Neither Objector nor I intend to appear at the Fairness Hearing. Although I do not see the relevance in a requirement that I and my attorney list our past objections, I can say that I believe I have objected to one settlement in the past. I cannot speak for my attorney, but I believe any objections she has made would be easily discovered in the public record.

I declare under penalty of perjury that I have purchased Up and Up wipes from Target for personal use during the period April 18, 2010 to October 31, 2014.

Sheila Ference by Simina Vourlis (per authority)

Sheila Ference, Objector

Dated: July 9, 2018

THE LAW OFFICE SIMINA VOURLIS

By: /s/ Simina Vourlis

SIMINA VOURLIS
856 Pullman Way
Columbus OH 43212
svourlis@vourlislaw.com
(O) (614) 487-5900
(F) (614) 487-5901
*Attorney for Objector*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on July 9 , 2018 and served by the same means on all counsel of record.

Verizon LTE 5:51 PM 17%



Done upandupwipessettlement.com

# TARGET CORP. CLASS ACTION SETTLEMENT PROOF OF CLAIM FORM

## Thank You

Thank you for your submission.

Return Home

