IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| CHRISTOPHER META | ) |
| | ) CASE NO. 4:14-cv-0832 |
| Plaintiff, | ) |
| | ) JUDGE DONALD V. NUGENT |
| v. | ) |
| | ) |
| TARGET CORP., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## NOTICE OF OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES

### I. INTRODUCTION

Class Member Objector Erich Neumann, Esq. ("Objector") hereby submits this objection to the proposed class action settlement (ECF No. 169-2) ("Settlement") and Plaintiff's application for attorneys' fees (ECF No. 172) in the above-captioned matter. For all of the reasons provided below, the Court should deny Plaintiff's application for final approval and attorneys' fees.

### II. LAW AND ARGUMENT

**A.  The Class Definition, which Excludes Most Purchasers of the 'Buckeye' Product during the Class Period, is neither Fair, Reasonable, nor Adequate.**

Even if a person purchased the 'Buckeye' Up & Up flushable toddler wipes ("Settlement Product) between 4/18/2010 and 10/31/2014 (the "Class Period"), they are excluded from any recovery simply because they *also* purchased the Nice-Pak 'Sigma' or subsequent product formulations ("Excluded Products"). Thus, individuals who purchased *both* the Settlement Product and any Excluded Product ("Dual Purchasers") will receive no compensation for their economic losses due to their purchase of the Settlement Product. For the reasons provided below, this renders the settlement neither fair, reasonable nor adequate.

1

### 1. The Class Definition and Class Notice Exclude Dual Purchasers from the Class

Dual Purchasers are excluded from *any* recovery per the plain language of the settlement, which defines the "Settlement Class" as:

> [A]ll persons residing in the United States who purchased Up & Up flushable toddler wipes from April 18, 2010 through the discontinuation of the "Buckeye" product formulation on October 31, 2014, specifically excluding Excluded Persons and purchasers of Nice-Pak's "Sigma" formulation and subsequent product formulations of Up & Up flushable toddler wipes.

Settlement at 10; *see also id.* at 51 (Notice to Class).[1] Similarly, the Settlement Website's Frequently Asked Questions ("FAQ") explains:

> **How do I know if I am a member of the settlement class?**
>
> You are a member of the Settlement class if you reside in the United States and bought Up & Up Flushable Toddler Wipes at any U.S. Target Store from April 18, 2010 through October 31, 2014. The wipes involved in this settlement were under the "Buckeye" product line, which was discontinued on October 31, 2014.
>
> The settlement specifically excludes purchasers of Nice-Pak's "Sigma" formulation and subsequent product formulations of Up & Up Flushable Toddler Wipes.

Settlement Website FAQ.[2]

The plain language of the Class Definition (and other materials provided to Class Members via notice) excludes Dual Purchasers.[3]

---

[1] Page numbers cited throughout this Objection refer to the number assigned by the Court's CM/ECF system.

[2] "Frequently Asked Questions," *Meta v. Target Corp., et al.* Settlement Website, *avail. at* www.upandupwipessettlement.com/upload/2744/META-%20Draft%20Website%20FAQ%20-REV05.07.18.pdf.

[3] Indeed, counsel for Plaintiff suggests in their fee application that the majority of claims received are not eligible for compensation. Whether this is due to the exclusion of Dual Purchasers from the Class is unknown, given Class Counsel's intentionally vague statements on the matter. Class Counsel Fee Application, ECF No. 172 at 12-13 (fn. 7).

### 2. Any Settlement Excluding Dual Purchasers is Neither Fair, Reasonable, or Adequate

The exclusion of Dual Purchasers makes the Settlement unfair, unreasonable, and/or inadequate. "Before approving a settlement, a district court must conclude that it is 'fair, reasonable, and adequate.' Several factors guide the inquiry: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Intl. Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (citing Fed. R. Civ. P. 23(e)(1)(A)-(C)).

Simply put, the only reason to exclude Dual Purchasers from the settlement is to 'pull a fast one' on this Court and permit Defendant to escape liability with respect to a large number of the 'Buckeye' sales. The 'open ended' nature of the common fund further facilitates this collusion (insofar as the Court cannot ascertain the value of the settlement at this time).

Further, Dual Purchasers would also not receive the benefits of class action tolling, meaning that the settlement leaves them with no ability to seek compensation. *See, e.g., Smith v. Pennington*, 352 F.3d 884, 894 (4th Cir. 2003) ("Indeed, the Tenth Circuit has held that where plaintiffs move for class certification by unambiguously asserting a class definition more narrow than that required by their complaint, their asserted class for tolling purposes is that more narrow definition.").

For these reasons, and the other reasons stated herein, the Settlement is neither fair, reasonable, or adequate.

### B. Alternatively, the Class Definition is Poorly Drafted and Confusing to Consumers such that the Notice is Deficient

Alternatively, in the event the Parties contend the Settlement *does* include Dual Purchasers, the Class Definition is so poorly drafted and ambiguous that the notice and ascertainability requirements are not met. If the Parties' intent is to exclude purcha<u>ses</u> of the Excluded Product (rather than purcha<u>sers</u> as currently written), they failed to craft the Class Definition in a way that putative Class Members could unambiguously ascertain their membership in the Class.

Rule 23 provides that a "notice must clearly and concisely state in plain, easily understood language…the definition of the class certified[.]" "All that the notice must do is "fairly apprise the prospective members of the class of the terms of the proposed settlement" so that class members may come to their own conclusions about whether the settlement serves their interests. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir.1975)" *Intl. Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007).

Here, a putative Class Member who is a "purchaser of [the] Nick-Pak 'Sigma' formulation" may reasonably interpret "the settlement specifically excludes purchasers of Nice-Pak's 'Sigma' formulation" as doing just that: excluding them from the settlement. Thus, insofar as the Parties contend the settlement *does* include Dual Purchasers, putative Class Members would not be "fairly apprised" of this fact and may not participate in a settlement they would otherwise participate in.

### C. The $1.615 Million Attorney Fee Application Should not be Ruled Upon Until the Court is Apprised of the Actual Amount (or Reasonable Estimate) of Funds to be Paid to the Class

Since this is an "uncapped" settlement fund, the Court cannot make a determination regarding attorneys' fees until it is apprised of the actual amount of funds to be paid to Class Members. Until that amount is established (or reasonably estimated), the Court cannot undertake the detailed fee analysis required by the Sixth Circuit's *Rawlings* decision.

4

The Sixth Circuit requires:

> When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done *as well as for the results achieved*…The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved. For these reasons, it is necessary that district courts be permitted to *select the more appropriate method* for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the *unique circumstances of the actual cases* before them.

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (citing *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 166–68 (3d Cir. 1973)) (emphasis added). In making the decision between each method, "the district court must provide a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at the fee." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Further, regardless of which method is adopted, Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees[,]" and as the Advisory Committee Notes, "[o]ne fundamental focus is the result actually achieved for class members, a basic consideration in any case in which fees are sought on the basis of a benefit achieved for class members." Fed. R. Civ. P. 23 Adv. Cmte. Notes, Subdivision (h).

Thus, it is axiomatic that the Sixth Circuit requires courts—in assessing whether to award fees under the 'percentage of the fund' or lodestar methods—to be apprised of the actual amount (or close approximation thereof) recovered by the Class. This is precisely what other courts faced with an uncapped fund settlement have done. *See, e.g., In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998) (construing uncapped fund settlement as an "atypical common fund case", Court bifurcated fees based on percentage of minimum guaranteed

5

recovery and percentage of amount actually paid to Class Members). As noted the Advisory Committee:

> In many instances, the court may need to proceed with care in assessing the value conferred on class members. ***Settlement regimes that provide for future payments, for example, may not result in significant actual payments to class members.*** In this connection, the court may need to scrutinize the manner and operation of any applicable claims procedure. In some cases, ***it may be appropriate to defer some portion of the fee award until actual payouts to class members are known.***

Fed. R. Civ. P. 23 Adv. Cmte. Notes, Subdivision (h) (emphasis added).

Alternatively, even if the Court were to choose the lodestar method[4] without knowledge of the actual value to the Class (which again, it should not do), one of the "factors considered in arriving at the [lodestar] fee" is "the value of the benefit rendered to the plaintiff class[.]" *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 2016 WL 5338012, at *22 (quoting *Bowling v. Pfizer*, 102 F.3d 777, 780 (6th Cir. 1996)). Here, the Court is unable to consider this factor. As noted herein, the Court does not have this information.

### D. Plaintiff's $7.5M "Conservative Estimate" of the Settlement Value is Absurd

In their Motion for Attorney's Fees and Costs, Plaintiff's counsel provides what can only be described as a bad faith "$7.5 million" estimate of the Settlement Value. ECF No. 172 at 9. Class Counsel's "conservative" estimate multiplies the total number of Up & Up wipes sold during the Class Period (5,560,645) by $1.35 (the value of the gift card). *Id.* Thus, Class Counsel's "conservative estimate" assumes a ***100 percent participation rate*** of the estimated 538,710 Class Members.

---

[4] Courts in this Circuit have noted that the lodestar method is "disfavored" in class action because "regardless of how a total settlement structure is formally structured…every dollar given to class counsel means one less dollar for the class" *Salinas v. U.S. Xpress Enterprises, Inc.*, No. 13-245, 2018 WL 1477127, at *9 (E.D. Tenn. Mar. 8, 2018) (quotations omitted).

However, empirical data suggests otherwise. In claims-made (versus automatic payment) settlements, a study by the Consumer Financial Protection Bureau found that the median claims rate is 8 percent.[5] Here, using Defendant's estimates, the average number of Up & Up wipes purchased by Class Members is 10.3.[6] If 8 percent of Class Members made 10.3 claims, the settlement value would be $443,897 – a fraction of what Class Counsel seeks in fees.

Class Counsel's analysis of the "145,605 claims" that had been received as of June 19, 2018 is illuminating. ECF No. 172 at 18-19. Sixty days into the notice period,[7] claims have been made with respect to a mere 2.6 percent of Up & Up units.[8] But, in an ominous footnote, Class Counsel suggests that the number of claims that will actually be paid is far lower. *Id.* at fn. 7 (discussing the claims rate "even if only one-quarter of the claims received thus far were valid"). Thus, the current amount expected to be paid to Class Members is as low as (or lower than) *$49,141* (25 percent of 145,605 x $1.35). Even if 300,000 *payable* claims are ultimately made, the Settlement value would be *$405,000*. Under any comprehensible scenario, the outcome is the same: the vast majority of money paid by Target will go to Class Counsel, not the Class.

In a desperate attempt to provide yet another bad-faith Settlement value estimate to this Court, Class Counsel also provides another "estimate" of $14.5 million, which assumes that each of the 538,710 estimated Class Members makes a claim for 20 units (the maximum claim that can be made without a proof of purchase). Of course, this would mean that claims are being made (at

---

[5] Consumer Financial Protection Bureau, *Arbitration Study* (March 2015), *avail. at* https://files.consumerfinance.gov/f/201503_cfpb_arbitration-study-report-to-congress-2015.pdf, at 17.

[6] This number is arrived at by dividing Defendant's estimate of the number of wipes sold during the Class Period by Defendant's estimate of the number of Class Members.

[7] The Settlement Agreement provides that Notice will begin within 30 days of the Preliminary Approval Order (which, in this case, was April 4, 2018). ECF No. 169-2 at 12; *see also* ECF No. 170.

[8] As noted through the Fee Brief, "claims" as used by Class Counsel refers to the number of units for which Class Members seek compensation, not the number of Class Members making claims. *See, e.g.,* ECF No. 172 at 18 (discussing a "cap of 20 claims" per Class Member without Proof of Purchase).

a 100 percent participation rate) for 10,774,200 units, nearly *double* those sold during the Class Period. Class Counsel has provided no basis for this Court to assume that the vast majority of Target customers would commit perjury without batting an eye. The fact that Class Counsel, in attempting to value the Settlement, is reduced to slandering their own clients speaks volumes as to their intent to hide the *true* Settlement value from this Court.

Again, this Court should not (and according to precedent, *cannot*) evaluate either the Settlement or the Fee Application until it has enough information to make a true valuation of what Class Members may *actually* receive under the Settlement. Class Counsel and Defendant worked together to structure the Settlement in such a way as to shield this information from the Court.

### E. Class Members have not been given a Reasonable Notice of Plaintiff's Fee Application; nor the Reasonable Opportunity to Object

As noted in the Advisory Committee Notes to Rule 23, "notice to class members about class counsel's fee motion would ordinarily accompany the notice to the class about the settlement proposal itself." Fed. R. Civ. P. 23 Adv. Cmte. Notes, Subdivision (h). That did not occur here. Nor was the fee motion *ever provided or even made accessible* to Class Members. While the undersigned is an attorney with access to the Court's CM/ECF system (and was able to access the fee application), the same was not available to the vast majority of Class Members. As of the date of this Objection, the Attorney Fee Brief was ***still not on the settlement website***, depriving Class Members any real opportunity to analyze and object to Class Counsel's absurd fee request. Settlement Website, http://www.upandupwipessettlement.com/ (attached hereto as Exhibit A).

### F. The Settlement Website Contains False Information and Omissions which Have the Effect of Suppressing the Right to Object

Tellingly, the settlement website landing page—the first and most important communication to Class Members regarding the settlement[9]—contains glaring omissions and misrepresentations clearly aimed at minimizing Class Member objections. Under "Important Dates," the Website provides:

IMPORTANT DATES:
- Deadline for returning Proof of Claim: September 7, 2018
- Deadline for requesting exclusion: July 9, 2018
- Deadline for requesting exclusion: July 9, 2018
- Deadline for submitting Fee and Expense Application: June 23, 2018
- Deadline for submitting notice of intention to appear at Hearing on Final Approval of Settlement: June 26, 2018
- Hearing on Final Approval of Settlement: August 7, 2018 at 9:00 a.m.

Ex. A. The Settlement landing page's failure to provide any date to object to either the settlement or the fee application is striking. Indeed, nothing on the landing page even suggests that a Class Member has the *ability* to object. The omission of this date from the Settlement Website is more evidence of Class Counsel's bad faith.

### G. The $10,000 Incentive Award is Plainly Excessive

A $10,000 incentive award in a case where the maximum recovery any Class Member will likely receive $27 is plainly excessive. Indeed, under Plaintiff counsel's own analysis (assuming a *valid* claims rate of 25%), this amount represents one-fourth of the amount currently owed to the entire Class.

---

[9] *See* Finnegan Decl. at ¶¶ 27-28.

9

### III. OBJECTION PREREQUISITES

The following information is provided as prerequisites to object, as set forth in the Class Notice. The undersigned sent timely copies of this signed objection to Stuart E. Scott and Karl A. Bekeny (see certificate of service, *infra*).

(i) **the case name and case number of this Action**

*Meta v. Target Corp., et al.*, No. 4:14-cv-0832 (N.D. Ohio).

(ii) **the specific reasons for your objection(s), as well as a detailed statement of the factual and legal reasons you have for each objection;**

*See "Law and Argument," supra.*

(iii) **any evidence you may present at the Final Settlement Hearing in support of your objection(s), including the names and addresses of witnesses and a summary of their proposed testimony, and copies of any written evidence;**

*At this time, none.*

(iv) **the name and address of the lawyer(s), if any, who are representing you in making the objection or who may be entitled to compensation in connection with your objection;**

The undersigned is a Class Member as well as an attorney.

(v) **documents or testimony sufficient to establish that you are a member of the Class;**

The undersigned attests that he purchased the 'Buckeye' Up & Up wipes during the Class Period.

(vi) **a detailed list of any other objections you or your counsel have submitted to any class action in any state or federal court in the United States in the previous five years (or affirmatively stating that no such prior objection has been made);**

The undersigned has objected to four (4) settlements in the last five years. In each instance, he was a *class member who received direct notice* rather than an attorney representing an objecting class member. These specific cases are provided below:

- *In re: Midland Credit Management, Inc. Telephone Consumer Protection Litigation*, No. 11-2286 (S.D. Cal.);

- *Michael Wilkins et al. v. HSBC Bank Nevada, N.A., et al.*, No. 15-1641 (7th Cir.);

- *Larry Arnett et al v. Bank of America, N.A.*, No. 14-35861 (9th Cir.) (*see also Rose v. Bank of America, et al.*, No. 11-2390 (N.D. Cal.); and

- *In re: Toyota Motor Corp.*, No. 13-56499 (9th Cir.).

(vii) **your full name, address, telephone number, and signature, and, if an attorney is representing you with the objection, the signature of your attorney; and**

*See Signature Line, infra.*

(iv) **whether you and/or your counsel intend to appear at the Hearing.**

At this time, the undersigned does not intend to appear at the Final Approval hearing.

## IV. CONCLUSION

For all of the aforementioned reasons, the Court should deny both Final Approval and Class Counsel's Fee Application.

DATE: July 3, 2018                                    Respectfully,

*/s/ Erich Neumann*
Erich Neumann
Attorney and Objector / Class Member
Erich B. Neumann, P.L.
407 Lincoln Road, Suite 2C
Miami Beach, FL 33139
Phone: 305.735.2404
FAX: 305.735.2651
ebn@ebnlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that this Objection was mailed to the following on July 3, 2018:

Clerk of Courts
Carl B. Stokes U.S. Court House
801 West Superior Avenue
Cleveland, Ohio 44113

Stuart E. Scott
Spangenberg, Shibley & Liber LLP
1001 Lakeside Avenue East,
Suite 1700
Cleveland, Ohio 44114

Karl A. Bekeny
Tucker Ellis LLP
950 Main Avenue,
Suite 1100
Cleveland, Ohio 44113