UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER META, On Behalf Of Himself And All Others Similarly Situated | ) ) | CASE NO. 4:14-CV-0832 |
| | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| Plaintiff | ) | |
| | ) | **PLAINTIFF'S UNOPPOSED** |
| vs. | ) | **MOTION FOR FINAL APPROVAL** |
| | ) | **OF CLASS SETTLEMENT, AND** |
| TARGET CORPORATION, et al. | ) | **RESPONSE TO OBJECTIONS** |
| | ) | |
| Defendants | ) | |
| | ) | |

Plaintiff hereby respectfully moves the Court, pursuant to the Settlement Agreement in this matter (Dkt. No. 169-2) and the Court's order granting Preliminary Approval of the Settlement Agreement (Dkt. No. 170; *see also* Dkt. No. 169-2 at 60-67), for an order:

(1)    Awarding to Class Counsel a combined total of $1.615 million in (a) attorneys' fees and (b) reimbursement for costs and expenditures in this Action; and

(2)    Awarding to Plaintiff $10,000 as an Incentive Award in recognition of his time and effort spent as the class representative.

A proposed order related to this motion and Plaintiff's Motion for Class Representative Award and Attorneys' Fees and Costs (Dkt. 172) is submitted herewith.

This Motion is based on Federal Rule of Civil Procedure 23, this Motion, the supporting Memorandum of Points and Authorities, the Declarations of L. Stephens Tilghman ("Tilghman Decl."), Jeanne C. Finegan ("Finegan Decl."), and James Prutsman ("Prutsman Decl."), the pleadings and papers on file in this action, and any other matter of which this Court may take judicial notice.

Dated:  July 27, 2018                     /s/ Hassan A. Zavareei
                                          HASSAN A. ZAVAREEI (pro hac vice)
                                          JONATHAN K. TYCKO (pro hac vice)
                                          ANDREW J. SILVER (pro hac vice)
                                          **TYCKO & ZAVAREEI LLP**
                                          1828 L Street, N.W., Suite 1000
                                          Washington, D.C. 20036
                                          (202) 973-0900
                                          (202) 973-0950 (FAX)
                                          jtycko@tzlegal.com
                                          hzavareei@tzlegal.com
                                          asilver@tzlegal.com

                                          DENNIS R. LANSDOWNE (0026036)
                                          STUART E. SCOTT  (0064834)
                                          **SPANGENBERG SHIBLEY & LIBER LLP**
                                          1001 Lakeside Avenue East, Suite 1700
                                          Cleveland, OH  44114
                                          (216) 696-3232
                                          (216) 696-3924 (FAX)
                                          dlansdowne@spanglaw.com
                                          sscott@spanglaw.com
                                          dfrech@spanglaw.com

                                          *Attorneys for Plaintiff Christopher Meta and the Class*

# TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................................................1

II. BACKGROUND..................................................................................................................2

   A.   The Litigation..................................................................................................................2

      1.   Complaint .................................................................................................................2

      2.   Motion to Dismiss ...................................................................................................2

      3.   Discovery..................................................................................................................3

      4.   Summary Judgment...................................................................................................3

      5.   Class Certification ...................................................................................................3

      6.   Settlement Negotiations ...........................................................................................4

   B.   The Settlement Terms ....................................................................................................4

   C.   Preliminary Approval and Class Notice ........................................................................6

III. CERTIFICATION OF THE SETTLEMENT CLASS REMAINS PROPER............................9

IV. THE SETTLEMENT WARRANTS FINAL APPROVAL ......................................................10

   A.   Legal Standard..............................................................................................................10

   B.   The Settlement Satisfies the Standards Governing Approval of Class Settlements .................11

      1.   The Likelihood of Success Balanced Against the Amount and Form of Relief Offered by the Proposed Settlement Weighs in Favor of Approval ...................................................................11

      2.   The Complexity, Expense, and Likely Duration of Litigation Weigh in Favor of Approving the Settlement ......................................................................................................12

      3.   The Stage of Proceedings and Amount of Discovery Completed Weigh in Favor of Approving the Settlement................................................................................................13

      4.   Judgment of Experienced Class Counsel Weighs in Favor of Approving Settlement ........14

      5.   No Risk of Fraud or Collusion Exists........................................................................16

      6.   The Public Interest Weighs in Favor of Approving the Settlement.................................17

      7.   The Reaction of the Class Favors Final Approval .......................................................18

V. THE OBJECTIONS ARE WITHOUT MERIT AND SHOULD BE OVERRULED .............20

   A.   Sheila Ference (Dkt. 173) ...........................................................................................21

      1.   Ference Makes Generalized Objections Disconnected from Facts.................................21

      2.   Ference Is Incorrect That the Settlement is a "Coupon Settlement," But Regardless, Attorneys' Fees May Be Calculated Using the Lodestar Method.................................21

      3.   Ference Makes Multiple Incorrect, Unsupported Arguments Regarding the Attorneys' Fee Award......................................................................................................25

ii

4.      Ference's Claims Regarding Collusion and the Incentive Award Are Unsupported ............26

B.      Erich Neumann (Dkt. 174) .................................................................................................27

1.      Neumann's Criticisms of the Class Definition Are Unfounded ...............................28

2.      Neumann Incorrectly Claims That Knowledge of the Amounts Claimed By the Class Are Necessary for a Lodestar-Based Award .......................................................................29

3.      Neumann's Factual Claims About the Settlement Website Are Incorrect and, in Any Event, Do Not Prevent Final Approval ....................................................................................30

4.      Neumann's Claims Regarding the Incentive Award Are Unsupported ...................32

VI. CONCLUSION ....................................................................................................................32

**CERTIFICATE OF SERVICE** ...............................................................................................34

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*HP Printer Litig.*,
   716 F.3d at 1179 ............................................................................................ 23, 25

*Arnett v. Bank of America*,
   *N.A.*, No. 3:11-cv-1362-SI, 2014 WL 4672458 (D. Ore. Sept. 18, 2014) .................................. 27, 32

*Aro Corp. v. Allied Witan Co.*,
   531 F.2d 1368 (6th Cir. 1976) ........................................................................................18

*Bailey v. AK Steel Corp*,
   No: 1:06-cv-468, 2008 WL 495539 (S.D. Ohio Feb. 21, 2008) ..........................................................20

*Bell v. DuPont Dow Elastomers*,
   *LLC*, 640 F. Supp. 2d 890 (W.D. Ky. 2009)........................................................................18

*Bert v. AK Steel Corp.*,
   No. 1:02-CV-467, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ........................................................13

*Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*,
   No. 08-0309, 2011 WL 1790603 (W.D. Mo. May 10, 2011) ..........................................................25

*Blessing v. Sirius XM Radio, Inc.*,
   507 F. App'x 1 (2d Cir. 2012) ........................................................................................25

*Brent v. Midland Funding, LLC*,
   No. 3:11 CV 1332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011).................................. 10, 12, 18, 20

*Bronson v. Board of Educ.*,
   604 F.Supp. 68 (S.D. Ohio 1984) ........................................................................................10

*Browning v. Yahoo! Inc.*,
   2007 WL 4105971 (N.D. Cal. Nov. 16, 2007).........................................................................23

*Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) ........................................................................................20

*Chalkin v. Lululemon USA Inc.*,
   No. 3:12-CV-02481-GPC-MDD, 2014 WL 1245461 (S.D. Cal. Mar. 17, 2014)................................22

*Dick v. Sprint Commc'ns Co. L.P.*,
   297 F.R.D. 283 (W.D. Ky. 2014)........................................................................................21

*Eubank v. Pella Corp.,*
    753 F.3d 718 (7th Cir. 2014) ........................................................................................23

*Foos c. Ann, Inc.,* No. 11cv2794,
    2013 WL 5352969 (S.D. Cal. Sept. 24, 2013) ............................................. 22, 23

*Garner v. State Farm Mut. Auto: Ins. Co.,*
    2010 WL 1687832 (N.D, Cal. 2010) .........................................................................18

*Gascho v. Global Fitness Holdings, LLC,*
    822 F.3d 269 (6th Cir. 2016) .................................................................................passim

*Geier v. Alexander,*
    801 F.2d 799 (6th Cir. 1986) .....................................................................................20

*Gemelas v. Dannon Co., Inc.,*
    No. 1:08 CV 238, 2010 WL 3703811 (N.D. Ohio Aug. 31, 2010) .......................28

*Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995)..........................................................................................23

*Gentrup v. Renovo Servs., LLC,*
    No. 1:07CV430, 2011 WL 2532922 (S.D. Ohio June 24, 2011)....................11, 15

*Hainey v. Parrott,*
    617 F. Supp. 2d 668 (S.D. Ohio 2007) .....................................................................20

*Hyland v. HomeServices of Am., Inc.,*
    No. 3:05-CV-612-R, 2012 WL 1575310 (W.D. Ky. May 3, 2012).......................19

*Gen. Tire & Rubber Co. Sec. Litig.,*
    726 F.2d 1075 (6th Cir. 1984) ............................................................................ 9, 11

*Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.,*
    497 F.3d 615 (6th Cir. 2007) .......................................................................................8

*Inter-Op Hip Prosthesis Liability Litig.,*
    204 F.R.D. 330 (N.D. Ohio 2001) .....................................................................11, 17

*John T. Galloway v. The Kansas City Landsmen, LLC,*
    833 F.3d 969 (8th Cir. 2016) .....................................................................................25

*Kritzer v. Safelite Solutions, LLC,*
    No. 2:10-CV-0729, 2012 WL 1945144 (S.D. Ohio May 30, 2012) ......................15

*Levell, v. Monsanto Research Corp.,*
    191 F.R.D. 543 (S.D. Ohio 2000)........................................................................11, 21

*Lonardo v. Travelers Indem. Co.,*
    706 F. Supp. 2d 766 (N.D. Ohio 2010) ................................................................ 17, 19

*Moulton v. U.S. Steel Corp.,*
    581 F.3d 344 (6th Cir. 2009) ....................................................................................17

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950) ..................................................................................................8

*Nationwide Fin. Servs. Litig.,*
    No. 2:08-CV-00249, 2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) ....................13

*Nieberding v. Barrette Outdoor Living, Inc.,*
    129 F. Supp. 3d 1236 (D. Kan. 2015) ......................................................................32

*Seebrook v. Children's Place Retail Stores, Inc.,*
    No. C 11-837-CW, 2013 WL 6326487 (N.D. Cal. Dec. 4, 2013) ...........................22

*Office & Prof'l Employees Int'l Union v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.,*
    311 F.R.D. 447 (E.D. Mich. 2015) ..........................................................................11

*Olden v. Gardner,*
    294 Fed. Appx. 210 (6th Cir. 2008) .........................................................................19

*Online DVD–Rental Antitrust Litig.,*
    779 F.3d 934 (9th Cir. 2015) ....................................................................................19

*Perez v. Asurion Corp.,*
    No. 06-20734-CIV, 2007 WL 2591180 (S.D. Fla. Aug. 8, 2007).............................25

*Pollard v. Remington Arms Co., LLC,*
    320 F.R.D. 198 (W.D. Mo. 2017) ............................................................................19

*Processed Egg Antitrust Litig.,*
    284 F.R.D. 278 (E.D. Pa. 2012)................................................................................32

*Rawlings v. Prudential-Bache Properties, Inc.,*
    9 F.3d 513 (6th Cir. 1993).........................................................................................29

*Smith v. Ohio Dep't of Rehabilitation & Correction,*
    No. 2:08-CV-15, 2012 WL 1440254 (S.D. Ohio Apr. 26, 2012) ............................19

*Spann v. J.C. Penney Corp.,*
    211 F. Supp. 3d 1244 (C.D. Cal. 2016)....................................................................19

*Thacker v. Chesapeake Appalachia, L.L.C.,*
    695 F. Supp. 2d 521 (E.D. Ky. 2010) ................................................................ 15, 16

*Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
    No. 8:10ML 02151 (JVS) (FMOx), 2013 WL 3224585 (C.D. Cal. June 17, 2013) ..........................27

*True v. American Hondo Co.*,
    749 F. Supp. 2d 1052 (C.D. Cal. 2010) ...............................................................................23

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ............................................................................... 10, 18

*UAW v. Gen. Motors Corp.*,
    No. 05-CV-73991-DT, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006) .........................15, 16

*Vassalle v. Midland Funding, LLC*,
    No. 3:11-cv-00096, 2014 WL 5162380 (N.D. Ohio. Oct. 14, 2014) ...............................8, 9

*Volz v. Coca Cola Co.*,
    No. 1:10cv879, 2015 WL 13648577 (S.D. Ohio Mar. 30, 2015) .......................................21

*Whirlpool Corp. Front–loading Washer Products Liability Litigation*,
    No. 1:08-WP-65000, 2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ....................12, 13, 19

*Wilkins v. HSBC Bank Nevada*,
    *N.A.*, No. 14 C 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) .................................27, 32

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ....................................................................... 10, 16, 18, 20

## Statutes

28 U.S.C. § 1712 ...............................................................................................23, 24

8 U.S.C. § 1712 ......................................................................................................22

Magnuson-Moss Warranty Act ("MMWA") ...............................................................2

Ohio Consumer Sales Practices Act ("OCSPA") ..........................................................2

Ohio Products Liability Act ("OPLA") ........................................................................2

## Other Authorities

Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed. 2002) ....................12

Newberg on Class Actions § 13:50 (5th ed.) ...............................................................13, 20, 25

*The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*,
    57 Vand. L. Rev. 1529 (2004) ...............................................................................20

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................3, 4, 8, 9, 10, 23, 31

# I.
## INTRODUCTION

Plaintiff respectfully submits this Unopposed Motion for Final Approval of Class Action Settlement that has been reached with Defendants Target Corporation ("Target") and Nice-Pak Products, Inc. ("Nice-Pak") (collectively, "Defendants"). For the reasons set forth below, the proposed Settlement Agreement is fair, reasonable and adequate and should be granted.

The proposed settlement ("Settlement") is the product of protracted, arm's-length negotiations between Class Counsel[1] and Defendants, all of whom have significant experience in litigating complex class actions. The Settlement provides substantial and meaningful relief to Class Members, by providing the opportunity for them to receive either (a) cash-value Target Gift cards (with a value of up to $27 without Proof of Purchase) or (b) a coupon for current-formulation Up & Up wipes manufactured by Nice-Pak, for each unit of Up & Up flushable toddler wipes purchased during the Class Period. Target and Nice-Pak have also agreed to pay all costs of notice and claims administration, as well as attorneys' fees and costs and an incentive award to Plaintiff, all in addition to the benefits to Class Members. In exchange for the Settlement benefits, Plaintiff and the Class will dismiss all claims against Defendants and will provide Defendants with a release of the settled claims. Therefore, for the reasons discussed herein, Plaintiff requests that the Court grant final approval of the Settlement, certify the Settlement Class, reject the objections, and grant Plaintiff's Motion for Class Representative Incentive Award, Attorneys' Fees, and Expenses (Dkt. 172 ("Fee Petition")).

---

[1] Unless otherwise stated herein, all capitalized terms carry the same definition as set forth in the Settlement.

## II.
## BACKGROUND

**A.      The Litigation**

**1.      Complaint**

On April 18, 2014, Plaintiff filed his complaint. He alleged that the labeling and marketing of Up & Up wipes as "flushable" was false and misleading and asserted claims for tortious breach of warranty; negligent failure to warn; negligent design; breach of the implied warranty of merchantability; breach of the implied warranty of fitness for a particular purpose; violations of the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Stat. Ann. §§ 1345.01, *et seq*; and for unjust enrichment. Plaintiff sought to pursue these claims on behalf of himself and all purchasers of Up & Up wipes in the state of Ohio. Plaintiff alleged that the labeling caused people to purchase the Up & Up wipes who would not otherwise have done so, and that Plaintiff and members of the class suffered injuries and damages as a result of the misleading marketing and poor product design. Plaintiff also sought to enjoin the wrongful conduct alleged in the complaint. On July 3, 2014, Plaintiff amended his complaint to remove claims brought under OCSPA and add claims for negligent misrepresentation; fraud; violation of the Ohio Products Liability Act ("OPLA"), Ohio Rev. Code Ann. §§ 2307.75, 2307.76, and 2307.77; and violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*

**2.      Motion to Dismiss**

On September 4, 2014, Defendants filed motions to partially dismiss Plaintiff's Amended Complaint. (Dkt. Nos. 17, 19.) After briefing, the Court dismissed Plaintiff's claims for tortious breach of warranty, negligent design, and negligent failure to warn, finding that those claims were abrogated by OPLA. The court additionally found that Plaintiff failed to state a claim for negligent misrepresentation. The Court otherwise denied the motion (Dkt. No. 33.)

2

3.      **Discovery**

Class Counsel and Defendant have vigorously litigated this action through (a) far-reaching written discovery; (b) vast production and review of electronic data and other paper documents, totaling almost 200,000 documents produced by Defendants; (c) briefing related to multiple motions to compel discovery; (d) five depositions of Defendants' employees, former employees, and corporate representatives; (e) a deposition of Plaintiff; (f) depositions of four non-party witnesses; and (f) discovery and depositions related to eight expert witnesses. (Dkt. 172-1 ¶¶ 8-12; Dkt. 172-2 ¶¶ 8-12.)

4.      **Summary Judgment**

On April 18, 2016, Defendants' moved for summary judgment on the claims remaining in the case. (Dkt. Nos. 111, 112.) On September 12, 2016, after significant briefing, the Court partially granted the motions. (Dkt. No. 146.) The Court dismissed the unjust enrichment claim, Plaintiff's three OPLA claims, and the fraud claim against Target. Plaintiff's claims against Target for breach of implied warranties and violation of MMWA, and against Nice-Pak for fraud were all found to be viable for trial. (*Id.*) In its summary judgment ruling, the Court denied Defendants' motion to strike Plaintiff's economic expert Colin Weir and found that Mr. Weir offered sufficient support to allow for the use of his damages theories, including a price premium damages theory. (*Id.* at 13-14.)

5.      **Class Certification**

On April 18, 2016, simultaneous to Defendants' summary judgment motions, Plaintiff moved for class certification. (Dkt. Nos. 113, 114). Defendants opposed the motion, arguing that, among other things, Plaintiff's experience was atypical of the class; injunctive relief under Fed. R. Civ. P. 23(b)(2) was unavailable; and common questions of law and fact did not exist to satisfy the predominance requirement. (Dkt. No. 125.)

On September 20, 2016, having previously partially granted Defendants' summary judgment

motions, the Court granted Plaintiff's class certification motion, but limited the class definition to purchasers of the Nice-Pak "Buckeye" formulation of Up & Up wipes from April 18, 2010, through the discontinuation of that product's formulation in 2014. (Dkt. No. 147.) The Court also refused to certify an injunctive relief class under Fed. R. Civ. P. 23(b)(2), and it did not certify fraud claims.

The parties commenced settlement discussions not long after class certification, and agreed to proceed to mediation.

### 6. Settlement Negotiations

The proposed Settlement was reached following hard-fought litigation and several rounds of arms-length settlement discussions between capable counsel. In addition to many direct discussions, the parties attended a day-long mediation before respected neutral Michael Ungar on February 2, 2017, in Cleveland, Ohio. The parties made significant progress in mediation before Mr. Ungar, and engaged in follow-up settlement conversations in the ensuring months. After reaching agreement on many, but not all, settlement terms, the parties sought the Court's assistance with settlement talks, and a settlement conference before this Court was held on November 15, 2017. Finally, after appearing before the Court for a Settlement Conference and continuing settlement discussions afterward, the parties reached a Memorandum of Understanding on December 13, 2017. The parties finalized the proposed Settlement Agreement on March 28, 2018. (Dkt. 169-3 ¶ 4.)

### B. The Settlement Terms

The terms of the Settlement are discussed in more detail in Plaintiff's Motion for Preliminary Approval (Dkt. No. 169-1 at 5-9), but Plaintiff summarizes them herein.

Class Members can file a claim for either a (a) $1.35 cash-value Target gift card or (b) a coupon for a unit of current formulation Up & Up wipes manufactured by Nice-Pak, for each unit of the Products purchased during the Class Period (i.e., between April 18, 2010 and October 31, 2014). (*See* Dkt. No. 169-2, ¶ 9.g.) There is no cap on the total amount to be paid to any class

4

member for claimed purchases that are corroborated by Proof of Purchase, however, Class Members are entitled to be paid for up to 20 units for claimed purchases that are not corroborated by Proof of Purchase. (*Id.* ¶ 9.h.) This amounts to Class Members being eligible for up to $27 in cash-value Target gift cards, or coupons for 20 packages of Up & Up wipes, without Proof of Purchase.[2]

Because there is neither a cap on the number of claims Class Members can make nor the amount Defendants will have to pay in the Settlement, it is impossible to identify the total amount being made available to Class Members via the Settlement. However, a conservative estimate of the amount made available an be made by multiplying the total number of units of Up & Up wipes sold during the Class Period (estimated by Defendants to be 5,560,645, *see* Dkt. No. 169-4 ¶ 15) by the $1.35 cash-value gift card available per unit. This amounts to over $7.5 million.[3]

In addition to the direct settlement benefits described above, Target began selling the subsequent "Sigma" formulation of Up & Up wipes in 2014 after the "Buckeye" formulation was discontinued (Dkt. No. 169-2, at 2, 4), and this case was a motivating factor for Nice-Pak to increase its involvement in consumer education initiatives regarding what products should and should not be flushed. (*Id.* at 3.) Additionally, Defendants also agreed to pay for the reasonable costs of notice and claims administration, and a $10,000 Incentive Award to Plaintiff, both to be paid separately from and in addition to the amounts paid to Class Members. (*Id.* ¶¶ 11.b, 12.) Further, Defendants agreed not to oppose a request for attorneys' fees and expenses of up to $1.615 million, likewise to be paid separately from and in addition to the amounts paid to Class Members. (*Id.* ¶ 11.a.) The other terms

---

[2] Target has informed counsel for Plaintiff that the $1.35 gift card amount is roughly equal to the current price of one 48-count unit of Up & Up wipes (Dkt. No. 169-3 at 4-5), so the value to Class Members is roughly equal regardless of whether they elect to receive gift card or coupon compensation.
[3] Objector Erich Neumann's objection to this calculation is discussed in Section V.B.2, *infra*.

of the Settlement are in no way contingent on Class Counsel's fee request.

**C.  Preliminary Approval and Class Notice**

On April 5, 2018, the Court granted preliminary approval of the proposed Settlement. (Dkt. 170.) Pursuant to the Court's Order, notice was disseminated in a manner consistent with what was set forth in the Settlement. (*Id.*) Separate and apart from the payments being made by Defendants described in Section II.B, *supra*, Defendants are paying all costs and expenses incurred in providing notice of the Settlement to the members of the Settlement Class, including but not limited to fees related to retaining (i) Heffler Claims Group to notify potential Class Members by utilizing cross-device targeting on desktop and mobile to Target consumers with children ages six (6) to twelve (12) or those who follow Target's Facebook page, and a press release via PR Newswire and (ii) Tilghman & Co., P.C. to coordinate direct notice to certain Target customers who purchased Up & Up flushable toddler wipes from January 1, 2013 through October 31, 2014, maintain the Settlement Website, and otherwise administer the Settlement. Tilghman & Co., P.C. established a settlement website, which contained the settlement notices, a contact information page that includes address and telephone numbers for the claim administrator and the parties, the settlement agreement, the signed order of preliminary approval, online and printable versions of the claim form and the opt out forms, answers to frequently asked questions, Plaintiffs' counsel's application for attorneys' fees, costs, expenses and incentive awards, and this Motion. Tilghman & Co. is also operating a toll-free telephone number which Class Members can contact with requests for information about the settlement. Class Members who request copies of the Long Form Notice are being sent copies by their choice of U.S. mail or email.

Using nationwide sales data, Target's customer databases, and Plaintiff's testimony regarding purchasing patterns, Defendants estimated that the Class consists of approximately 538,710 individuals. (Dkt. 169-4, ¶ 15.) To reach those individuals, the claim administrators worked with

Target to send direct notice to approximately 1,192,738 individuals who purchased qualifying products and similar flushable wipes products during the class period. (Tilghman Decl., ¶ 6.) Approximately 75% (875,222) of the notices were sent via e-mail, and the remaining 25% (317,516) of notices were sent via postcards to individuals for whom Target only has physical addresses. (*Id.* ¶ 8-9.) For 65,500 emails that bounced or were undeliverable, the claim administrator sent an additional 65,322 postcard notices. (*Id.* ¶ 10.) For postcards that were returned as undeliverable, the claim administrator utilized both the United States Postal Services (USPS) National Change of Address (NCOA) database and LexisNexis to obtain updated addresses to re-mail notices on an ongoing basis. (*Id.* ¶¶ 7, 11.) Defendants estimate that direct notices were sent to at least 53% of known Class members. (Dkt. 169-4, ¶ 15.) Class members who were not reached through direct notices were notified via supplemental online notices that were published for a total of over 49 million impressions on various targeted websites, including Facebook and Instagram. (Finegan Decl., ¶¶ 14-15.) Through the combined direct and digital notice efforts, it is estimated that 75 percent of Class Members were reached, on an average of 2.8 times. (*Id.* ¶ 18) Additionally, a Press Release was issued through the PR Newswire network and generated over 227 news mentions. (*Id.* ¶¶ 16-17.)

The claims period is continuing to run through September 7, 2018. As of July 20, 2018, Tilghman & Co. had received approximately 170,542 claim submissions. (Tilghman Decl. ¶ 18) Although the claim administrators have flagged a number of claim form submissions as potentially duplicative or otherwise invalid, no less than 36,237 of these claims appear to be valid at this time. (Prutsman Decl. ¶ 9.) Even the lower claim number would amount to a claim rate of 6.7% of the estimated number of Class members, which, as discussed in Section IV.B.7, *infra*, is an exceptional claims rate for a claims-made settlement such as this one, especially considering that over a month still remains in the claims period. Regardless, determinations regarding the validity of the claims are not to be made at this time. Rather, within 60 days after the Claims Deadline (by November 6,

2018), the claims administrator will notify the Parties of the population of claims that it believes to be either untimely or otherwise ineligible for compensation. (Dkt. 169-2, ¶¶ 9d-9e.) At that time, the Parties will have an additional 30 days to notify one another of any objections to any of the initial claims determinations. (*Id.*) If the parties cannot resolve any objections within 30 days of presenting objections to one another, the unresolved objections will be submitted to the Court. (*Id.*)

The deadlines for objecting to the Settlement or requesting exclusion from the Class were on July 9, 2018. Only 2 individuals have requested exclusion from the Class, and only two Class members have filed objections. (Tilghman Decl., ¶¶ 16-17.)[4] Those objections are addressed in Section V, *infra*.

The notice plan implemented in this case was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 629-30 (6th Cir. 2007) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). This plan unquestionably satisfied Rule 23. First, as discussed above, it provided for direct notice to approximately 53% of Class members which Target was able to identify. *See* Fed. R. Civ. P. 23(c)(2) (explaining that individual notice should be provided to all members who can be identified through reasonable effort). The notice plan also included online advertising notice and a press release, which, when supplementing the direct notice, amounted to a total class reach of approximately 75%. Finegan Decl. ¶ 18); *see Vassalle v. Midland Funding, LLC*, No. 3:11-cv-00096, 2014 WL 5162380, at *11 (N.D. Ohio. Oct. 14, 2014) (approving notice where "notice was disseminated via individual mailing to all Class Members identified in the customer data files of [the defendant], and also by publication").

---

[4] A supplemental declaration identifying the two individuals who have requested exclusion will be filed with the Court in advance of the Fairness Hearing.

The Settlement Notices themselves also satisfied due process and Rule 23. (*See* Dkt. 169-2 at 46-57 (email notice, long-form notice, and postcard notice)); *see also In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (approving notice that "described the terms of the settlement, the reasons for [class representatives' decision to settle], the legal effect of the settlement and the rights of the [class members] to voice their objections"). The Notice here

> reasonably apprises the Class Members of the nature and pendency of the Class Action and the Class claims; of all the material elements of the proposed settlement, including, but not limited to, the definition of the Class; the relief available under the proposed settlement and steps necessary to obtain the relief; the right, time and manner to exclude themselves from, or object to, the settlement; of the identity of Class Counsel and of information necessary to communicate with Class Counsel; that additional information is available from the Settlement Administrator; . . . Class Counsel's intent to apply for a fee award . . .; and of the right to appear at the Fairness Hearing, including through an attorney.

*Vassalle*, 2014 WL 5162380, at *11. Additionally, the Notice "informs class members that they can receive more information from the settlement website," where they "can view summary information about the . . . Settlement, and can access the complete settlement agreement and other court documents . . . ." *Id.*

### III.
### CERTIFICATION OF THE SETTLEMENT CLASS REMAINS PROPER

In its preliminary approval order, the Court determined that the Settlement Class satisfied the requirements of Rule 23(a) and 23(b)(3) and certified it for the limited purpose of this Settlement. (Dkt. 170.)[5] Notwithstanding the objection by Erich Neumann to the class definition, which is addressed in Section V.B.1, *infra*, no objector challenged class certification, and Plaintiff is not aware of any change in the law or facts that could somehow alter the Court's initial ruling. (*Cf.* Dkt. 169-1 (Memorandum in Support of Plaintiffs' Motion for Preliminary Approval) at 16-19.)

---

[5] This Court previously conducted a lengthy analysis of the class certification requisites prior to certifying an Ohio class in contested class certification proceedings in 2016.

# IV.
# THE SETTLEMENT WARRANTS FINAL APPROVAL

**A.      Legal Standard**

Before approving a class action settlement, a district court must determine whether the

settlement is "fair, reasonable, and adequate." *UAW v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir.

2007) (quoting former Fed. R. Civ. P. 23(e)(1)(C)). Courts in this Circuit generally consider seven

factors when determining if a settlement is "fair, reasonable, and adequate": "(1) the risk of fraud or

collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of

discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of

class counsel and class representatives; (6) the reaction of absent class members; and (7) the public

interest." *Gascho v. Global Fitness Holdings, LLC,* 822 F.3d 269, 276-77 (6th Cir. 2016) (citing *UAW,*

497 F.3d at 631.

The Sixth Circuit has instructed that in evaluating a settlement, the task of the court "is not

to decide whether one side is right or even whether one side has the better of these arguments. . . .

The question rather is whether the parties are using settlement to resolve a legitimate legal and

factual disagreement." *UAW,* 497 F.3d at 632. A settlement "is a compromise which has been

reached after the risks, expense, and delay of further litigation have been assessed." *Bronson v. Board of*

*Educ.*, 604 F.Supp. 68, 74 (S.D. Ohio 1984) (quoting *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir.

1983)). Thus, it is well-settled that "class counsel and the class representatives may compromise their

demand for relief in order to obtain substantial assured relief for the plaintiffs' class." *Id.*; *see also*

*Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *17 (N.D. Ohio Sept. 1,

2011) (citing authorities). Courts evaluating a proposed settlement take care to "respect the parties'

compromise and may not substitute his or her judgment for that of the litigants and their counsel."

*Office & Prof'l Employees Int'l Union v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of*

*Am.*, 311 F.R.D. 447, 456 (E.D. Mich. 2015) (citation omitted). Thus, a court is not required to determine if the settlement is the fairest possible resolution of the claims of each plaintiff, but, rather, whether the settlement, taken as a whole is fair, adequate, and reasonable. *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011). Indeed, a court should not "withhold approval simply because the benefits accrued from the [agreement] are not what a successful plaintiff would have received in a fully litigated case." *Levell, v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000).

Applying these factors and standards unquestionably indicates that the Settlement in this case is fair, reasonable, and adequate. Thus, final approval is appropriate.

**B.      The Settlement Satisfies the Standards Governing Approval of Class Settlements**

**1.      The Likelihood of Success Balanced Against the Amount and Form of Relief Offered by the Proposed Settlement Weighs in Favor of Approval**

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). The risks of establishing liability and damages are relevant factors to consider when determining whether a class action settlement is fair, adequate, and reasonable. *See In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. 330, 351 (N.D. Ohio 2001). Although Class Counsel believes that Plaintiff's case is a strong one, from the outset of this case, Defendants have maintained that Plaintiff's claims lack merit. And while the Court denied, in part, Defendants' summary judgment motions, Plaintiff and the members of the Class still face considerable risks in achieving a judgment in their favor. First, Plaintiff would have been required to prove that the Up & Up wipes were, in fact, manufactured in such a way that they would not be able to live up to "flushability" claims, and that the labeling was likely to deceive or confuse consumers. Additionally, Plaintiff would have had to establish a price premium that consumers paid for the Up & Up wipes. Defendant disputed that

11

their products did not live up to "flushability" claims and also claimed that Plaintiff would not be able to establish a price premium. While Plaintiff disputes this and has adduced evidence to undermine Defendant's arguments, it was unclear how the arguments would be resolved at trial. Thus, there was a substantial risk that class members would recover only nominal damages, or nothing at all. Finally, any judgment in Plaintiff's favor would likely be appealed. Thus, even in the best case, it could take years to get relief for class members. (*See* Dkt. 169-3 ¶ 8.)

By contrast, the Settlement offers immediate, significant, and substantial relief to the Class. Under any analysis, the relief provided by this Settlement is fair and reasonable, especially when compared against the anticipated cost, duration, and uncertain outcome of continued litigation. In making this determination, "it is enough if the evidence shows that: (1) the parties are locked in a real dispute regarding [the underlying claims]; and (2) the merits of the Class's case are not so overwhelming that continued litigation is a vastly better option than settlement." *In re: Whirlpool Corp. Front–loading Washer Products Liability Litigation*, No. 1:08-WP-65000, 2016 WL 5338012, at *11 (N.D. Ohio Sept. 23, 2016) ("*Whirlpool*"). In light of the risks discussed above, this factor favors approval of this Settlement.

### 2.  The Complexity, Expense, and Likely Duration of Litigation Weigh in Favor of Approving the Settlement

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent*, 2011 WL 3862363, at *16. "Thus, '[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id.* (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed. 2002)).

This litigation has lasted for over four years, and Class Counsel has undertaken significant efforts, including extensive motion practice and voluminous discovery. (*See* Dkt. 172-1, ¶¶ 6-19; Dkt.

12

172-2, ¶¶ 6-15.) Continued litigation would unquestionably be an involved and expensive process, as a trial on the merits would be lengthy and would involve the testimony of several expert witnesses. The uncertainty of continued litigation stands in stark contrast to the immediate and significant relief offered by this Settlement. Therefore, the Settlement provides Class members with real relief now without having to endure the risks, duration, and expense that would result absent settlement. *See Whirlpool*, 2016 WL 5338012, at *10 ("The duration, complexity, and expense of continued litigation would be onerous and overwhelming. Settlement avoids a huge consumption of resources of the parties and the Court."); *Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) (observing that the additional time and expense associated with complex case, including fact that "the additional expense of taking this case to trial would be significant . . . clearly weighs in favor of the proposed settlement").

3. **The Stage of Proceedings and Amount of Discovery Completed Weigh in Favor of Approving the Settlement**

When evaluating a proposed Settlement, the Court should also consider the stage of the case and the amount of discovery completed. This includes the amount of discovery the Parties conducted, as "the more formal discovery that occurred prior to settlement, the more likely the court is to find the settlement is substantively adequate and procedurally fair." Newberg on Class Actions § 13:50 (5th ed.); *see also In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 WL 8747486, at *5 (S.D. Ohio Aug. 19, 2009) ("To insure that Plaintiffs have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement, the stage of the proceedings and the discovery taken must be considered."). This case has been proceeding for over four years. During that time, Class Counsel has thoroughly litigated this case, including:

- Conducting legal and factual research prior to filing the Class Action Complaint and the Amended Complaint;

- Performing legal research and preparing comprehensive oppositions to Defendants' motions

13

to dismiss;

- Issuing written discovery;

- Briefing multiple motions to compel discovery;

- Obtaining production of electronic data and other paper documents, totaling almost 200,000 documents, and reviewing those documents;

- Preparing for and deposing five of Defendants' employees, former employees, and corporate representatives;

- Preparing for and defending Plaintiff's deposition;

- Preparing for and participating in depositions of four non-party witnesses, including Plaintiff's wife and in-laws;

- Conducting significant expert discovery, including taking and defending depositions, related to eight expert witnesses;

- Performing legal research to brief a comprehensive opposition to Defendants' summary judgment efforts;

- Performing legal research to compile Plaintiffs' motion to class certification, and a reply in support thereof;

- Performing legal research to compile Plaintiffs' oppositions to Defendants' three motions to exclude the testimony of three of Plaintiffs' expert witnesses;

(*See* Dkt. 172-1, ¶¶ 6-14; Dkt. 172-2, ¶¶ 6-13.) Thus, there can be little dispute that this is a case where both the legal and factual record has been sufficiently developed so as to inform that Parties' decision that the Settlement is fair and reasonable under the circumstances. *See Gascho*, 822 F.3d at 294 (affirming settlement approval where "class counsel has engaged in ample discovery and motion practice for a period of years," as distinguished from cases that settled "before conducting discovery or having an opportunity to understand the relative strengths and weaknesses of their cases"). Therefore, this factor strongly supports final approval.

### 4. Judgment of Experienced Class Counsel Weighs in Favor of Approving the Settlement

It is Class Counsel's considered opinion that the recovery from Defendant under this

14

Settlement is fair, adequate, and reasonable. (Dkt. 169-3, ¶¶ 6-10; Dkt. 172-1, ¶¶ 21-22; Dkt. 172-2, ¶ 18.) Here, it is known that the $1.35-per-unit recovery equals approximately one 48-count unit of Up & Up wipes. (Dkt. 169-3, ¶ 9.) Thus, whether Class members elect that option, or the coupon for free units of the reformulated product, either measure of recovery can be compared to a full refund per unit purchased or, in other words, a replacement of the allegedly actionable product with a unit of the improved and reformulated new product. Therefore, the recovery likely meets or exceeds that which could have been obtained at trial. Counsel for Defendants likewise support the settlement.

When "[b]oth Plaintiffs' and Defendants' counsel believe that the settlement is fair and reasonable, [that] weighs in favor of approving the settlement." *Gentrup, LLC*, 2011 WL 2532922, at *3; s*ee also Kritzer v. Safelite Solutions, LLC*, No. 2:10-CV-0729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) (deferring to the judgment of experienced trial counsel with regard to the evaluation of the strength of the case and the desirability of settlement in light of advanced stage of litigation); *Thacker v. Chesapeake Appalachia, L.L.C.,* 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010) ("[T]he informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference."); *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006) (affording "considerable weight" to the judgments of "reputable practitioners and trial counsel experienced in complex class action litigation who have adequately assessed the strengths of their respective claims and positions").

Here, Class Counsel includes experienced class action and trial attorneys. (*See* Firm Resumes submitted as Exhibits 22 and 23 to Plaintiff's Motion for Class Certification, Dkt. 114.) The Court has also previously determined that Class Counsel was qualified to represent the class. (Dkt. 140 at 9-10.) Likewise, Defendants are represented by highly competent counsel with extensive experience defending class action litigation.

Additionally, Class Counsel litigated this case through extensive discovery and dispositive

15

briefing in this matter, which inform their opinion of the strength of the Settlement. (*See* Section IV.B.4, *supra*; *see also* Dkt. 172-1, ¶¶ 6-14; Dkt. 172-2, ¶¶ 6-13.) And Class Counsel participated directly in the lengthy negotiations in this matter (overseen by a respected neutral and this Court), and it is their judgment, after carefully weighing all the evidence, that the proposed Settlement is fair, adequate, and reasonable, and is in the best interest of the Class. (Dkt. 169-3, ¶¶ 6-10; Dkt. 172-1, ¶¶ 21-22; Dkt. 172-2, ¶ 18.) Therefore, the "judgment of experienced counsel who has competently evaluated the strength of his proofs" should be given significant weight by the Court. *Williams*, 720 F.2d at 922-23.

### 5.     No Risk of Fraud or Collusion Exists

There is a "presumption that the class representatives and counsel handled their responsibilities with the independent vigor that the adversarial process demands." *UAW*, 497 F.3d at 628; *see also Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010) ("Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."). Regardless, there should be little doubt that this Settlement was reached in the absence of fraud or collusion. First, the Settlement was not finalized until after nearly four years of litigation. Among other litigation activities in this case, the parties briefed multiple motions to dismiss; exchanged significant document discovery, including almost 200,000 documents produced by Defendants; briefed multiple discovery disputes; conducting approximately 18 depositions; and briefed summary judgment motions, class certification, and motions to exclude expert witnesses. (*See* Section IV.B.4, *supra*; *see also* Dkt. 172-1, ¶¶ 6-14; Dkt. 172-2, ¶¶ 6-13.) The fact that this case was so thoroughly litigated, which included a class being certified, is indicative of the absence of collusion here. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009) (observing that "the duration and complexity of the litigation," which included four years of litigating before a settlement was reached, undermined any claims of collusion).

16

Further, the Settlement was reached only after numerous negotiations, including mediation before respected neutral Michael Unger and a settlement conference before this Court. (Dkt. 172-1, ¶ 15; Dkt. 172-2, ¶ 15.) This alone demonstrates the absence of fraud or collusion: "when a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 350-51; *Brent*, 2011 WL 3862363, at *15 ("[Mediation sessions with an independent mediator] virtually assure that the negotiations were conducted at arm's length and without collusion between the parties." (citation omitted)).

Finally, nothing about the structure of the Settlement suggests collusion. The Parties did not negotiate payment of Class Counsel's attorneys' fees until after they reached agreement on all other material terms of the Settlement. (Dkt. 169-3 ¶ 11.) Moreover, as discussed in Plaintiff's Fee Petition, Class Counsel's lodestar significantly exceeds the requested attorneys' fees (*Id.* at 10) and will continue to increase, so Class Counsel only stands to recover for a fraction of the time it expended in this matter. And, in any event, any attorneys' fee award in this matter will in no way reduce the settlement benefits being provided to Class members.

### 6.    The Public Interest Weighs in Favor of Approving the Settlement

The public interest likewise weights in favor of approving the Settlement. "Class actions are meant to serve the public interest by providing an incentive for lawyers and class representatives to litigate on behalf of a group of people whose injury is legitimate and meaningful, but whose individual damages are not substantial enough to make litigation on an individual basis worthwhile." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 782 (N.D. Ohio 2010). In filing this case, Plaintiff and Class Counsel "took on a difficult case that an individual Class Member would almost certainly never file on their own" and "obtained recovery on a class-wide basis for an alleged injury that, but for this litigation, would almost certainly have gone uncompensated." *Id.* Thus, this case fit with the very purpose of class action litigation.

17

Moreover, "the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Brent*, 2011 WL 3862363, at *12; *Bell v. DuPont Dow Elastomers, LLC*, 640 F. Supp. 2d 890, 895 (W.D. Ky. 2009) ("[C]ourts have recognized a strong public interest in favor of settlements, particularly in class action suits.") (citing *Williams*, 720 F.2d at 923); *see also UAW*, 497 F.3d at 632 (noting "the federal policy favoring settlement of class actions"); *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) ("Settlement agreements should . . . be upheld whenever equitable and policy considerations so permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to citizens whose taxes support the latter."). This Settlement unquestionably benefits the public interest, not only by providing relief to individuals who might otherwise not obtain it, but by conserving judicial resources that would otherwise be tied up during the pendency of this case. Therefore, this factor weights in favor of final approval.

### 7. The Reaction of the Class Favors Final Approval

The reactions of absent Class Members has been overwhelmingly positive. Of the estimated 538,710 Class Members, only 2 requested to be excluded from the class, resulting in an opt-out rate of 0.00037%. A low exclusion rate such as this indicates that the majority of the class favors the Settlement. *E.g.*, *Garner v. State Farm Mut. Auto: Ins. Co.*, 2010 WL 1687832, at * 15 (N.D, Cal. 2010) (0.4%.opt-out rate "is a further indication of the fairness of the Settlement").

Moreover, while the Claims Period will still remain open for more than a month, and the claims submitted will be subject to validation, there appears to be no less than 36,237 presumptively valid claims as of July 20, 2018. (Prutsman Decl. ¶ 9) Based on the estimated class size, even this lower-end number results in a claims rate of 6.7%. This is a remarkable claims rate for a claims-made settlement. Indeed, in claims-made settlements like this one, "[c]ourts around the country have approved settlements where the claims rate was less than one percent" because "the claims rate does

not dictate whether the notice provided was the best notice practicable under the circumstances" and "does not govern whether the settlement is fair, reasonable, or adequate." *Pollard v. Remington Arms Co.*, LLC, 320 F.R.D. 198, 214-15 (W.D. Mo. 2017) (collecting cases, approving of 0.29% claims rate); *see also, e.g., Whirlpool*, 2016 WL 5338012, at *14 (approvingly discussing 4.6% response rate); *In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934, 941 (9th Cir. 2015) (upholding settlement in which the parties sent direct notice to 35,000,000 class members and received 1,183,444 claims, which represents a 3.4% claim rate); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1257 (C.D. Cal. 2016) (holding 2.75% claim rate to be reasonable where "direct notice could not be provided to more than half of the class"). Thus, a claims rate of at least 6.7% (and rising), where direct notice was provided to only approximately half of the class, weighs significantly in favor of final approval.

Finally, only two Class Members have objected to the settlement. While "[a] certain number of . . . objections are to be expected in a class action," *Hyland v. HomeServices of Am., Inc.*, No. 3:05-CV-612-R, 2012 WL 1575310, at *7 (W.D. Ky. May 3, 2012), a "miniscule percentage of objections relative to the size of the Class weighs in favor of finding the Private Settlement Agreement to be fair, reasonable and adequate." *Smith v. Ohio Dep't of Rehabilitation & Correction*, No. 2:08-CV-15, 2012 WL 1440254, at *20 (S.D. Ohio Apr. 26, 2012). Courts have repeatedly held that a low number of objections weighs in favor of final approval. *See, e.g., Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008) (noting fact that only 79 of 11,000 class members objected (0.71%) "tends to support that the settlement is fair"); *Lonardo*, 706 F. Supp. at 783 (holding that nine objections out of 487,277 class members was " a small number relative to the number of potential Settlement Class Members" and supported approval); *Bailey v. AK Steel Corp*, No: 1:06-cv-468, 2008 WL 495539, at *5 (S.D. Ohio Feb. 21, 2008) (approving a settlement as fair and reasonable where 4.7% of the class members (229 of the 4,782) objected); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 675 (S.D. Ohio 2007) ("[A] small

number of objections, particularly in a class of this size, indicates that the settlement is fair, reasonable and adequate."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("That the overwhelming majority of Class Members have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is 'fair, reasonable, and adequate.'") (citation omitted). In any given case, on average, about one percent of class members object to a settlement. Newberg on Class Actions § 13:54 (5th ed.) (citing Theodore Eisenberg, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 Vand. L. Rev. 1529, 1546 (2004)). Here, the two objections received amount to a significantly lower objection rate of 0.00037%. Although the substance of the two objections is addressed in Section V, *infra*, the low objection rate itself supports approval of the Settlement.

## V.
## THE OBJECTIONS ARE WITHOUT MERIT AND SHOULD BE OVERRULED

As discussed above, an infinitesimal percentage of Class members objected to the Settlement. That alone favors final approval. But, moreover, "[a] class settlement is presumptively reasonable upon preliminary approval, and an individual who objects consequently has 'a heavy burden' of demonstrating that the settlement is unreasonable." *Brent*, 2011 WL 3862363, at *12 (quoting *Williams*, 720 F.2d at 921). As the Sixth Circuit has explained, objectors must demonstrate a factual basis for their objections and should not be allowed to disrupt and thwart the settlement process with unsupported suppositions. *Geier v. Alexander*, 801 F.2d 799, 809 (6th Cir. 1986) (noting that objectors should not be permitted to "stop the settlement in its tracks, without demonstrating any factual basis for their objections and to force the parties to expend large amounts of time, money and effort to answer their rhetorical questions" because"[t]o allow the objectors to disrupt the settlement on the basis of nothing more than their unsupported suppositions would completely thwart the settlement process") (internal quotes omitted).

20

"Although the parties reaching the settlement have the obligation to support their conclusion to the satisfaction of the District Court, once they have done so, they are not under any recurring obligation to take up their burden again and again ad infinitum unless the objectors have made a clear and specific showing that vital material was ignored by the District Court." *Id.*; *see also, e.g.*, *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 290 (W.D. Ky. 2014) ("Once preliminary approval has been granted, a class action settlement is presumptively reasonable, and an objecting class member must overcome a heavy burden to prove that the settlement is unreasonable.") (quoting *Levell*, 191 F.R.D. at 550).

For the reasons discussed herein, neither of the two objectors have met their high burden.

## A.     Sheila Ference (Dkt. 173)

Objector Shelia Ference criticizes the Settlement in several ways, all of which should be rejected.

### 1.     Ference Makes Generalized Objections Disconnected from Facts

First, Ference makes generalized arguments that the Settlement is not "fair, reasonable, and adequate," referencing case law for general propositions about the approval of class actions settlements. (Dkt. 173 at 1-2.) As far as the generalized references to case law go, "[t]hese objections are of a general nature and lack a sufficient factual or legal basis." *Volz v. Coca Cola Co.*, No. 1:10cv879, 2015 WL 13648577, at *2 (S.D. Ohio Mar. 30, 2015).

### 2.     Ference Is Incorrect That the Settlement is a "Coupon Settlement," But Regardless, Attorneys' Fees May Be Calculated Using the Lodestar Method

Next, Ference contends that this Settlement is a "coupon settlement" under the Class Action Fairness Act ("CAFA"). (Dkt. 173 at 2-4.) First, although it is clear (as discussed below) the Court may utilize the lodestar method here, the Target gift cards and coupons for free merchandise offered in the Settlement are not even "coupons" within the purview of CAFA. Rather, they are "vouchers,"

21

which require no additional purchase, which means the Settlement is not a "coupon settlement" under CAFA. In *Seebrook v. Children's Place Retail Stores, Inc.*, the settlement provided for a choice between a 35%-off coupon and a $10 merchandise certificate. No. C 11-837-CW, 2013 WL 6326487, at *1 (N.D. Cal. Dec. 4, 2013). While the court observed that the 35%-off coupon was "indisputably a coupon," it noted that "[t]he distinction between a coupon and a voucher is that a coupon is a discount on merchandise or services offered by the defendant and a voucher provides for free merchandise or services." *Id.* (quoting *Foos c. Ann, Inc.*, No. 11cv2794, 2013 WL 5352969, at *4 (S.D. Cal. Sept. 24, 2013). Thus, the court recognized that "because much of the merchandise at Children's Place is priced for purchase at ten dollars or less, class members do not need to spend money in order to realize the settlement benefit." *Id.* at *2. Therefore, it found that "the ten dollar certificate is not a coupon and thus does not trigger the provisions of 8 U.S.C. § 1712."[6] *Id.*; *see also, e.g.*, *Chalkin v. Lululemon USA Inc.*, No. 3:12-CV-02481-GPC-MDD, 2014 WL 1245461, at *5 (S.D. Cal. Mar. 17, 2014 (distinguishing $25 "credit vouchers, which require no additional purchase to redeem and therefore operate like cash, from coupons, which provide a discount or subsidy from a larger purchase" to find that "the Court does not view this settlement as a "coupon settlement" requiring the application of 28 U.S.C. § 1712); *Morey v. Louis Vuitton N.A., Inc.*, No. 11cv1517 WQH (BLM), 2014 WL 109194, at *8 (holding that $41 "Merchandise Certificates are vouchers and not coupons, and CAFA does not apply"); *Foos*, 2013 WL 5352969, at *3 (same for $15 merchandise certificate). And, similarly, settlements providing free product (like the free wipes coupon option here) likewise are not viewed as "coupon settlements" because they do[]not require class members

---

[6] The Seventh Circuit reached a different conclusion regarding $10 coupons in *Redman v. RadioShack Corp.*, but it also took issue with a very short expiration date window on the coupons. 768 F.3d 622, 630, 635-36 (7th Cir. 2014). The court in *Redman* also took issue with the class representative's problematically close relationship with class counsel, *id.* at 638, in addition to other maladies with the Settlement not present here.

to spend money in order to realize the settlement benefit." *E.g.*, *Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *4-5 (N.D. Cal. Nov. 16, 2007) (ruling on settlement providing free credit score or credit monitoring).[7]

Unlike the cases discussed above and this case, the cases Ference references involved coupons for "discounts" or "percent-off," which required class members to spend additional money in order to enjoy the benefit of the settlement. In *In re HP Printer Litig.*, the relief took the form of "e-credits" of $6 or less for ink cartridges, which was less than the price of products available on HP.com. 716 F.3d at 1179 n.6; *see also True v. American Hondo Co.*, 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010) ($500 or $1,000 rebates to class members who bought new cars, which obviously cost far more); *Eubank v. Pella Corp.*, 753 F.3d 718, 725 (7th Cir. 2014) (discounts on future window purchases); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 807 (3d Cir. 1995) ($1,000 certificate toward truck purchase). And this case differs significantly from the two state court cases Ference references, which featured paltry claims rates of 0.02% and 0.1%. (Dkt. 174 at 4.)

In any event, Ference is flat wrong that the lodestar approach would be inappropriate if the Court were to term the Settlement a "coupon settlement" (which as discussed above, it should not). The relevant provision of CAFA is titled "Coupon Settlements." 28 U.S.C. § 1712(a). It expressly states that "*any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action*" in any case where "a portion of the recovery of the coupons is not used to

---

[7] Even if the free wipes coupon option were to be viewed as a "coupon," which it should not, in cases where class members can choose between cash (or cash-like) relief and a coupon (rather than be required to accept a coupon), courts do not characterize the settlements as "coupon settlements." For example, in *Foos*, class members could choose between a $15 merchandise credit and a 20%-off coupon. 2013 WL 5352969, at *3. Although the latter was clearly a coupon, given that class members had a choice, the court ruled that it was not a coupon settlement. And *Seebrook*, which involved a choice between a 35%-off coupon and a $10 voucher, reached the same conclusion, in partial reliance on *Foos*. 2013 WL 6326487, at *2.

determine the attorney's fee to be paid to class counsel" and it may include "a multiplier." 28 U.S.C. § 1712(b)(1 & 2). In other words, in cases that include coupon relief, as this one does only in part, *if* attorneys' fees are determined using the percentage-of-the-fund method, the fund must be calculated based on the coupons actually redeemed, not the coupons claimed. If, however, the percentage-of-the-fund approach is not used, as is the case here, the fee must be based on lodestar, and may include a multiplier. *See, e.g.,* *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 709 (7th Cir. 2015).

Ference's argument—that courts may *not* use lodestar to determine fees in any case in which coupons are part of the deal—directly counters the statute's language explaining that courts *must* use lodestar whenever "a portion of the recovery of the coupons is not used to determine the attorney's fee." 28 U.S.C. § 1712(b)(1). She apparently reaches this conclusion by completely misreading another portion of the statute that explains that *if* courts base a "portion of any attorney's fee award" on the value of coupons, the Court must base that portion of the award "on the value to class members of the coupons that are redeemed." 28 U.S.C. § 1712(a). In reality, the option "prohibited by subsection (a) is using a percentage-of-recovery method based on the face value of all coupons merely available to the class." *In re Sw. Airlines*, 799 F.3d at 709. That now-prohibited approach reflected the abusive coupon settlement that § 1712 was meant to prevent. *Id.* (citing S. Rep. No. 109-14, *reprinted in* 2005 U.S.C.C.A.N. 3, 30). And that approach was not used by Class Counsel's here.

To be sure, a divided Ninth Circuit panel did read CAFA as requiring a percentage of the fund approach when a settlement is based on coupons *exclusively. See In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1186-87 (9th Cir. 2013); *but cf. id.* at 1192-99 (Berzon, J., dissenting). Literally "all other reported decisions reject" that one, Newberg on Class Actions § 15:71 (5th ed.), and it is just wrong, as the Second, Seventh, and Eighth Circuits have held. *John T. Galloway v. The Kansas City Landsmen, LLC,* 833 F.3d 969, 974-75 (8th Cir. 2016); *In re Sw. Airlines*, 799 F.3d at 709; *Blessing v. Sirius XM*

24

*Radio, Inc.*, 507 F. App'x 1, 5 (2d Cir. 2012). District court decisions are in agreement, as well. *E.g.*, *In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, No. 08-0309, 2011 WL 1790603, at *10 (W.D. Mo. May 10, 2011); *Perez v. Asurion Corp.*, No. 06-20734-CIV, 2007 WL 2591180, at *2 (S.D. Fla. Aug. 8, 2007).

In short, although this case is *not* a coupon settlement, nothing in CAFA prevents the Court from applying the lodestar method to calculate Class Counsel's attorneys' fees.

> **3.     Ference Makes Multiple Incorrect, Unsupported Arguments Regarding the Attorneys' Fee Award**

Ference also argues, without citation, that the fee award in this case should be based on the amount claimed by class members. (*Id.* at 4-5.) First, as discussed in Plaintiff's Fee Petition, the proper method for calculating attorneys' fees in a claims-made settlement such as this is the lodestar method. (Fee Petition at 4-6.) But more importantly, should the Court choose to employ a percentage-of-the-fund cross-check, the Sixth Circuit has conclusively ruled that such a check in a claims-made settlement such as this one can be performed based on the amount of funds *made available* to the class (rather than amounts actually claimed). *Gascho*, 822 F.3d at 286-87. As Plaintiff discussed in his Fee Petition, based on the estimated 5,560,645 units sold during the Class Period, the amount made available to the class can be valued at over $7.5 million. (Fee Petition at 3.) Thus, when accounting for that amount, plus the amount requested of attorneys' fees and expenses (which, added together, equals $9,121,870.75), Class Counsel's attorneys' fee request of $1,361,889.69 represents only 14.9% percent of the benefit provided to the class. And the percentage would be even lower if accounting for the costs of settlement notice and administration, which is not included in the amount listed above.

Additionally, Ference argues without citation that Class Counsel's hourly rates are unreasonable that the Court should review Class Counsel's billing records. First, in Plaintiff's Fee

Petition, Plaintiff provided significant support for Class Counsel's hourly rates, which Ference does

not contest. (Fee Petition at 7-9.) Moreover, since the attorneys' fee request is 23 percent lower than

Class Counsel's lodestar, the effective hourly rates sought in this case are far lower than Class

Counsel's actual hourly rates. (*Id.* at 10-11.)[8] Finally, Ference is incorrect that a review of Class

Counsel's billing records is necessary to evaluate an attorneys' fee petition. In *Gascho*, the Sixth

Circuit affirmed an attorneys' fee award that, like here, was significantly less than class counsel's

actual lodestar, where class counsel solely "had not submitted detailed billing records for review by

the court" and, rather, "provided the number of hours worked and averred under penalty of perjury

that those hours were reasonably necessary to prosecute the action." 822 F.3d at 276. With that said,

should the Court believe *in camera* review of Class Counsel's billing records is necessary, Class

Counsel will make its records available at the fairness hearing (or sooner, should the Court request

them).

### 4. Ference's Claims Regarding Collusion and the Incentive Award Are Unsupported

Ference makes generalized references to case law about preventing against collusion in class

settlements. (Dkt. 173 at 5.) However, Ference makes no argument as to why any collusion is

present here. (*Id.*) Plaintiff agrees that settlements must be free from collusion, but Plaintiff

adequately addressed this faction in Section IV.B.5, *supra*.

Finally, with no reference to case law, Ference takes issue with the proposed $10,000

Incentive Award. (Dkt. 173 at 6.) In the Fee Petition, Class Counsel provided significant support for

an award of this size and discussed how Plaintiff Meta's service to the class in this case has gone far

beyond that of most class representatives. (Fee Petition at 16-18.) Ference provides no reason to

---

[8] Class Counsel has invested significant additional time into this matter since filing its Fee Petition. Should the Court be inclined to award less than the requested attorneys' fee amount, Plaintiff requests leave to supplement Class Counsel's attorneys' fee records to update its lodestar.

question this. Moreover, this Incentive Award does not come from a common fund, and therefore does not diminish the value of the settlement for other Class Members.

For all the reasons discussed herein, Ference's objection must be rejected in its entirety.

## B.    Erich Neumann (Dkt. 174)

Like Ference, objector Erich Neumann makes a variety of objections, most of which are devoid of support, and all of which should be rejected.

As an initial matter, as Neumann admits in his objection, he has objected to several class action settlements in the past. (Dkt. 174 at 11.) Of the objections Neumann lists, Class Counsel was able to locate three decisions addressing his objections. All three decisions reject Neumann's objections in their entirety. *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 WL 890566, at *8 (N.D. Ill. Feb. 27, 2015); *Arnett v. Bank of America, N.A.*, No. 3:11-cv-1362-SI, 2014 WL 4672458, at *2, 14 (D. Ore. Sept. 18, 2014) ("The Court . . . was not materially assisted by the comments made by any of the Objectors."); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10ML 02151 (JVS) (FMOx), 2013 WL 3224585, at *20 (C.D. Cal. June 17, 2013) (finding that objections, including Neumann's, "lack merit and do not preclude final approval"). Indeed, at least one court has rejected very similar website-related objections made by Neumann in the past. *Wilkins*, 2015 WL 890566, at *8. Thus, not only should the Court find that Neumann's objections likewise lack merit here, but his objections should be rejected as those of a "professional" or "serial" objector. Such objectors tend to "hold[] up valuable settlements for class members by filing frivolous appeals." *Gemelas v. Dannon Co., Inc.*, No. 1:08 CV 238, 2010 WL 3703811, at *3 (N.D. Ohio Aug. 31, 2010). Indeed, through Class Counsel's investigation on appellate court dockets, Neumann has filed three later-abandoned appeals of class settlements.[9]

---

[9] *See Wilkins v. HSBC Bank Nevada, N.A.*, No. 15-1641 (7th Cir.); *Arnett v. Bank of America, N.A.*, No. 14-35861 (9th Cir.); *In re: Toyota Motor Corp.*, No. 13-56499 (9th Cir.).

In any event, although his motives are suspect, Neumann's objections likewise lack merit.

### 1.     Neumann's Criticisms of the Class Definition Are Unfounded

First, Neumann willfully misreads the class definition to argue that it somehow excludes individuals who bought the later-reformulated version of Up & Up wipes, and not just the "Buckeye" formulation, about which this case centered. (Dkt. 174 at 1-3.) Alternatively, Neumann argues that if such subsequent purchases are not excluded, the class definition was confusing to consumers so as to render notice deficient.

As an initial matter, it is simply incorrect that purchasers of the reformulated product were excluded from the Class. Notice was provided to individuals who purchased the "Buckeye" formulation during the Class Period, without regard for whether or not they might or might not have later purchased reformulated Up & Up wipes. (Tilghman Decl., ¶ 6.) Moreover, there is nothing in the claim forms that require that Class Members did *not* later purchase the reformulated product, nor is that one of the criteria flagged by the claims administrator for potential invalidation. (*See* Dkt. 169-2 at 39-45; Prutsman Decl., ¶ 9.) In short, valid claims by all purchasers of the "Buckeye" formulation during the Class Period, will be honored.

Moreover, Neumann is incorrect that the class definition is somehow confusing. Clearly, the class definition was crafted to compensate people who purchased Up & Up wipes during the Class Period, but not for any purchases after the product was reformulated. Neumann's attempt to suggest otherwise amounts to a willful misreading of the class definition. Moreover, the reality of the claims process indicates no confusion among Class members. As discussed in Section IV.B.7, *supra*, the claims rate to date is no less than 6.7% (with over a month remaining), which is a high percentage, indicating that Class Members have not been tricked into not filing a claim. Moreover, the claims administrator has operated a toll-free number in addition to an email and mailing address to field questions from Class members, and no Class member inquiry expressed confusion with the class

definition. (Tilghman Decl., ¶ 14.) In short, Neumann's definitional concerns are clearly a red herring.

> ### 2. Neumann Incorrectly Claims That Knowledge of the Amounts Claimed By the Class Are Necessary for a Lodestar-Based Award

Neumann references *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513 (6th Cir. 1993) for the notion that district courts should select the appropriate attorneys' fee methodology between the lodestar method and the percentage-of-the-fund method. (Dkt. 174 at 4-5.) While this is correct, Plaintiff discussed at length in the Fee Petition that courts in the Sixth Circuit typically utilize the lodestar method in claims-made settlements such as this one. (Fee Petition at 4-6.) And *Rawlings* does not stand for anything different—that was a common fund settlement in which the court affirmed the district court's use of the lodestar method. 9 F.3d at 515-17.

Neumann next makes the unsupported assertion that the Sixth Circuit requires courts to make an attorneys' fee award based on the amount of funds claimed by the class. (Dkt. 174 at 5.) It is unclear what leads Neumann to that belief, as *Rawlings* does not say so, nor does the much more recent *Gascho* decision. In *Gascho*, the Sixth Circuit affirmed an attorneys' fee award based on Class Counsel's lodestar. 822 F.3d at 280-81. And although it found a percentage-of-the-fund cross-check to be "optional," it ruled that such a check in a claims-made settlement such as this one can be performed based on the amount of funds *made available* to the class (rather than amounts actually claimed). *Id.* at 281, 286-87.[10]

Neumann goes on to criticize Class Counsel's estimate of the amount made available to the Class via the Settlement. (Dkt. 174 at 6-8.) However, this estimate follows the amount of the "available benefit" to the class approved of in *Gascho*, which was calculated as "the value of the

---

[10] Of course, at the conclusion of the Claim Period, updated claims figures regarding amounts claimed will be made available to the Court. But such figures are not necessary to approve the Settlement or make an attorneys' fee award.

settlement if all class members exercised their right to file valid claims." 822 F.3d at 282. Thus, as Plaintiff discussed in his Fee Petition, based on the estimated 5,560,645 units sold during the Class Period, the amount made available to the class can be valued at over $7.5 million. (Fee Petition at 3.) Neumann finally criticizes an alternate "available benefit" calculation provided by Plaintiff in a footnote (*id.* at 3 n.3) (based on all Class members filing claims for the maximum number of units without Proof of Purchase) as having been made in "bad faith." (Dkt. 174 at 6-8.) Plaintiff is not asking the Court to rely on that estimate; rather, Plaintiff provided that figure to illustrate that the $7.5 million estimate was a conservative one, if anything.

Thus, while not necessary to the Court's determination of a lodestar-based attorneys' fee award—which is standard in the Sixth Circuit—Class Counsel's fee request is likewise appropriate when compared with the total benefits made available to Class members.

### 3. Neumann's Factual Claims About the Settlement Website Are Incorrect and, in Any Event, Do Not Prevent Final Approval

Neumann makes two claims regarding the content of the Settlement Website, namely (1) Class Members were not appraised of the content of the Fee Petition, and (2) Class Members were not appraised of the ability to object to the Settlement. (Dkt. 174 at 8-9.) Although these claims are factually erroneous, they are also not grounds to disapprove of the Settlement.

First, Neumann claims that the Fee Petition was not posted to the Settlement website as of the date of his objection (July 3). (*Id.* at 8.) The claims administrator has confirmed that the Fee Petition was uploaded to the Settlement Website on July 2, a week prior to the postmark deadline for objections. (Tilghman Decl., ¶ 15.) Similarly, Neumann complains that the front page of the Settlement Website erroneously contains two "exclusion" deadlines without listing an "objection" deadline. (Dkt. 174 at 9.) The claims administrator reports that this typographical error was recognized on May 15, 2018 and corrected no later than July 2. (*Id.*)

30

Moreover, Neumann is simply wrong about the effect of this purported (although not actual) missing information. He references the Advisory Committee's notes to Rule 23 for the proposition that "notice to class members about class counsel's fee motion would ordinarily accompany the notice to the class about the settlement proposal itself." (Dkt. 174 at 8.) Indeed, the Long Form Notice (Dkt. 169-2 at 49-55) provided notice of Class Counsel's fee and expense application (*id.* at 51) and has always been available on the Settlement Website.[11] This is exactly what the Advisory Committee's notes require. To read it differently would suggest that the Fee Petition would have had to have been provided simultaneously with the Class Notice, which makes no sense and obviously is not required. Neumann cites no authority requiring that a fee petition be posted to a settlement website, but as discussed herein, that was done so here shortly after it was filed, in advance of the objection deadline, and before Neumann's objection was mailed.

Neumann's claims regarding a typographical error regarding the objection deadline on the Settlement Website fares little better. First, the error was corrected in advance of the objection deadline. (Tilghman Decl., ¶ 15.) But more importantly, all of the Class Notices included the objection deadlines. (*See* Dkt. 169-2 at 46-57.) A significant percentage of the Class received notice directly, and other Class members could view these notices on the Settlement Website. Thus, Neumann is incorrect that Class members were not made aware of their ability to object. (Dkt. 174 at 9.) And a typographical error is clearly not evidence of purported bad faith claimed by Neumann. (*Id.*)

It should come as little surprise to the Court that Neumann had had a previous objection to purported deficiencies with a settlement website rejected. In *Wilkins*, the Court observed that Neumann wrongly claimed that a settlement notice failed to provide the addresses of class counsel.

---

[11] http://www.upandupwipessettlement.com/upload/2742/META-LongFormNotice.pdf

31

2015 WL 890566, at *8. With respect to a claimed omission of the address of the court, the court found Neumann to be technically correct, but found that "nearly every class member viewing the Notice could easily locate the court's address and therefore rejects Neumann's objection to the notice process." *Id.* The same is true here: although Neumann's claims are factually incorrect, even if the objection deadline never appeared on the Settlement Website (it did), Class Members would be easily able to locate it elsewhere. Courts elsewhere have likewise deemed purported minor technical errors involving notice issues to not be a barrier to settlement approval. *See, e.g., Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1247 (D. Kan. 2015) (typographical error in notice "not a material defect"); *Arnett v. Bank of Am., N.A.*, 2014 WL 4672458, at *3 n.7 (D. Or. Sept. 18, 2014) (granting final approval motion where notice contained error in date of final approval hearing); *In re Processed Egg Antitrust Litig.*, 284 F.R.D. 278, 295 n.16 (E.D. Pa. 2012) (approving settlement in spite of "inadvertent typo" in notice). The same should hold true here.

### 4. Neumann's Claims Regarding the Incentive Award Are Unsupported

Finally, like Ference, with no reference to case law, Neumann takes issue with the proposed $10,000 Incentive Award. (Dkt. 173 at 6.) In the Fee Petition, Class Counsel provided significant support for an award of this size and discussed how Plaintiff Meta's service to the class in this case has gone far beyond that of most class representatives. (Fee Petition at 16-18.) Neumann provides no reason to question this.

For all the reasons discussed herein, Ference's objection must be rejected in its entirety.

## VI.
## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court enter final judgment certifying the settlement class and approving the settlement, grant Plaintiff's application for an incentive award, and award Class Counsel $1,615,000 in combined attorneys' fees and costs.

Dated:  July 27, 2018                    /s/ Hassan A. Zavareei
                                         HASSAN A. ZAVAREEI (pro hac vice)
                                         JONATHAN K. TYCKO (pro hac vice)
                                         ANDREW J. SILVER (pro hac vice)
                                         **TYCKO & ZAVAREEI LLP**
                                         1828 L Street, N.W., Suite 1000
                                         Washington, D.C. 20036
                                         (202) 973-0900
                                         (202) 973-0950 (FAX)
                                         hzavareei@tzlegal.com
                                         jtycko@tzlegal.com
                                         asilver@tzlegal.com

                                         DENNIS R. LANSDOWNE (0026036)
                                         STUART E. SCOTT  (0064834)
                                         **SPANGENBERG SHIBLEY & LIBER LLP**
                                         1001 Lakeside Avenue East, Suite 1700
                                         Cleveland, OH  44114
                                         (216) 696-3232
                                         (216) 696-3924 (FAX)
                                         dlansdowne@spanglaw.com
                                         sscott@spanglaw.com
                                         dfrech@spanglaw.com

                                         *Attorneys for Plaintiff Christopher Meta and the Class*

## CERTIFICATE OF SERVICE

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. A true and correct copy of the foregoing was served electronically on Defendants' counsel of record.

/s/ Andrew J. Silver
Andrew J. Silver
