IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| CHRISTOPHER META, | ) |
|       Plaintiff, | ) CASE NO. 4:14-CV-0832 |
| | ) |
|       v. | ) JUDGE DONALD C. NUGENT |
| | ) |
| TARGET CORP., et al. | ) |
| | ) |
|       Defendants. | ) |

**DECLARATION OF JAMES PRUTSMAN OF HEFFLER CLAIMS GROUP**

I, James Prutsman, hereby declare as follows:

      1.      I am currently employed by Heffler Claims Group ("Heffler") in the capacity of Partner. The following statements are based on my personal knowledge

      2.      Heffler has extensive experience in class action matters, having provided notice and claims administration services in class action settlements involving antitrust, securities fraud, employment and labor, consumer, and government enforcement matters.  Heffler began administering settlements in the mid 1960's. During this time Heffler has provided notification and/or claims administration in more than 1,000 cases. In 2017 Heffler was honored as "The Best in Claims Administration" for 2017 by The Recorder California's leading news and analysis publication that covers legal, business, and technology trends shaping law practices. In 2017 Heffler was recognized by Wisconsin Law Journal's readers by being voted "Best in Class Action Administration" in its annual Reader Rankings Awards.

      3.      I graduated from Portland State University in 1987 with a Bachelor of Science degree in Information Systems and Quantitative Analysis. In 2005 I earned an MBA from the University of Oregon.

      In my professional career I have held various technology positions with responsibilities including design and development of database systems, the design and building of computer and

telephone networks, the design of data processing facilities, and the staffing, training, and management of computer support personnel.

In my current role as a Partner at Heffler, I routinely review the claims file for cases. The goal is to ensure that we are paying valid claims and determine which claims have indications of fraud or duplication. I have played a principal role in developing the standards Heffler uses for the claims validation on all of the cases which I manage. Moreover, these standards have been adopted for the majority of the consumer product cases for which Heffler provides Settlement Administration.

4.      I have worked in the class action administration field for more than 20 years. I developed the first communication website for a class action settlement, the *Louisiana-Pacific Inner-Seal Siding Litigation* in 1995. This site was the first of its kind providing class members with access to the relevant court documents and provided potential class members with a robust means of identifying the products at issue in this case. In 2001 I conceived and oversaw the development of the first website capable of receiving on-line-claims in the MCI Non-Subscriber Rate Payers Litigation an alleged long-distance overcharge settlement.

Additionally, I have provided class action administration in some of the highest profile class action settlements in the United States, including, but not limited to:

*Carter v. Forjas Taurus S.S., Taurus International Manufacturing, Inc.*, Case No. 1:13-CV-24583 PAS (S.D. Fl. 2016). On behalf of owners of around 1 million Taurus handguns alleged to have been sold with a design defect.

*In Re: Blue Buffalo Company, Ltd., Marketing and Sales Practices Litigation*, Case No. 4:14- MD-2562 RWS (E.D. Mo. 2015). On behalf of 1,971,682 purchasers of Blue Buffalo pet food.

*Spann v. J.C. Penney Corporation Inc.*, Case No. SACV12 0215 FMO (KESx) (C.D. Cal. 2012). On behalf of purchasers of certain JCPenney branded products.

*Townsend v. Blue Diamond Growers*, Case No. CV 14-958-4 (Ark.Cir. 2014). A product labeling case on behalf of purchasers or certain Blue Diamond Almond Breeze Milk and Nut Thins Crackers.

*Katz v. Garmin*, Case No. 2:14-cv-165-RJS (D. Utah 2014). Purchasers of certain Garmin watches with an alleged defect.

*Law Enforcement Officers, Inc. v. J2 Global, Inc.*, Case No. BC555721 (Cal.Super. 2014). On behalf of subscribers of J2's online fax service who paid a late fee.

*Bezdek v. Vibram USA and Vibram FiveFingers LLC*, Case No. 12-10513 (D. Mass 2012). On behalf of purchasers of certain FiveFingers Footwear sold by Vibram who allegedly misrepresented the health benefits of the shoes.

*Feely and Beeson v. Allstate County Mutual Insurance Company*, Case No. CV-2004-294-3A (Ark.Cir. 2004). This case alleged, among other things, that Allstate did not properly pay general contractor's overhead and profit on homeowner insurance claims for over 15M policyholders.

*In re: Swiss Banks Holocaust Victim Asset Litig.*, Case No. CV-96-4849 (E.D.N.Y. 1996). This case was administered in 21 native languages.

*In re: Exxon Valdez Oil Spill Litig.*, Case No. A89-095-CV (HRH) (Consolidated) (D. Alaska 1989).

*In Re: International Air Transportation Surcharge Antitrust Litigation*, Case No. M:06-cv-01793 (N.D. Cal. 2006). This case involved 3 to 4 million passengers who sued the airlines for fixing fuel prices on international flights.

*Fogel v. Farmers Group, Inc.*, Case No. BC300142 (Cal.Super. 2003). This case is one of the largest class action settlements in California history, a $550 million settlement for a nationwide class of 12.5 million Farmers Insurance Exchange subscribers.

3

I have extensive experience in the planning, development of systems, processes and procedures for the successful administration of hundreds of matters. Moreover, I have provided expert testimony to courts regarding claims administration processes and procedures. Most recently in *Carter v. Forjas Taurus S.S., Taurus International Manufacturing, Inc.*, Case No. 1:13-CV-24583 PAS (S.D. Fl. 2016).

5.      I was contacted on or about May 16, 2018 regarding the above captioned matter. I was asked to review claim files as there was a concern that there might be fraudulent claim filing activity. After an initial discussion, I was tasked with analyzing the claims received thus far and to determine if the valid claims could be identified. The final goal at the conclusion of the claims period will be for the identification and payment of all valid claims filed. On May 17, 2018 I received a datafile which contained the data from the claims which had been filed online during the first 10 days of the claim period. This datafile contained 93,118 records (excluding 8 test records) of the claims that had been filed online thus far. At this point the online claims facility had been operational for 14 days averaging over 6,652 claims received per day.

6.      One of the first tasks that I undertook was a review of the online claim form. The online claim form provided for the entry of the class member contact information, their purchase history including a selection of the products they purchased, settlement relief selection, and a digital signature attesting to the accuracy of the claim being submitted under the penalty of perjury. The product selection on the claim form was made using check boxes. A check in the product selection was not required to submit a claim online. However, a product selection is necessary to submit a valid claim. I looked at the data from the claims which had been filed and performed an initial analysis. In this analysis I determined that there were 46,908 claims where neither of the products provided on the claim form had been selected. In my experience a

4

grouping of claims filed in rapid succession that fail to make the same selection is indicative that the claims have been filed utilizing a computer script. In these instances, the claims were not filed by an actual person. Rather, they were filed by a computer script written for the purpose of submitting claims. Developing a computer script to file claims is a relatively simple task. Seeing the large number of nearly 47,000 claims which all had the same defect, no product selected, indicated to me that there were likely scripted claims being submitted in this settlement.

7.      My initial recommendation to the parties was to implement the use of Google reCAPTCH technology. reCAPTCHA is a free service that protects websites from spam abuse and the script completion of forms. It uses advanced risk analysis techniques to tell humans and bots apart. reCAPTCHA has become commonplace on websites that utilize forms. The indication that a website is using reCAPTCHA technology is the presence of the following image:



8.      After implementing reCAPTCHA and requiring the email field to be completed, the online claims received decreased to an average of 1,100 per day. This immediate 83% reduction in claims filing indicates that prior to implementing the reCAPTCHA there were claims being filed online using a computer script.

9.      As of July 20, 2018, a total of 170,542 claims have been filed. As stated earlier my goal in this matter will be to identify all of the valid claims. However, in addition to the claims submitted via computer script, there are other indicators of duplicate or fraudulent claims filed in this settlement. There can be many traits of an individual claim that would cause a claim

to be flagged. It is important to consider the combinations and permeations of these traits. As an example, I flagged the claims which contained the following traits:

- No email address entered
- Email address entered was malformed
- Duplicate email address on another claim
- Duplicate mailing address on another claim
- No product selected
- The wrong product was selected, and the correct product was not selected
- No quantity of products purchased
- Claim not signed

After applying these filters, a total of 36,237 claims remained unflagged.

10.     I will continue to work with the Parties through the conclusion of the claims period to monitor claims submissions for indicia of invalidity. At this time, neither the Parties nor I are making any ultimate determination regarding the validity of claims. Rather, consistent with the Settlement Agreement, within 60 days of the conclusion of the claims period, I will provide the parties with a list of claims that are untimely or otherwise appear invalid, based on some of the considerations discussed herein. At that time, the parties will have the opportunity to work with one another to determine the population of valid claims and, if necessary, to present any disagreements to the Court.

I declare under penalty of perjury under the laws of The United States of America that the above is true and correct to the best of my knowledge. Executed on July 26, 2018, in Frisco Colorado.

JAMES R. PRUTSMAN