FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

2018 SEP 24 PM 2: 29

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

| | |
|---|---|
| CHRISTOPHER META | ) |
| | ) CASE NO. 4:14-cv-0832 |
| Plaintiff, | ) |
| | ) JUDGE DONALD V. NUGENT |
| v. | ) |
| | ) |
| TARGET CORP., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **OBJECTOR ERICH NEUMANN'S OPPOSITION TO MOTION FOR APPEAL BOND**

Class Member and Objector Erich Neumann ("Objector") hereby submits this memorandum in opposition to Plaintiff's Motion for a Bond to Secure Payment of Costs and Attorneys' Fees on Appeal, ECF No. 184 ("Pl. Mot.").[1] Objector responds to those portions of Plaintiff's Motion that are applicable to Objector Neumann.[2]

### I. INTRODUCTION AND BACKGROUND

On July 9th, the undersigned objected to final approval in the above-captioned case. Neumann Objection to Class Action Settlement and Application for Attorneys' Fees, ECF No. 174 ("Neumann Obj."). Therein, Objector raised objections that were far from boilerplate but dealt with unique characteristics of this Settlement. This included analysis of, *inter alia*: (a) whether the Class Definition excluded Dual Purchasers of the Product and the implications of same (Neumann Obj. at 1-4); (b) the application of *Rawlings* to the atypical "uncapped" settlement fund existing

---

[1] Though Plaintiff's Motion appears to have been mailed *after* the September 7th certificate of service, the undersigned will utilize that date and the 14-day (plus three days for mailing) time limitations imposed by the Local Rules.

[2] The following sections of Plaintiff's Motion apply solely to Objector Ference and will not be addressed herein: Section III(A)(1) regarding Ference 'coupon settlement' argument (Pl. Mot. at 6-7) and Section III(A)(3) regarding Ference's 'collusion' argument (Pl. Mot. at 7-8).

1

here (*id.* at 4-6); (c) the murky and vague statements as to the claims paid thus far in an attempt to provide the Court with an actual monetary value of the Settlement (*id.* at 6-8);[3] and (d) deficiencies with the settlement website (*id.* at 8-9).

On July 27, 2018, Plaintiff filed his Motion for Final Approval. Plaintiff's Unopposed Motion for Final Approval of Class Settlement, and Response to Objections, ECF No. 176 ("Pl. MFA"). Therein, Plaintiff responded to the Neumann objections. Pl. MFA at 37-41.[4] For one, Plaintiff argued, Objector "willfully misread" the phrase "the settlement specifically excludes purchasers of Nice-Pak's 'Sigma' formulation" to mean that the settlement excluded purchasers of Nice-Pak's 'Sigma' formulation. Pl. MFA at 37-38. Though conceding that the plain language of the statute excluded such purchasers, Plaintiff argued that the lack of questions to the claims administrator as to whether the word "excluded" is synonymous with "included" was evidence that Class Members were interpreting the word to mean its exact opposite. *Id.*

Further, Plaintiff did not specifically dispute that the amounts paid to Class Members were likely dwarfed by the attorney-fee award, but rather asked the Court to abstain from analyzing the settlement in terms of its actual value in favor of a 'total available benefit' approach. *Id.* at 38-39. Incredibly, Plaintiff also revealed that the 'total available benefit' settlement was marred by a staggering eighty (80) percent claims rejection rate, reflecting precisely the moral hazard that make courts wary of uncapped 'total available benefit' settlement valuations.[5]

---

[3] This included an empirical analysis of claims rates. *Id.* at 7 (fn. 5).

[4] Where the page numbers provided by the ECF system differ than those in the brief footer, Objector relies on the ECF-provided numbers.

[5] Of the 170,542 filed claims, the claims administrator flagged 134,305 claims as not valid. Prutsman Decl., ECF No. 176-2, at ¶ 9. Further, Plaintiff noted that the remaining 20 percent were still "subject to validation," implying that yet another round of claim rejections may be on the horizon. Pl. MFA at 27.

2

With respect to the settlement website's deficiencies, Plaintiff admitted that it waited weeks to update information on the website, and apparently failed to comply with this Court's Preliminary Approval Order. *See* Objector Neumann's Reply to Plaintiff's Response to Objections, ECF No. 180 ("Neumann Obj. Reply"), at 14-15.

On August 7th, the Court overruled the objections and entered final approval. Settlement Order and Final Judgment, ECF No. 179 ("Order").[6] The Order consisted of the Court's signing of the Proposed Order provided by Plaintiff's Counsel. *Compare* Order to Proposed Order, ECF No. 176-4.[7]

Now, Plaintiff seeks an $80,000 appeal bond from the objectors. According to Plaintiff, this includes $25,000 in anticipated costs, wherein Plaintiff provides neither a factual basis for this amount nor a legal basis to recover costs beyond those awarded by 28 U.S.C. § 1920.[8] Pl. Mot. at 12. It also includes $15,000-$18,000 in what he claims may be additional claims administration costs (even though these costs are borne by Defendants, not Plaintiff). *Id.* at 12-13. Finally, it includes an approximate one hundred hours in attorneys' fees (totaling $40,000) based on a theory that the appeals will be found frivolous. *Id.* at 13. The bond—which incidentally may exceed the entire amount paid to Class Members pursuant to the settlement[9]—should be denied in its entirety for the reasons provided below.

---

[6] The Order was filed *before* the Neumann Objection Reply brief, ECF No. 180 ("Neumann Obj. Reply").

[7] Thus, Plaintiff's characterization that this Court examined and found Objector to be a "serial objector [who files] frivolous appeals" (Pl. Mot. a 1-2) is somewhat misleading – this was simply the language taken from the Proposed Order drafted by Plaintiff. Indeed, all of the Court's "findings" which Plaintiff asserts warrant an appeal bond were *dicta* drafted by counsel for Plaintiff.

[8] 28 U.S.C. § 1920 provides that a Clerk *may* tax as costs the following: fees of the clerk and marshal, fees for printing transcripts, fees for printing certain materials, and compensation of court appointed experts.

[9] *See* Neumann Obj. Reply at 13.

## II. LAW AND ARGUMENT

### A. Legal Standard

Appellate Rule 7 provides that "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." FED. R. APP. P. 7.

### B. There is no Statutory Basis for Plaintiff to Recover the Costs Sought in his Bond Application

With respect to the $25,000 in anticipated litigation costs and $15,000-$18,000 in claims administration costs, Plaintiff has failed to identify any statutory basis for which such costs are recovered. Thus, both requests are analyzed under 28 U.S.C. § 1920. *See, e.g., In re Porsche Cars N.A., Inc. Plastic Coolant Tubes Products Liab. Litig.*, No. 11-2233, 2014 WL 2931465, at *5 (S.D. Ohio June 30, 2014) ("[h]aving found no statutory authority that authorizes additional costs, the Court is constrained by the costs referenced in Rule 39(e) and 28 U.S.C. § 1920 in setting the bond amount in this case").[10]

#### 1. There is no statutory basis to recover $25,000 in anticipated costs beyond those provided in 28 U.S.C. § 1920, pursuant to which Plaintiff has not shown that he will incur *any* costs

The Sixth Circuit has interpreted Rule 7 to include costs beyond those referenced in Rule 39(e) and (by extension) 28 U.S.C. § 1920 only where such extra costs are sought pursuant to the relevant substantive statute on which the causes of action are based. *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 817-18 (6th Cir. 2004). Here, with respect to the $25,000 in anticipated appeal

---

[10] In addition to Section 1220, costs provided under Rule 39(e) are taxable, and include "'(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal.'" *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 642 (N.D. Ohio 2016) (quoting FED. R. APP. P. 39(e)). These are not at issue in this case, for the same reasons provided in the delineated list that follows.

4

litigation costs, Plaintiff does not provide any statutory basis for the recovery of costs beyond those provided in 28 U.S.C. § 1920.[11] With respect to Section 1920, as noted below, Plaintiff has failed to make any showing that he will incur *any* Section 1920 costs, much less $25,000.

Section 1920 allows for recovery for: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; [and] (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title."

Here, Plaintiff has made no showing (nor made any argument) that he will incur any Section 1920 costs whatsoever. With respect to each of the aforementioned Section 1920 subsections:

(1) Objectors, not Plaintiff, have incurred the fees of the clerk and marshall (totaling $505). Plaintiff's likely costs under this subsection are $0;

(2) Objector Neumann has already filed with the Sixth Circuit his notice that no transcripts are necessary for the disposition of the appeal. Plaintiff has not cited to any transcript with respect to the issues raised in Neumann's Objection. Plaintiff's likely costs under this subsection are $0;

(3) No witnesses will be called before the Sixth Circuit. Further, the Sixth Circuit's Local Rules mandate the *electronic* filing of exhibits whenever possible (*see* 6th Cir. L.R. 10). Plaintiff's likely costs under this subsection are $0;

(4) As noted above, electronic filing is mandated by the Sixth Circuit. Further, the only "evidence" to be brought before the Sixth Circuit in this Court as present in the District Court's ECF file, of which Plaintiff presumably already has a copy. Plaintiff's likely costs under this subsection are $0;

---

[11] Notably, even in instances where Plaintiffs seek bonds against objectors under fee-shifting statutes, courts carefully scrutinize such statutes with respect to whether they would warrant fees against *objectors*. *See, e.g. In re Porsche Cars N.A., Inc. Plastic Coolant Tubes Products Liab. Litig.*, 2014 WL 2931465, at *3.

(5) This subsection does not apply to the appeal at issue. Plaintiff's likely costs under this subsection are $0; and

(6) This subsection does not apply to the appeal at issue. Plaintiff's likely costs under this subsection are $0.

Knowing that it will likely incur *no Section 1920 costs*, Plaintiff avoids any description whatsoever of what his arbitrary $25,000 cost estimate entails. Pl. Mot. at 12. Rather, Plaintiff asserts that the Court may apply an arbitrary 'liquidated costs' measure of $25,000 without any examination of what costs may actually be incurred. *Id.* Notably, Plaintiff cites no caselaw in this Circuit (where courts have rejected this approach). *See, e.g., In re Porsche Cars N.A., Inc. Plastic Coolant Tubes Products Liab. Litig.*, 2014 WL 2931465, at *5 (refusing to impose $25,000 bond where plaintiff "fail[ed] to persuade the Court that their recoverable costs will approach $25,000"; rather, court awarded $2,474 for record transmission and printing costs);[12] *see also Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.*, No. 04-74891, 2008 WL 2415340, at *2 (E.D. Mich. June 12, 2008) (finding $8,000 appeal bond request grossly excessive, finding that "defendant has not met its burden of justifying the amount of its request or providing a reasonable estimate of the actual costs it may incur on appeal"); *Thom v. Am. Stand., Inc.*, No. 07-294, 2009 WL 2224086, at *1 (N.D. Ohio July 23, 2009) (denying bond motion and noting that "there is no transcript necessary for this appeal and therefore the costs generated by this appeal should be minimal").

---

[12] Here, the Declaration of Class Counsel does not even mention the $25,000 costs, much less explain what it is comprised of. Scott Decl., ECF No. 184 at 32-33. This differs from other declarations provided in district. *See, e.g., In re Polyurethane Foam Antitrust Litig.*, MDL No. 2196 (Mar. 1, 2016) (ECF No. 2042-3; Miller Decl.), at ¶ 7 (requesting $10,000 to "guarantee Plaintiffs' basic costs of photocopying, serving, preparing, and transmitting the record").

6

Further, all the cases cited by Plaintiff fail to support such an arbitrary finding and refer to possible costs that will not be incurred here. Pl. Mot. at 12. In *In re Initial Public Offering Securities Litigation* (Pl. Mot. at 12), for example, the court arrived at $25,000 as follows:

> With regard to taxable costs, plaintiffs rightfully assert that the appeal will entail significant costs, including copying costs for briefs and compilation of the voluminous record. The appendix would necessarily include the several thousand pages included in the expert reports and exhibits. Taxed at the Second Circuit rate of $0.20 per page, plaintiffs assert that copying costs will amount to at least tens of thousands of dollars. I conclude that $25,000 is likely sufficient to cover these taxable costs.

*In re Initial Pub. Offering Securities Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010). Here, as noted above, the Sixth Circuit's direction with respect to electronic filing will result in copying costs of $0, not $25,000. The other cases cited by Plaintiff in support of its $25,000 number similarly point to anticipated costs or other issues that are inapplicable in this case. *See In re Ins. Brokerage Antitrust Litig.*, No. 04-5184, 2007 WL 1963063, at *3 (D.N.J. July 2, 2007) (citing potential costs arising from "printing and administrative costs associated with an appeal"); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL No. 1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003) (court ordered $35,000 bond versus plaintiff's sought bond of $350,700 – which included attorneys' fees based on court's finding that appeal was frivolous); *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2010 WL 1253741, at *3 (S.D.N.Y. Mar. 5, 2010) (awarding $35,000 because "[m]ultiple copies will be required because several appellants refuse to consent to consolidation of their appeals").

Plaintiff has provided no statutory basis for the recovery of any costs beyond those enunciated in 28 U.S.C. § 1920, nor has it provided any basis for awarding *any costs*—much less $25,000—pursuant to that statute.

### 2. There is no statutory basis to recover increased claims administration costs, and Plaintiff is not even the party who will incur such costs

Plaintiff lacks both a statutory basis to seek claims administration costs, and is further not the party with standing to pursue such costs. As noted throughout, Plaintiff has not put forth any statutory authority under which it may seek the costs of claims administration. The analysis thus defaults to Section 1920, with the question arising as to whether the cost of claims administration might be considered "compensation of court appointed experts" under 28 U.S.C. § 1920(6). For the reasons provided below, the answer is 'no'.

In *Cardizem*, the Sixth Circuit was presented with the question presented here: "whether § 1920(6)'s reference to 'court appointed experts' includes settlement administrators or whether it is limited to experts that, unlike [the settlement administrator], were appointed by the court under Rule 706 of the Federal Rules of Evidence." *In re Cardizem CD Antitrust Litig.*, 481 F.3d 355, 362 (6th Cir. 2007). The Court did not ultimately reach the question, since it decided that a bond should not have been imposed in the first instance, but did offer detailed "thoughts about the question[.]" *Id.* Though careful to note that such 'thoughts' were "non-binding [and] non-exhaustive," the Court proceeded to provide six different reasons—mostly dealing with the legislative history of FRE 706 and Section 1920—that 'court appointed experts' as used in Section 1920 should *not* be interpreted more broadly than the same language as utilized in FRE 706 (and thus did *not* include claims administration costs). *Id.* at 363-64.

And while Plaintiff cites some cases outside of the Sixth Circuit supporting the inclusion of claims administrator fees as taxable costs, the Sixth Circuit specifically noted that such cases do "not stand alone" and cited numerous court holdings that that claims administrator costs are *not* taxable under Section 1920. *Id.* at 364 (describing "*Nat'l Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 545 n. 7 (9th Cir.1987) (noting that 'the words 'court appointed experts'

8

in 28 U.S.C. § 1920(6) refer only to expert witnesses'); *Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1393 n. 9 (D. Or. 1996) ('Because [the court] did not appoint the experts [technical advisors] under Rule 706, their fees are not 'costs' that may be awarded to the prevailing party under FED. R. CIV. P. 54(d) and 28 U.S.C. § 1920(6).'); *Kansas ex rel. Stephan v. Deffenbaugh Indus., Inc.*, 154 F.R.D. 269, 270 (D. Kan. 1994) (holding that '[a]lthough the [court-appointed] mediator may be an 'expert in the law,' he or she is not a Rule 706 expert witness whose costs are taxable under § 1920(6)'))."

Further, Plaintiff (who brings the underlying motion for a bond) does not even appear to be the property party in interest in seeking any bond for amounts associated with increased costs of administration. According to the Final Approval Order, "Target and Nice-Pak shall pay the costs of administration of the Settlement." Order at ¶ 25. Plaintiff seeks a bond for costs that he will not even incur, contrary to the purpose of Appellate Rule 7. *See, e.g., Thom.*, 2009 WL 2224086, at *1 (a "Rule 7 bond serves the purpose of protecting the amount the appellee stands to have reimbursed, rather than impose an independent penalty on the appellant").

### B. Plaintiff cannot Seek a Bond on Prospective Attorneys' Fees

Plaintiff also seeks a bond for $40,000 in attorneys' fees it anticipates incurring as a result of what it assumes will be a frivolous appeal. Pl. Mot. at 13. However, as Plaintiff has identified no substantive fee-shifting statute permitting fees against objectors, it cannot seek prospective attorneys' fees as part of a Rule 7 bond. "[T]he Sixth Circuit has held that a Rule 7 bond may include appellate attorney fees *where authorized by the substantive statute*." *Chiaverini*. 2008 WL 2415340, at *2 (citing *In re Cardizem CD*, 391 F.3d at 817) (emphasis added). Where fees are not sought pursuant to a fee-shifting statute, a Rule 7 bond cannot include prospective attorneys' fees. *Id.; see also Brandewie v. Wal-Mart Stores, Inc.*, No. 14-965, 2016 WL 698110, at *2 (N.D. Ohio

9

Feb. 22, 2016) (the "district court looks to the underlying statutes involved in the litigation to determine if attorney's fees may be included as 'costs'"); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 08-1998, 2010 WL 5147222, at *4 (W.D. Ky. Dec. 13, 2010) ("[a]n appeal bond may only include attorney's fees as costs where an underlying statute in the case contains a fee shifting provision").

The cases cited by Plaintiff do not support its argument. Pl. Mot. at 13. In *Azizian*, the Ninth Circuit *reversed* a district court's inclusion of Rule 38 attorney's fees in a Rule 7 bond. *Azizian v. Federated Dept. Stores, Inc.*, 499 F.3d 950, 960 (9th Cir. 2007). The other cases cited by Plaintiff are distinguishable in that the bond-seeking party sought fees pursuant to a substantive fee-shifting statute. *See Gemelas v. Dannon Co., Inc.*, No. 08-236, 2010 WL 3703811, at *1 (N.D. Ohio Aug. 31, 2010) (Ohio Rev. Stat. § 1345.09(F)(2)); *Young v. New Process Steel, LP*, 419 F.3d 1201, 1204-1205 (11th Cir. 2005) (42 U.S.C. § 1988);

Here, as with their efforts to impose costs beyond those contemplated by Section 1920 Plaintiff identifies no substantive statute permitting their recovery for attorneys' fees if successful on appeal. Rather, Plaintiff appears to rely on Rule 38, a *procedural* rule which provides for fees where "a court of appeals determines that an appeal is frivolous[.]" FED. R. APP. P. 38. Thus, Plaintiff cannot move to include such prospective fees in a Rule 7 bond.

    C.    **Alternatively, the *Gemelas* Factors Weigh Strongly Against the Imposition of a Bond in this Case**

Alternatively, even if the Court were to permit Plaintiff to seek a bond on costs and fees not sought pursuant to a fee-shifting statute (which it should not), the *Gemelas* factors nevertheless weigh against the imposition of a bond. Courts in this Circuit have considered the following factors in analyzing whether to impose a bond under Rule 7: "(1) the appellant's financial ability to post a bond; (2) the risk that the appellant would not pay appellee's costs if the appeal is unsuccessful,

10

(3) the merits of the appeal, and (4) whether the appellant has shown any bad faith or vexatious conduct." *Gemelas*, 2010 WL 3703811, at *1 (N.D. Ohio Aug. 31, 2010).

### 1. Objector does not have the financial ability to post a $40,000 bond

The imposition of a $40,000 bond would effectively bar Objector from pursuing his appeal, as he does not have the financial ability to post such a bond (or any bond above a nominal amount, despite his ability to pay the filing fee).[13] *See* Affidavit of Erich Neumann, attached hereto as Exhibit A. The Affidavit includes specific information regarding the state of Objector's finances, living situation, and recent financial hardship. This more than meets Objector's burden with respect to financial ability (or lack thereof). Accordingly, this factor weighs strongly against imposition of the bond in this case.

### 2. Plaintiff has not shown any material risk of non-payment

Plaintiff has not established any material 'risk that the appellant would not pay appellee's costs if the appeal is unsuccessful.' Plaintiff's *only* argument in this regard is that Objector lives in another state. Pl. Mot. at 10-11. But state residency is hardly dispositive of this factor. *See, e.g., Chiaverini*, 2008 WL2415340 (noting Plaintiff did not allege facts regarding 'past failure to pay' or 'impending bankruptcy'); *Adsani v. Miller*, 139 F.3d 67, 70 (2d Cir. 1998) (involving appellant with no assets in United States); *Tri-Star Pictures, Inc. v. Unger*, 32 F.Supp.2d 144, 147 (S.D.N.Y. 1999) (same); *Baker v. Urban Outfitters, Inc.*, No. 01-5440 2006 WL 3635392, at *1 (S.D.N.Y. Dec. 12, 2006) (finding risk of nonpayment where appellant failed to comply with prior orders to pay other party's costs); *Watson v. E.S. Sutton, Inc.*, No. 02-2739, 2006 WL 4484160, at *2 (S.D.N.Y. Dec. 6, 2006) (stating that appellant's intention to file for bankruptcy constitutes risk of

---

[13] Plaintiff misleadingly cites *Gemelas* for the proposition that the ability to post a filing fee is evidence of an ability to pay a bond. Pl. Mot. at 10. However, the *Gemelas* court actually deferred imposition of the bond due to the objector's statements that he was unwilling to pay, ordering further discovery on the issue. *Gemelas* at *3.

11

nonpayment); *RBFC One, LLC v. Zeeks, Inc.*, No. 02-3231, 2005 WL 2140994, at *1 (S.D.N.Y. Sept. 2, 2005) (finding risk of nonpayment where appellant is "shell corporation").

Plaintiff has not demonstrated any material risk of non-payment in this case. Accordingly, this factor weighs against the imposition of a bond.

### 3. Objector's appeal has merit, presents unique and novel issues, and explores unsettled issues of law in this Circuit

The third factor, whether the appeal has merit, similarly weighs against imposition of a bond.[14] A "'district court's prejudging of a case's chances on appeal is a necessary by product of the imposition of a bond pursuant to Rule 7.'" *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 640 (N.D. Ohio 2016) (quoting *Unger*, 32 F. Supp. 2d at 149). "That said, the question of whether an appeal is actually frivolous is best left to the appellate court itself, which has 'the benefit of a fully developed appellate record.'" *Id.* (quoting *Azizian* 499 F.3d at 960).

Here, Objector did not raise boilerplate objections, but rather explored unique and novel legal questions, some of which have yet to be settled in this Circuit. Many of these legal questions will be reviewed *de novo* or under a standard less lenient than abuse of discretion. *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 08-1998, 2010 WL 5147222, at *3 (W.D. Ky. Dec. 13, 2010) ("[b]ecause of the novelty of this area of law, however, the Court acknowledges that some of the objectors' arguments present substantive issues that may at least warrant additional consideration on appeal"). Notably, Neumann did *not* include many of the boilerplate objections found in the Ference objection.

---

[14] Notably, Plaintiff's request for $40,000 in attorneys' fees should only be granted upon a finding that Objector's appeal (independent of the other *Gemelas* factors) meets Rule 38's frivolity standard. For the reasons provided in this sub-section (and Objector's objection and reply), Objector submit that Plaintiff cannot show a likelihood that the appellate court will deem Objector Neumann's appeal "frivolous."

12

The undersigned will not repeat his previously submitted arguments with respect to the issues raised in Plaintiff's Motion, but respectfully (below) provides the Court with references to his arguments. A few additional points warrant consideration here:

    a.    **Whether the Class Definition excludes dual purchasers is reviewed *de novo*, and this Court's reliance on extraneous evidence to interpret the Class Definition is novel**

In response to Pl. Mot. at 5, 8-9, Objector respectfully refers the Court to Neumann Obj. at 1-4 and Neumann Obj. Reply at 2-5. Further, in interpreting the Class Definition, this Court relied not on the plain language (which "specifically excluded [dual] purchasers") but rather extraneous evidence; namely, "the lack of questions on the topic to the claims administrator and the high claims rate." Order at 7. Plaintiff respectfully suggests that this approach to Class Definition interpretation is without precedent. *See, e.g., In re Cement and Concrete Antitrust Litig.*, 817 F.2d 1435, 1442–43 (9th Cir. 1987) (starting with the plain language of the class definition in reviewing a lower court's interpretation of an existing class definition); *see also Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 96-8414, 2015 WL 5603020, at *3 (S.D.N.Y. Sept. 21, 2015) (rejecting "interpretation of the class definition [that] contradicts the plain reading of the definition"). Further, the Court's reference to the "high claims rate" does not account for the *eighty percent claim rejection rate* identified by Plaintiff.

Because "[t]he interpretation of a class definition is a question of law that [U.S. appellate courts] review de novo[,]" Objector posits that the Court should not summarily characterize Objector's arguments in this regarding as without merit. *In re Motorola Securities Litig.*, 644 F.3d 511, 516 (7th Cir. 2011). Thus, "although the Court obviously disagrees that the claims raised by plaintiff are meritorious having previously rejected those claims—the claims raised are viable and substantial issues." *Chiaverini*, 2008 WL 2415340, at *2.

      **b.**    **Whether *Rawlings* requires this Court to reasonably estimate a settlement's actual value in an uncapped fund case before deciding which measure of fees to utilize is reviewed *de novo***

In response to Pl. Mot. at 7, Objector respectfully refers the Court to Neumann Obj. at 4-8 and Neumann Obj. Reply at 5-14. Objector's argument (and the legal issues implicated by same) are novel: he does not *per se* dispute the application of the lodestar fee measurement (versus the 'percentage of the fund'). Rather, he asserts that the Sixth Circuit's *Rawlings* decision imposes on this Court a duty to reasonably estimate the *actual value* (versus 'total available benefit') of the Settlement as part of the analysis required by *Rawlings*. Thus, Objector is not asserting that the Court improperly arrived at the lodestar methodology, but that the Court failed to undertake the requisite analysis in the first instance. This is even more important, Objector contends, in rare instances such as this one consisting of 'uncapped' claims-made settlements, coupled with extremely high claim-rejection rates (here, eighty percent). Whether this Court undertook the proper analysis (as opposed to whether it arrived at the proper result following said analysis) is reviewed *de novo*. Plaintiff suggests that this standard of review, coupled with the unique circumstances in this case, precludes any finding that this argument is wholly without merit.

      **c.**    **Plaintiff does not dispute settlement website deficiencies, and factual finding regarding notice are reviewed for clear error**

In response to Pl. Mot. at 9, Objector respectfully refers the Court to Neumann Obj. at 8-9 and Neumann Obj. Reply at 14. Again, even Plaintiff concedes that it failed to include necessary information on the settlement website in a prompt manner, likely in violation of this Court's April 4, 2018 Preliminary Approval Order. This admission, coupled with the 'clear error' standard of

review,[15] again precludes an absolute finding that this argument has little to no chance of success before the appeals court.

### d. The incentive award is much higher than those awarded in similarly-sized consumer cases

In response to Pl. Mot. at 8, Objector respectfully refers the Court to Neumann Obj. at 9. This argument comprised only one paragraph in the undersigned's objection. Further, it is possible that the $10,000 incentive award may comprise as much as 20 percent of the total amount paid to Class Members.

### 4. Objector has not demonstrated any bad faith or vexatious conduct, and Plaintiff's public policy arguments are unpersuasive

"Finally, there has been no bad faith or vexatiousness on the part of plaintiff in connection with the case in this Court or in filing the appeal." *Chiaverini*, 2008 WL 2415340, at *2. As noted above, Objector did not make boilerplate objections, but rather raised a number of viable and substantial issues, including novel and unsettled questions of law, many of which involve a stricter standard of review than 'abuse of discretion.' He has engaged in no vexatious conduct in this case nor exhibited a lack of professionalism. Accordingly, this factor also weighs against the imposition of a bond.

Plaintiff tellingly tries to substitute the fourth *Gemelas* argument with a public policy argument for requiring so-called 'serial objectors' to post bonds. Pl. Mot. at 10-11. As noted above, this is not the standard for evaluating the fourth *Gemelas* factor. In any event, as described in the Neumann Affidavit (¶¶ 2-5), Objector is not a "serial objector," but rather a class member who has objected to only four other class actions. In those four, he was a class member whose membership in the class was determined by the defendants' own business records. He has been a class member

---

[15] As Plaintiff points out, "'factual findings regarding notice'—one of the bases for Neumann's objection—'are reviewed for clear error.'" Pl. Mot. at 5 (quoting *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)).

in many more class actions wherein he did *not* object as compared to the small amount where he objected. Even if Plaintiff's 'public policy' argument supplants the fourth *Gemelas* factor (it does not), the scenario raised by Plaintiff is hardly applicable to the undersigned.

### III. CONCLUSION

For all of the aforementioned reasons, Plaintiff's Motion for a Bond should be denied in its entirety with respect to Objector Neumann.

DATE: September 21, 2018              Respectfully,

Erich Neumann
Attorney and Objector / Class Member
Erich B. Neumann, P.L.
407 Lincoln Road, Suite 2C
Miami Beach, FL 33139
Phone: (305) 735-2404
Facsimile: (305) 735-2651
ebn@ebnlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was faxed to the Court and additionally mailed to the following on September 21, 2018:

Clerk of Courts
Carl B. Stokes U.S. Courthouse
801 West Superior Avenue
Cleveland, Ohio 44113

Stuart E. Scott
Spangenberg, Shibley & Liber LLP
1001 Lakeside Avenue East,
Suite 1700
Cleveland, Ohio 44114

Karl A. Bekeny
Tucker Ellis LLP
950 Main Avenue,
Suite 1100
Cleveland, Ohio 44113

Erich Neumann